JOHN B. SULLIVAN (State Bar No. 96742)
jbs@severson.com
JAN T. CHILTON (State Bar No. 47582)
jtc@severson.com
ANDREA H. HENNINGSEN (State Bar No. 167361)
ahh@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA  94111
Telephone:  (415) 398-3344
Facsimile:  (415) 956-0439

Attorneys for Defendant
SEATTLE MORTGAGE COMPANY

**ORIGINAL FILED**

MAY  1 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARY B. LABRADOR, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

SEATTLE MORTGAGE COMPANY,

Defendant.

Case No.:  CV 08 2270 MEJ

**NOTICE OF REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT**
[28 U.S.C. §§1332(d), 1453(b)]

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that, under the Class Action Fairness Act (28 U.S.C. §§1332(d), 1453(b)), defendant Seattle Mortgage Company hereby removes to this Court the state court action described below:

**The Removed Action**

1.     On March 19, 2008, plaintiff Mary B. Labrador commenced this action, entitled *Mary B. Labrador, individually and on behalf of all others similarly situated, plaintiff, v. Seattle Mortgage Company, defendant*, No. CGC-08-473475 in the Superior Court of the State of California for the City and County of San Francisco.

2.      Seattle Mortgage Company first received a copy of the complaint in this action on April 4, 2008, when Seattle Mortgage Company's agent for service of process was served with a copy of the complaint and summons in the action.

3.      As required by 28 U.S.C. § 1446(a), Seattle Mortgage Company has attached as Exhibit A true and correct copies of the civil case cover sheet (2 pages) summons (1 page); complaint (17 pages); Labrador's declaration pursuant to Civil Code section 1780 (3 pages); the notice to plaintiff re case management conference (1 page); Amended General Order Re: Procedure for Approval of Complex Litigation Designation (2 pages); blank form CM-110 for Case Management Statement (4 pages); Alternatives to Trial information (9 pages); Judicial Mediation Program (1 page); and blank ADR-2 form, Stipulation to Alternative Dispute Resolution (1 page), which constitute all process, pleadings and orders served on Seattle Mortgage Company in the action.

**Basis For Removal**

4.      This action is a civil class action of which this Court has original jurisdiction under 28 U.S.C. §1332(d) and is one which may be removed to this Court by Seattle Mortgage Company pursuant to 28 U.S.C. §§1441(a) and 1453(b).

5.      The action is a class action within the meaning of 28 U.S.C. § 1332(d)(1)(B). Paragraph 36 of the complaint alleges that Labrador brings the action on her own behalf and, pursuant to California Civil Code section 1780 and Code of Civil Procedure section 382, on behalf of a class of all "elders" within California who obtained reverse mortgages from Seattle Mortgage Company during the past four years and who were charged an origination fee some or all of which was paid to an originating mortgage broker to whom Seattle Mortgage Company also paid a correspondent fee or similar fee.  Civil Code section 1770 and Code of Civil Procedure section 382 are similar to Federal Rule of Civil Procedure 23 and allow one or more representative persons to sue on behalf of others as a class action.

/ / / / /

/ / / / /

/ / / / /

- 2 -

6.    A member of the class is a citizen of a state different from that of defendant.

    a.    Seattle Mortgage Company is informed and believes that Labrador was, and still is, a citizen of the State of California. Paragraph 7 of the complaint alleges that she lives in the City and County of San Francisco.

    b.    Seattle Mortgage Company is informed and believes that one or more other members of the alleged plaintiff class are citizens of the State of California. Paragraph 36 of the complaint defines the class as "elders" in California.

    c.    Seattle Mortgage Company is a citizen of the State of Washington only. Its principal place of business is in Washington and it was incorporated in Washington. 28 U.S.C. §1332(c)(1).

7.    The matter in controversy in this action exceeds the sum or value of $5 million, exclusive of interest and costs, when the claims of all class members are aggregated as provided in 28 U.S.C. § 1332(d)(6).

    a.    The complaint does not allege an aggregate amount in controversy or pray for the award of any stated total sum on behalf of the class. The complaint does not allege that the aggregate amount in controversy is less than $5 million.

    b.    Paragraphs 28 – 34 of the complaint challenge the origination fee paid by Labrador and class members to the mortgage broker, and the correspondent fee paid by Seattle Mortgage to the mortgage broker for the delivery of the class members' loans to Seattle Mortgage. Labrador alleges she was charged $7,225.80 for the origination fee. Paragraph 38 of the complaint alleges that Labrador "reasonably estimates that Class members may number into the thousands…." Even if there are only 1,000 class members, and even if only origination fee is considered, the amount of controversy will exceed $5 million if the amount of Labrador's origination fee is representative of that paid by other class members.

    c.    Seattle Mortgage Company's records show that during the one-year period including plaintiff Labrador's loan (i.e., from September 2005 through August 2006), (i) Seattle Mortgage Company made HECM reverse mortgage loans to more than 2,000

1    persons in California who fit the class definition alleged in the complaint, and (ii) these

2    borrowers paid, on average, an origination fee of more than $6,000.

3         d.     Labrador seeks return of the $7,255 origination fee which she claims was

4    improperly collected from her, plus treble damages, punitive damages, and attorney fees

5    pursuant to statute. (Compl., ¶¶ 34, 51-53, 62, 74.) Labrador also seeks those additional

6    remedies on behalf of all class members.

7         8.     · This notice of removal is timely under 28 U.S.C. § 1446(b) because Seattle Mortgage

8    Company has filed it within 30 days of service of the summons and complaint on Seattle Mortgage

9    Company.

10         9.     As required by 28 U.S.C. § 1446(d), Seattle Mortgage Company will provide

11    written notice of the removal of this action to Labrador, and to the San Francisco Superior Court.

12         WHEREFORE, Seattle Mortgage Company prays that this action be removed to this Court

13    for final determination.

14

15    DATED: May 1, 2008                    SEVERSON & WERSON

16                                      A Professional Corporation

17

18                         By: _____
                                    Andrea H. Henningsen

19                         Attorneys for Defendant
                          SEATTLE MORTGAGE COMPANY

20

21

22

23

24

25

26

27

28

# EXHIBIT A

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Mark A. Chavez    90858<br>Chavez & Gertler LLP<br>42 Miller Ave.<br>Mill Valley, CA 94941<br>TELEPHONE NO.: 415 381-5599    FAX NO.: 415 381-5572<br>ATTORNEY FOR *(Name):* Plaintiff Mary Labrador | ENDORSED<br>FILED<br>SAN FRANCISCO COUNTY<br>SUPERIOR COURT<br><br>2008 MAR 19  AM 12: 58<br><br>GORDON PARK-LI CLERK<br><br>BY: ____ELIAS BUI____<br>DEPUTY CLERK |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 433 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, Ca 94102
BRANCH NAME:

CASE NAME: Labrador v. SMC

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | CGC-08-473475<br>JUDGE:<br>DEPT.: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[X] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [X] is    [ ] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [X] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action *(specify):* Five;
5. This case [X] is    [ ] is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March 19, 2008

Mark A. Chavez
(TYPE OR PRINT NAME)    ▶    _____
                               (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
Martin Dean's
ESSENTIAL FORMS™

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courtinfo.ca.gov*

427/LABRADOR

COPY

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
 Auto (22)-Personal Injury/Property
  Damage/Wrongful Death
 Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death)**
**Tort**
 Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
   Wrongful Death
 Product Liability *(not asbestos or
  toxic/environmental)* (24)
 Medical Malpractice (45)
  Medical Malpractice-
   Physicians & Surgeons
  Other Professional Health Care
   Malpractice
 Other PI/PD/WD (23)
  Premises Liability (e.g., slip
   and fall)
  Intentional Bodily Injury/PD/WD
   (e.g., assault, vandalism)
  Intentional Infliction of
   Emotional Distress
  Negligent Infliction of
   Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
 Business Tort/Unfair Business
  Practice (07)
 Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
 Defamation (e.g., slander, libel)
  (13)
 Fraud (16)
 Intellectual Property (19)
 Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
   *(not medical or legal)*
 Other Non-PI/PD/WD Tort (35)

**Employment**
 Wrongful Termination (36)
 Other Employment (15)

**Contract**
 Breach of Contract/Warranty (06)
  Breach of Rental/Lease
   Contract *(not unlawful detainer
    or wrongful eviction)*
  Contract/Warranty Breach-Seller
   Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
   Warranty
  Other Breach of Contract/Warranty
 Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case-Seller Plaintiff
  Other Promissory Note/Collections
   Case
 Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
 Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
 Eminent Domain/Inverse
  Condemnation (14)
 Wrongful Eviction (33)
 Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
   domain, landlord/tenant, or
   foreclosure)*

**Unlawful Detainer**
 Commercial (31)
 Residential (32)
 Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
 Asset Forfeiture (05)
 Petition Re: Arbitration Award (11)
 Writ of Mandate (02)
  Writ-Administrative Mandamus
  Writ-Mandamus on Limited Court
   Case Matter
  Writ-Other Limited Court Case
   Review
 Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal-Labor
   Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400-3.403)**
 Antitrust/Trade Regulation (03)
 Construction Defect (10)
 Claims Involving Mass Tort (40)
 Securities Litigation (28)
 Environmental/Toxic Tort (30)
 Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)

**Enforcement of Judgment**
 Enforcement of Judgment (20)
  Abstract of Judgment (Out of
   County)
  Confession of Judgment *(non-
   domestic relations)*
  Sister State Judgment
  Administrative Agency Award
   *(not unpaid taxes)*
  Petition/Certification of Entry of
   Judgment on Unpaid Taxes
  Other Enforcement of Judgment
   Case

**Miscellaneous Civil Complaint**
 RICO (27)
 Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
   harassment)*
  Mechanics Lien
  Other Commercial Complaint
   Case *(non-tort/non-complex)*
  Other Civil Complaint
   *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
 Partnership and Corporate
  Governance (21)
 Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
   Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late
   Claim
  Other Civil Petition

CM-010 [Rev. July 1, 2007]    **CIVIL CASE COVER SHEET**    Page 2 of 2

427/LABRADOR

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO)* :
Seattle Mortgage Company

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE)* :
Mary Labrador

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DIAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
San Francisco Superior Court

433 McAllister Street    San Francisco, Ca 94102

CASE NUMBER
*(Número d...)* CGC-08-473475

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Mark A. Chavez    Chavez & Gertler LLP
42 Miller Ave.    Mill Valley, CA  94941
415 381-5599

DATE: March 19 2008    Gordon Park-Li    Clerk, by _____ ELIAS BUT, Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

(SEAL)

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)* :

3. ☒ on behalf of *(specify)* :  Seattle Mortgage Company
   under:  ☒ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other *(specify)* :
4. ☐ by personal delivery on *(date)* :.

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]
Martin Dean's Essential Forms ™

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

427/LABRADOR

ENDORSED
FILED
SAN FRANCISCO COUNTY
SUPERIOR COURT

2008 MAR 19  AM 12: 58

GORDON PARK-LI. CLERK

BY: _____
        DEPUTY CLERK

1  BONNETT, FAIRBOURN, FRIEDMAN & BALINT, PC
   ANDREW S. FRIEDMAN (to be admitted *pro hac vice*)
2  GARRETT W. WOTKYNS (to be admitted *pro hac vice*)
   2901 N. Central Avenue, Suite 1000
3  Phoenix, Arizona 85012
   Telephone: (602) 274-1100
4  Facsimile:  (602) 274-1199

5  CHAVEZ & GERTLER LLP
   MARK A. CHAVEZ (Bar No. 90858)
6  NANCE F. BECKER (Bar No. 99292)
   DAN GILDOR (Bar No. 223027)
7  42 Miller Ave.
   Mill Valley, California  94941
8  Telephone: (415) 381-5599
   Facsimile:  (415) 381-5572
9

10 Attorneys for Plaintiff

11                SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                        COUNTY OF SAN FRANCISCO

13                           UNLIMITED JURISDICTION

14

15 MARY B. LABRADOR, individually and on ) Case No.: CGC-08-473475
   behalf of all others similarly situated,      )
16                                               )  CLASS ACTION COMPLAINT FOR:
                                                 )  1.   Elder Financial Abuse;
17         Plaintiff,                            )  2    Unlawful, Deceptive and Unfair
                                                 )       Business Practices;
18                                               )  3.   CLRA Violations;
                                                 )  4.   Unjust Enrichment and
19         vs.                                    )       Imposition of Constructive Trust;
                                                 )  5.   Declaratory Relief
20                                               )
   SEATTLE MORTGAGE COMPANY,                     )
21                                               )  JURY TRIAL DEMANDED
                                                 )
22         Defendant.                             )
23

24

25

26

27

28

CASE MANAGEMENT CONFERENCE SET

AUG 2 2 2008 - 9⁰⁰ AM

DEPARTMENT 212

COPY

CLASS ACTION COMPLAINT

1    Plaintiff MARY B. LABRADOR brings this action against SEATTLE MORTGAGE

2  COMPANY ("SMC" or "Defendant"), on behalf of herself and all others similarly situated.

3  Upon information and belief, as well as the investigation of counsel, Plaintiff alleges as follows:

4  **INTRODUCTION**

5    1.    This class action challenges and seeks to redress Defendant's unlawful assessment

6  of fees in connection with reverse mortgage loans. As explained further below, under the

7  governing federal regulations, Defendant is barred from charging borrowers loan origination fees

8  which are passed on to the loan broker in situations where there is a financial interest between

9  the mortgage broker and the lender. In complete disregard of this rule, Defendant charged senior

10  citizens who purchased reverse mortgages loan-related origination fees that were paid to brokers

11  with whom Defendant had a financial interest. The existence of such a "financial interest" is

12  apparent where, as here, the lender pays the broker both a "correspondent fee" *and* all or a

13  portion of the "origination fee" charged to the borrower. Such origination fees do not

14  compensate Defendant for origination expenses, but are used as a financial incentive to

15  encourage mortgage brokers to refer loan business to Defendant. This practice is both unlawful

16  and unfair.

17    2.    Reverse mortgages are a lucrative business for lenders. The potential market for

18  reverse mortgages in California is huge. Based on home ownership rates in California and

19  national trends, approximately 2.1 million Californians, or roughly 60% of seniors in the state,

20  are eligible for reverse mortgages. Because of the large population of senior citizens combined

21  with high real estate values, interest in and use of reverse mortgages in California is particularly

22  strong. Given the immense amount of money at stake in this relatively new market and the

23  development in recent years of sophisticated "predatory lending" schemes by mortgage lenders,

24  it is unsurprising that the unlawful activity many borrowers have experienced in the "forward"

25  loan market has migrated to the reverse mortgage market.

26    3.    On behalf of herself and a California class of all others similarly situated, Plaintiff

27  asks the Court to declare unlawful and to enjoin Defendant's unlawful and unfair practice of

28  assessing improper origination fees in connection with reverse mortgages. Plaintiff also seeks to

CLASS ACTION COMPLAINT

1   recover restitution and damages from Defendant.

2                          **JURISDICTION AND VENUE**

3       4.     This Court has jurisdiction under Code of Civil Procedure § 410.10.  Plaintiff's

4   damages exceed the jurisdictional minimum of this Court.

5       5.     Venue is proper in the County of San Francisco because Plaintiff's causes of

6   action accrued in the County of San Francisco, and Plaintiff resides in this County.

7       6.     Venue is also proper in this County under Civil Code § 1780(c), because

8   Defendant is doing business in this County, a substantial number of Defendant's reverse

9   mortgages, including Plaintiff's reverse mortgage, were originated in this county, and Plaintiff

10  resides in this County.

11                               **PARTIES**

12      7.     Plaintiff Mary Labrador is 82 years old, and therefore an "elder" as defined by

13  Welfare and Institutions Code § 15610.27 and Civil Code § 1761(f).  Mrs. Labrador lives in the

14  City and County of San Francisco, California.

15      8.     Defendant SMC is a mortgage banker which is a member of the Seattle Financial

16  Group family of companies.  On information and belief, up until April, 2007, SMC conducted

17  the majority of its reverse mortgage business through a subsidiary or operating division known as

18  Reverse Mortgage of America ("RMA").  Effective on or about April 26, 2007, SMC sold RMA,

19  and/or the assets of RMA, to Bank of America.  (*See* (http://newsroom.bankofamerica.com/

20  index.php?s=press_releases&item=7752, last viewed December 12, 2007).  RMA's Internet site

21  states that "[a]s of June 29, 2007, Reverse Mortgage of America is now Bank of America, as

22  Bank of America acquired the reverse mortgage business of Seattle Mortgage Company,

23  including Reverse Mortgage of America." (http://www.reversemortgageofamerica.com/

24  about_reverse_mortgage.asp, last viewed December 12, 2007).

25      9.     Notwithstanding the acquisition, SMC continues to offer reverse mortgages along

26  with a variety of other secured loan products.  (www.seattlemortgage.com/products.php, last

27  viewed January 14, 2008.)

28

1        10.    Plaintiff is informed and believes and thereon alleges that at the time of Plaintiff's

2    loan, and continuing through the present, SMC was and is a reverse mortgage lender approved

3    by the U.S. Department of Housing and Urban Development.

4                                      **NATURE OF ACTION**

5        11.    Defendant SMC provides "reverse mortgages" to senior citizens.  In connection

6    with these transactions, Defendant charges borrowers designated "origination fees" and pays all

7    or a portion of those fees to the mortgage brokers who arrange or refer the loan.  In addition,

8    when the loan closes, Defendant "pays outside of closing" to the mortgage brokers

9    "correspondent" fees or similar fees.  It is a violation of applicable federal regulations, and thus

10   an unlawful and unfair practice under state law, for borrowers to be charged such origination fees

11   when the brokers are also receiving these back-channel fees.  This action seeks to halt the

12   imposition of these charges and secure relief for class members who have been improperly

13   charged.

14       12.    A reverse mortgage is a type of home equity loan that allows a senior homeowner

15   to convert her home's equity into cash, while allowing her to retain ownership and not make

16   immediate repayments.  The term "reverse" refers to the fact that instead of the borrower making

17   a monthly payment to the lender, the lender makes payments to the borrower.  Money obtained

18   through a reverse mortgage can be used for any purpose.  Reverse mortgage loan proceeds are

19   commonly used for everyday living expenses, home repairs and/or in-home health care.

20   Depending on the reverse loan program, the borrower may not have to repay either the loan

21   principal or accrued interest as long as she lives in her home.  That period typically ends when

22   the homeowner becomes incapable of caring for herself, requires nursing home care, or dies.

23   Due to the advanced age of most reverse mortgage borrowers, the term of the reverse mortgage

24   loan is often short.  *See* Victoria Wong and Norma Paz Garcia, *There's No Place Like Home:*

25   *The Implications of Reverse Mortgages on Seniors in California*, Consumers Union Report

26   (August 1999).

27

28

1    13.    Repayment of the reverse mortgage is secured by means of a deed of trust on the

2 home. The eventual sale of the home is expected to generate proceeds to repay the principal

3 ultimately borrowed, along with interest, fees and expenses.

4    14.    Reverse mortgage loans appear to be an attractive option for the many financially-

5 strapped seniors like Plaintiff who live on fixed or limited incomes. However, reverse mortgages

6 impose substantial fees and costs on borrowers. Those fees and costs are added to the loan

7 balance at the outset.

8    15.    Reverse mortgages are highly complex financial instruments that even relatively

9 sophisticated consumers have difficulty understanding. One would never guess this, however,

10 from reading the Internet site of Home Center Mortgage ("Home Center"), the firm that brokered

11 Plaintiff's reverse mortgage loan. It baldly states that the reverse mortgage is:

12         [t]he *newest and absolute best loan program for seniors, it allows you to*
           *borrow money without ever making payments*. Do you want to eliminate
13         your house payment? Do you need extra income every month? Do you need
           to make home improvements? Do you want to take a vacation? Does your
14         family need help? Our Reverse Mortgage Specialists are ready to help you
           secure a government insured Reverse Mortgage for all of your financial
15         needs. There is virtually no qualifying, as long as you are 62 or over and
           own your home, even if it is not paid off, we can start working toward
16         helping you enjoy your retirement.

17

18 (http://homecenterrealty.com, last visited September 14, 2007 [emphasis added].) In contrast to

19 Home Center's representations concerning reverse mortgage costs, the Federal Trade

20 Commission warns consumers in an Internet advisory entitled "Reverse Mortgages: Get the Facts

21 Before Cashing In On Your Home's Equity" that "reverse mortgages tend to be more costly than

22 other home loans. The up-front costs can be high[.]" (http://www.ftc.gov/bcp/conline/pubs/

23 homes/rms.shtm, last viewed May 17, 2007).

24    16.    For these reasons, the still-young reverse mortgage industry has already generated

25 a wide variety of consumer financial abuse. One example of such abuse is the imposition of

26 abusive loan-related fees and costs such as the origination fees that are the subject of this

27 Complaint.

28

CLASS ACTION COMPLAINT

17.    As a result of reverse mortgage consumer abuses, the federal government and state governments have promulgated reverse mortgage-specific consumer protection laws, which generally protect rights of senior citizens and require full disclosure of all material facts associated with reverse mortgages. The reverse mortgage loan made by Defendant to Plaintiff violated at least one of these laws, 24 C.F.R. § 206.31(a)(1), which expressly states that, "A mortgage broker's fee can be included as part of the origination fee only if the mortgage broker is engaged independently by the homeowner *and if there is no financial interest between the mortgage broker and the mortgagee*" (emphasis added).

18.    Although an "origination fee" is intended to be a fee that "covers the reverse mortgage operating expenses of the lender" (*see* www.reversemortgageofamerica.com, last visited December 4, 2007), Defendant charges borrowers "origination fees" that it in fact pays to mortgage brokers. In addition, under the pretext of purchasing loan servicing rights from reverse mortgage loan brokers, Defendant systematically makes direct payments to brokers, including Plaintiff's broker. These payments are offered as an incentive to brokers to steer loan applicants to Defendant, and to reward them when they do so. The payments do not, however, secure servicing rights to reverse mortgage loans. Properly speaking, loan brokers such as Home Center have no "servicing rights" in the loans they broker to sell to Defendant or any other party.

19.    A community of financial interest exists between Defendant and its loan brokers (including Plaintiff's broker, Home Center) in transactions where Defendant makes these payments to brokers. Indeed, the Home Center's website promotes the company by stating, "[w]e are proud to have close relationships with the most reputable Reverse Mortgage lenders Seattle Mortgage (Seattle Savings Bank [and others]." (www.homecenterrealty.com, Reverse Mortgage, "About Us," last visited Jan. 18, 2007.) Both brokers and Defendant benefit when a reverse mortgage loan is consummated under the back-channel fee arrangement that Defendant maintains with its broker force. Brokers in such cases often receive not only the back-channel fee, but also, typically, a much larger origination fee – a fee to which brokers have no right under federal law. And by paying these fees, Defendant in turn gains a stronger position in the one segment of the mortgage market that is "poised for a sustained boom" even as the rest of the

1   mortgage market founders.  (http://realtytimes.com/rtcpages/20070430_reversemort.htm, last
2   viewed November 8, 2007).

3       20.      By this action, Plaintiff and the Class seek an order enjoining Defendant from
4   continuing improperly to assess borrowers for reverse loan origination and correspondent fees,
5   and declaring that practice unlawful.  Plaintiff and the Class also seek treble damages for
6   violations of the elder abuse statutes of California, together with monetary damages, statutory
7   damages, restitution, attorney fees, and such other legal and/or equitable relief as may be
8   appropriate to redress Defendant's wrongful conduct.

9                   **PLAINTIFF'S REVERSE MORTGAGE TRANSACTION**

10      21.      On information and belief, Defendant markets its reverse loan products primarily
11   through a network of mortgage brokers and other agents, including Home Center.

12      22.      In or about July 2006, Michael R. Fullam, an agent of Home Center, contacted
13   Plaintiff, then 80 years of age, concerning the possibility of Plaintiff entering into a reverse
14   mortgage loan.  Mr. Fullam advised Plaintiff to enter into a reverse mortgage originated by
15   Defendant, brokered by Home Center, and secured by a deed of trust on her home.

16      23.      On or about August 10, 2006, Plaintiff entered into a reverse mortgage loan
17   originated by Defendant.  Upon information and belief, Bank of America presently services
18   Plaintiff's reverse mortgage loan.

19      24.      According to Plaintiff's HUD-1 Settlement Statement, Plaintiff paid at closing a
20   $7,255.80 "origination fee" in connection with her reverse mortgage loan.  According to
21   Plaintiff's loan materials, that fee was conveyed in its entirety not to the bank that actually
22   originated her loan (Defendant SMC), but to her mortgage broker, Home Center.

23      25.      According to Plaintiff's HUD-1 Settlement Statement, Defendant also paid a
24   "correspondent fee" to Home Center in the amount of $490 in connection with Plaintiff's loan
25   closing.

26      26.      Plaintiff's reverse mortgage was a Home Equity Conversion Mortgage loan
27   ("HECM") guaranteed by the U.S. Department of Housing and Urban Development ("HUD"),
28   and thus subject to loan cost and fee limitations contained in applicable HUD regulations.

CLASS ACTION COMPLAINT

27.   Defendant's reverse mortgage loan to Plaintiff violated 24 C.F.R. § 206.31(a)(1) because, among other things, Plaintiff was charged origination fees which were paid to the mortgage broker despite the fact that Defendant and Home Center had a financial relationship.

28.   Because there was a "financial interest" between Home Center and Defendant within the meaning of 24 C.F.R. § 206.31(a)(1), Plaintiff should not have been charged a reverse mortgage "origination fee" that was paid in whole or in part to Home Center.

29.   In a November 6, 2007 letter from Bank of America's Assistant General Counsel on behalf of Bank of America and its "predecessor in interest, Seattle Mortgage Company," the Bank contended that the "correspondent fee" Plaintiff paid was: (a) a "back-funded payment to [a] mortgage broker;" and (b) a fee that "the lender paid the originating broker for servicing rights to the loan." As numerous courts have held, though, originating mortgage brokers own no servicing rights in the loans they broker. Thus, Home Center owned no servicing rights in Plaintiff's reverse mortgage loan that it could sell to Defendant or to any other party.

30.   Among other things, servicing rights on a mortgage loan include the rights to collect principal and interest payments on the loan, to obtain from the borrower any delinquent principal, interest and/or penalty payments due under the loan agreement, and to recover payment of property taxes. The servicing rights on Plaintiff's reverse mortgage loan did not exist until the loan was consummated and funded by Defendant. Defendant – and not Home Center – was the initial owner of all servicing rights associated with Plaintiff's loan.

31.   Thus, while the so-called "correspondent fee" that Defendant paid to Home Center was indeed a payment to Home Center for delivering Plaintiff's loan to Defendant, it was not a payment for servicing rights on Plaintiff's loan. In connection with its enforcement of the Real Estate Settlement Procedures Act (RESPA), HUD has unambiguously condemned such covert payments from lenders to brokers. HUD's website plainly states that, "your mortgage lender may not pay your real estate broker . . . for referring you to the lender." (http://www.hud.gov/offices/hsg/sfh/res/sc2secti.cfm, last viewed November 11, 2007).

32.   Such "back-funded payments" link brokers like Home Center and lenders like Defendant in a community of financial interest. Both parties benefit from this concealed fee

1 | arrangement: brokers by obtaining payment of increased fees at closing, and lenders by

2 | obtaining profitable and well-performing mortgage loans. Such payments incentivize brokers

3 | like Home Center to steer additional reverse mortgage loans to Defendant.

4 |      33.     Given the nature of this disguised fee arrangement and Plaintiff's relationship

5 | with her broker, Defendant was prohibited under 24 C.F.R. § 206.31(a)(1) from charging

6 | Plaintiff the origination fee she paid in connection with her reverse mortgage loan while it was

7 | also compensating Home Center through a "correspondent fee."

8 |      34.     Plaintiff was harmed by her purchase of the reverse mortgage. The $7,255.80

9 | origination fee that Plaintiff was charged in connection with her reverse mortgage loan was in

10 | whole or in part a broker fee, and should not have been charged.

11 | <div align="center">**CLASS ALLEGATIONS**</div>

12 |      35.     Plaintiff is informed and believes and on that basis alleges that Defendant has

13 | charged and is continuing to charge senior citizens origination fees and correspondent fees which

14 | are unlawfully paid to mortgage brokers who have not been independently engaged by class

15 | members and/or with whom Defendant has a financial interest. As set forth more fully below,

16 | Plaintiff alleges that Defendant's actions are unlawful, unfair and deceptive within the meaning

17 | of Business & Professions Code § 17200 et seq. and California Civil Code § 1750 et seq., and

18 | that they constitute "elder abuse" as defined by California Welfare & Institutions Code

19 | § 15657.5 et seq.

20 |      36.     Pursuant to Code of Civil Procedure §382 and Civil Code §1780, Plaintiff asserts

21 | these claims on behalf of herself and all other persons similarly situated. The Class consists of

22 | the following individuals:

23 |      All "elder[s]" in California: (a) who purchased reverse mortgages that were
24 | originated, structured and/or underwritten by Defendant at any time during the four years preceding the filing of this Complaint, and continuing until the date of trial; and (b) who were charged both an "origination fee" that
25 | was conveyed, in whole or in part, to an originating mortgage broker, and a
26 | "correspondent fee" or similar fee that was also paid to the originating mortgage broker.

27 |

28 |

37.    Plaintiff and the Class seek to enjoin Defendant from engaging in the unfair, fraudulent and unlawful business practices alleged in this Complaint, to require Defendant to make restitution and to restore to the affected members of the Class all monies wrongfully obtained through its unfair and unlawful business practices, and to declare such business practices unlawful.

38.    Class treatment of these claims is appropriate because the members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff reasonably estimates that Class members number into the thousands; for example, in a pleading filed January 18, 2008, Bank of America stated that SMC made 2,200 reverse mortgages to California residents during the relevant time period. The precise number of class members entitled to restitution, and their addresses, are unknown to Plaintiff, but can be ascertained through appropriate discovery of Defendant's records. Class members may be notified of the pendency of this action by mail, publication and/or other notice.

39.    There is a well-defined community of interest in the relevant questions of law and fact affecting putative Class members. Common questions of law and fact predominate over any individual questions affecting Class members, including but not limited to the following:

(a)    Whether Defendant, through its operation of RMA, improperly originated, structured and/or underwrote reverse mortgage loans to senior citizens, including Plaintiff and the Class;

(b)    Whether Defendant, in its current operations, continues improperly to originate, structure and/or underwrite reverse mortgage loans to senior citizens, including members of the Class;

(c)    Whether Defendant committed and continues to commit unfair, unlawful and/or deceptive business practices in violation of Bus. & Prof. Code § 17200 in its origination, structuring and/or underwriting of reverse mortgage loans to senior citizens, including Plaintiff and the Class;

(d)    Whether Defendant committed elder abuse as defined in Welf. & Inst. Code § 15600 *et seq.*;

1     (e)    Whether, in participating in the activities alleged in this Complaint,

2     Defendant violated the Consumers Legal Remedies Act (Civil Code §1750

3     *et seq.*);

4     (f)    Whether Defendant has been unjustly enriched at the expense of Plaintiff

5     and the Class;

6     (g)    Whether Plaintiff and members of the Class have sustained injury;

7     (h)    Whether Plaintiff and the Class are entitled to damages; and

8     (i)    Whether the Class is entitled to injunctive, declaratory and/or other relief.

9     40.    Plaintiff's claims are typical of those of the absent Class Members. If brought

10 and prosecuted individually, the claims of each Class Member would require proof of many of

11 the same material and substantive facts, rely upon the same remedial theories, and seek the same

12 relief.

13     41.    Plaintiff will fairly and adequately protect the interests of the Class and she has no

14 interests adverse to, or that directly and irrevocably conflict with, the interests of other Class

15 Members. Plaintiff is willing and prepared to serve the Court and the putative Class in a

16 representative capacity with all of the obligations and duties attendant thereto.

17     42.    Plaintiff has retained the services of counsel, identified below on the signature

18 page, who are experienced in complex class action litigation and in particular class actions

19 involving financial services matters. Plaintiff's counsel will adequately prosecute this action,

20 and will otherwise assert, protect and fairly and adequately represent Plaintiff and all absent

21 Class Members.

22     43.    Moreover, a class action is superior to other methods for the fair and efficient

23 adjudication of the controversies raised in this Complaint because:

24     (a)    individual claims by the Class members would be impracticable as the

25     costs of pursuit would far exceed what any individual class member has at stake;

26     (b)    very little individual litigation has been commenced over the controversies

27     alleged in this Complaint and individual Class members are unlikely to have an

28     interest in separately prosecuting and controlling individual actions;

CLASS ACTION COMPLAINT

1    (c) the concentration of litigation of these claims in one forum will achieve

2    efficiency and promote judicial economy; and

3    (d) the proposed Class is manageable.

4  44. Therefore, class treatment of Plaintiff's claims is both appropriate and necessary.

5          **FIRST CAUSE OF ACTION**

6           **(Financial Elder Abuse)**

7  45. Plaintiff repeats and incorporates herein the allegations of paragraphs 1-44,

8 inclusive.

9  46. Defendant's conduct constitutes financial abuse under Welf. & Inst. Code

10 § 15657.5 *et seq.*, as defined in Welf. & Inst. Code § 15610.30. Welf. & Inst. Code § 15610.30

11 reads in pertinent part as follows:

12    (a) "Financial abuse" of an elder or dependent adult occurs when a person or

13    entity does any of the following:

14      (1) Takes, secretes, appropriates, or retains real or personal property of

15        an elder or dependent adult to a wrongful use or with intent to

16        defraud, or both.

17      (2) Assists in taking, secreting, appropriating, or retaining real or

18        personal property of an elder or dependent adult to a wrongful use

19        or with intent to defraud, or both.

20  47. At all relevant times, Defendant took and/or assisted in the taking of property

21 from Plaintiff and the Class for its own wrongful use and/or with intent to defraud.

22  48. Defendant manipulated Plaintiff and the Class into paying excessive, unlawful

23 and unfair fees and costs in connection with her reverse mortgage.

24  49. In performing these wrongful acts, the agents and employees of Defendant acted

25 on behalf of Defendant.

26  50. The conduct of Defendant was knowing, reckless, oppressive, fraudulent and

27 malicious within the meaning of Welf. & Inst. Code § 15657.5 *et seq.*

28

1    51.    Under Welf. & Inst. Code § 15657.5 *et seq.*, Defendant is liable for Plaintiff's

2  reasonable attorneys' fees and costs incurred in investigating and litigating this claim.

3    52.    Under Civil Code § 3294 and Welf. & Inst. Code § 15657.5, Defendant is liable

4  for punitive damages.

5    53.    Under Civil Code § 3345, Defendant is liable for treble damages and penalties

6  because: (a) Defendant knew its conduct was directed at senior citizens; (b) Defendant's conduct

7  caused a senior citizen to encumber her personal residence and suffer substantial loss of property

8  and assets set aside for her retirement and essential to her health and welfare; (c) Plaintiff is a

9  senior citizen who is more vulnerable than other members of the public to Defendant's conduct

10  because of her age, impaired understanding, impaired health or restricted mobility; and

11  (d) Plaintiff and the Class members actually suffered substantial economic damages as a result

12  Defendant's conduct.

13    **SECOND CAUSE OF ACTION**

14    **(Unlawful, Deceptive and Unfair Business Practices)**

15    54.    Plaintiff repeats and incorporates herein the allegations of paragraphs 1-53,

16  inclusive.

17    55.    Section 17200 prohibits any "unlawful ... business act or practice." Defendant has

18  violated §17200's prohibition against engaging in an unlawful act or practice by, *inter alia*, the

19  following:

20    (a)    violating Cal. Welf. & Inst. Code §§ 15610.30 and 15657.5 et seq. (as

21    further alleged above);

22    (b)    violating 24 C.F.R. § 206.31(a)(1) by charging Plaintiff and the Class

23    origination fees and conveying those fees to Home Center, a mortgage broker,

24    where a financial interest existed between Home Center and Defendant.

25    56.    Plaintiff reserves the right to allege other violations of law and/or other unlawful

26  business acts or practices. Such conduct is ongoing and continues to this date.

27    57.    Section 17200 also prohibits any "unfair ... business act or practice." As detailed

28  in the preceding paragraphs, Defendant sold a reverse mortgage to Plaintiff with terms,

1   conditions, and under circumstances that violate federal and state law and fundamental policies

2   delineated in statutory provisions. Defendant gained the trust of Plaintiff, had access to her

3   private financial information, and induced her to encumber her personal residence and enter into

4   a reverse mortgage. Defendant acted similarly toward the other members of the Class. As a

5   result, Defendant engaged in unfair business practices prohibited by Cal. Bus. & Prof. Code

6   § 17200 et seq..

7       58.    Section 17200 also prohibits any "fraudulent ... business act or practice." As

8   detailed in the preceding paragraphs, the conduct of Defendant was likely to deceive and did

9   deceive Plaintiff and the absent Class members. Defendant made misrepresentations about

10  reverse mortgages that it knew were likely to be deceptive and misleading for senior consumers,

11  failing to disclose all material features, facts, risks and/or attributes of reverse mortgages.

12  Defendant gained the trust of Plaintiff, had access to her personal information, and through its

13  unscrupulous sales practices, induced her to enter into a reverse mortgage loan transaction, all

14  the time knowing that those sales practices were likely to be misleading and deceptive for

15  Plaintiff.

16      59.    Defendant's practices have deceived or are likely to deceive members of the

17  public, including Plaintiff.

18      60.    As a result of Defendant's practices, Plaintiff and the Class have incurred actual

19  financial losses and damages including fees and charges that they otherwise would not have

20  incurred.

21      61.    Unless Defendant is enjoined from continuing to engage in the unlawful,

22  deceptive and unfair business practices described above, Plaintiff and the Class will continue to

23  be damaged.

24      62.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order requiring

25  Defendant immediately to cease such unlawful, unfair and deceptive business practices and

26  requiring Defendant to return the full amount of money improperly collected, including any

27  income derived from fees imposed on Plaintiff and the Class, plus interest and attorneys' fees.

28  / / /

**THIRD CAUSE OF ACTION**

<u>(Violation of the Consumers Legal Remedies Act)</u>

63.    Plaintiff repeats and incorporates herein the allegations of paragraphs 1-62, inclusive.

64.    Plaintiff brings this cause of action on behalf of the Class seeking injunctive relief pursuant to the Consumers Legal Remedies Act ("CLRA"), Civil Code §1750, *et seq.*

65.    The CLRA applies to the conduct described herein, because it extends to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.  Specifically, the CLRA exists to protect consumers from unconscionable, fraudulent and deceptive sales practices.

66.    Plaintiff and each member of the Class are "consumers" within the meaning of California Civil Code §1761(d).

67.    The reverse mortgages that Defendant markets to seniors and originates are "goods" within the meaning of Civil Code §1761(a).  The deceptive and fraudulent sale of reverse mortgages to senior citizens constitutes a "transaction" pursuant to Civil Code §1761(c). The deceptive and fraudulent business practices employed by Defendant in the sale of reverse mortgages are "services" pursuant to Civil Code §1761(b), and are services for other than commercial or business use.  Plaintiff and the Class utilized these "services," which included deceptive and fraudulent disclosures and/or omissions made by Defendant.

68.    Defendant has violated, and continues to violate, the CLRA in at least the following respects:

(a)    In violation of Civil Code §1770(a)(3), Defendant failed to disclose and thus misrepresented its financial relationship with mortgage brokers, including but not limited to the broker who dealt with the Plaintiff, Home Center;

(b)    In violation of Civil Code §1770(a)(14), Defendant represented that the transactions, services or goods that it offers confer or involve rights that the transaction, service or good does not have;

(c)    In violation of Civil Code §1770(a)(19), while providing financial services to Plaintiff, Defendant failed to properly disclose costs, fees, and charges associated with its reverse mortgages.

69.    Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA, other senior citizens will continue to be harmed by Defendant's acts and practices in the same way Plaintiff and other members of the Class have been harmed already.

70.    Pursuant to Civil Code §1780(a)(3), Plaintiff and members of the class are entitled to injunctive relief for Defendant's violations of the CLRA, as well as their costs and reasonable attorney's fees, pursuant to Civil Code §1780(d).  Plaintiff and members of the Class request this Court to enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged above in whatever context they occur, pursuant to Civil Code §1780(a)(2).

## FOURTH CAUSE OF ACTION

### (Unjust Enrichment and Imposition of Constructive Trust)

71.    Plaintiff repeats and incorporates herein the allegations of paragraphs 1-70, inclusive.

72.    By engaging in inappropriate reverse mortgage practices, Defendant obtained payments from Plaintiff in the form of commissions, charges and fees, expenses and costs.

73.    As a result of the relationship between the parties and the facts stated above, Defendant has been and will be unjustly enriched if it is permitted to retain such funds and therefore a constructive trust should be established over the monies Plaintiff paid to Defendant, including reverse mortgage commissions, charges and/or other fees, expenses and costs imposed by Defendant.  These monies are traceable to Defendant and/or firms utilized, operated and/or controlled by Defendant.

74.    Plaintiff has no adequate remedy at law and has been damaged in an amount to be determined at the trial of this action.

/ / /

/ / /

/ / /

1

## FIFTH CAUSE OF ACTION

2

### (Declaratory Relief)

3        75.    Plaintiff repeats and incorporates herein the allegations of paragraphs 1-74,

4    inclusive.

5        76.    A controversy has arisen and exists between Plaintiff and the proposed Plaintiff

6    Class, on the one hand, and Defendant, on the other, in that Plaintiff contends, and Defendant

7    denies, that the fees charged by Defendant in connection with reverse mortgage loans and the

8    other practices alleged above violate state and federal law and are deceptive and unfair.

9        77.    The Court can and should resolve this controversy by providing Plaintiff and the

10   Class appropriate declaratory relief.

11

## PRAYER

12       WHEREFORE, Plaintiff and the Class pray for judgment against Defendant as follows:

13       1.    For a preliminary and permanent order of injunctive relief enjoining Defendant

14   from pursuing the acts and practices complained of herein;

15       2.    Imposition of a constructive trust and an Order granting restitution, disgorgement

16   of ill-gotten profits, and such other equitable relief as the Court deems just and proper;

17       3.    For actual damages according to proof;

18       4.    For declaratory relief;

19       5.    For reasonable attorneys' fees, costs and expenses of investigation and litigation;

20       6.    For costs of suit, pre-judgment, and post-judgment interest; and

21       7.    For such other and further relief as the Court may deem necessary or appropriate.

22

23   Dated: March 19, 2009                    CHAVEZ & GERTLER LLP

24                                            BONNETT, FAIRBOURN, FRIEDMAN
                                               & BALINT, PC

25

26                                           By: _____
                                                     Mark A. Chavez
27

28                                           Attorneys for Plaintiff

---

16                                    CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: March 19, 2009

CHAVEZ & GERTLER LLP

BONNETT, FAIRBOURN, FRIEDMAN
 & BALINT, PC

By: _____
        Mark A. Chavez

Attorneys for Plaintiff

CLASS ACTION COMPLAINT

1 │ BONNETT, FAIRBOURN, FRIEDMAN & BALINT, PC
    │ ANDREW S. FRIEDMAN (to be admitted *pro hac vice*)
2 │ GARRETT W. WOTKYNS (to be admitted *pro hac vice*)
    │ 2901 N. Central Avenue, Suite 1000
3 │ Phoenix, AZ 85012
    │ Telephone: (602) 274-1100
4 │ Facsimile: (602) 274-1199

5 │ CHAVEZ & GERTLER LLP
    │ MARK A. CHAVEZ (Bar No. 90858)
6 │ NANCE F. BECKER (Bar No. 99292)
    │ 42 Miller Ave.
7 │ Mill Valley, CA  94941
    │ Telephone: (415) 381-5599
8 │ Facsimile: (415) 381-5572

9 │ Attorneys for Plaintiff

ENDORSED
FILED
SAN FRANCISCO COUNTY
SUPERIOR COURT

2008 MAR 19  AM 12: 58

GORDON PARK-LI, CLERK

BY: ELLAS BELERK

CASE MANAGEMENT CONFERENCE SET

AUG 2 2 2008 -9ᵒᵒAM

DEPARTMENT 212

10 │ SUPERIOR COURT OF THE STATE OF CALIFORNIA

11 │ COUNTY OF SAN FRANCISCO

12 │ UNLIMITED JURISDICTION

Case No.: CGC-08-473475

13 │ MARY B. LABRADOR, individually and on
14 │ behalf of all others similarly situated,      )    CLASS ACTION
                                                   )
15 │            Plaintiff,                          )    VENUE DECLARATION PURSUANT TO
                                                   )    CIVIL CODE §1780
16 │       vs.                                      )
                                                   )
17 │ SEATTLE MORTGAGE COMPANY,                      )
                                                   )
18 │                                                )
                                                   )
19 │            Defendant.                          )
                                                   )
20 │

21 │      I, Mark A. Chavez, declare:

22 │      1.     I am an attorney admitted to practice before all courts of the State of California. I

23 │ am a partner in the law firm Chavez & Gertler, LLP, one of the counsel of record for plaintiff

24 │ Mary Labrador and the proposed plaintiff class herein. I have personal knowledge of the

25 │ following matters, and if called as a witness I could testify competently to them.

26 │      2.     This is a class action suit challenging defendant Seattle Mortgage Company's

27 │ practice of charging unlawful fees in connection with reverse mortgage loans. In particular,

28 │ Plaintiff alleges that Defendant charged her and other consumers substantial loan broker fees –

1

COPY

1   including but not limited to loan broker fees included in or characterized as "origination" fees --

2   in circumstances where the broker was not engaged independently by the borrower and there is

3   an ongoing financial relationship between the mortgage broker and the Defendant. Plaintiff

4   asserts that this practice violates Business & Professions Code §17200 in that it is unlawful (*see*

5   24 C.F.R. § 206.31(a)(1)), unfair and deceptive; violates the Consumers Legal Remedies Act

6   ("CLRA"), Civil Code § 1750 *et seq.*; and, because Plaintiff and the other members of the

7   proposed class are senior citizens, constitutes "elder abuse" as defined in Welfare & Institutions

8   Code § 15600 *et seq.* The class consists of all persons in California (a) with reverse mortgages

9   that were originated, structured and/or underwritten by Defendant, and (b) who were charged an

10  "origination fee" by Defendant that was conveyed to an originating mortgage broker where the

11  broker also was paid a "correspondent fee" or similar fee.

12      3.      I am informed and believe that plaintiff Mary Labrador is a resident of San

13  Francisco, and that she entered into the reverse mortgage transaction which gives rise to her

14  claims in San Francisco.

15      4.      Defendant Seattle Mortgage Company is a mortgage banker which offers reverse

16  mortgages and other secured loan products in several states in the United States, including

17  California. Based on publicly filed documents, Plaintiff is informed and believes that Seattle

18  Mortgage Company made 2,200 reverse mortgages to California residents during the time period

19  relevant hereto, including residents of the City and County of San Francisco. The property

20  which secured Plaintiff's loan is located in San Francisco, Defendant contracted with her in San

21  Francisco, and Defendant's liability to Plaintiff arose in San Francisco. I am also informed and

22  believe that Defendant generally does business in the City and County of San Francisco and has

23  solicited business from and imposed unlawful loan fees and charges on other class members who

24  live in San Francisco. On that basis, I am informed and believe that venue is proper in this Court

25  under C.C.P. § 395.5 and Civil Code § 1780(c).

26  ///

27  ///

28  ///

PLAINTIFF'S DECLARATION PURSUANT TO CIVIL CODE §1780

1     I declare under penalty of perjury under the laws of the State of California that the

2 foregoing is true and correct, and that this declaration was executed in Mill Valley, California

3 on March 19, 2008.

4

5                                                                Mark A. Chavez

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

## NOTICE TO PLAINTIFF

A Case Management Conference is set for

        **DATE:**    **AUG-22-2008**

        **TIME:**    **9:00AM**

        **PLACE:**    **Department 212**
                    **400 McAllister Street**
                    **San Francisco, CA 94102-3680**

All parties must appear and comply with Local Rule 3.

> CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.
>
> However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged In Department 212 twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

> **IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL.** (SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400 McAllister Street, Room 103
San Francisco, CA 94102
(415) 551-3876

**See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges**

**F I L E D**

*San Francisco County Superior Court*

OCT 2 3 2007

GORDON PARK-LI, Clerk

BY: _____
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 304

In re:                                            )
                                                  )
   COMPLEX LIGITATION                             )   **AMENDED GENERAL ORDER RE:**
                                                  )   **PROCEDURE FOR APPROVAL OF**
                                                  )   **COMPLEX LITIGATION DESIGNATION**
                                                  )
                                                  )   The Honorable Richard A. Kramer
                                                  )
                                                  )
_____ )

This Order shall apply to any case designated as a Complex Case on the Civil Case Cover

Sheet (Judicial Council Form CM-010, Rule 3.220, Cal. Rules of Court) filed in San Francisco

Superior Court. As to all such cases:

1. The fee(s) required by California Government Code section 70616 shall be paid upon

filing such designation.

2. No case shall be assigned to the Complex Litigation Department until an Application For

Approval of Complex Litigation Designation has been made in accordance with this Order, and the

Court has ordered the case so assigned.

-1-

GENERAL ORDER COMPLEX LITIGATION

3. An Application for Approval of Complex Designation should be made as early in the case as is feasible and must set forth with specificity the reasons that the case should be assigned to the Complex Litigation Department in accordance with the factors set forth in Rule 3.400 *et seq.*, California Rules of Court. A copy of such Application, together with a copy of the operative Complaint and of the Civil Case Cover Sheet, shall be delivered to the clerk of Department 304 promptly upon filing. Copies of the Application shall be served on all other parties who have been served with the Complaint or have appeared in the case.

4. A Complex Case Designation which does not comply with this Order may be deemed denied without further order.

5. Until such time as the Court issues an order assigning the case to the Complex Litigation Department, it will remain in its otherwise assigned case management plan and shall be subject to all applicable case management rules and procedures. *See* Rule 3 – Civil Case Management, San Francisco Superior Court Local Rules of Court.

6. Upon the denial of Complex Case Designation, either under paragraph 4 hereof or by specific court order, and no sooner than 60 days after the date of filing the Civil Case Cover Sheet, the Clerk of the Court shall, upon request, refund any fees paid pursuant to California Government Code section 70616(a) or (b). *See* Cal. Gov. Code § 70616(d).

7. This Order does not modify the provisions of Rule 3.403(b), California Rules of Court.

IT IS SO ORDERED.

Dated: October 23, 2007

The Honorable Richard A. Kramer

-2-

GENERAL ORDER re COMPLEX LITIGATION

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.:                          FAX NO. *(Optional)*:

E-MAIL ADDRESS *(Optional)*:

ATTORNEY FOR *(Name)*:

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| (Check one): ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000)    ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

**A CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date:                     Time:            Dept.:            Div.:            Room:

Address of court *(if different from the address above)*:

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one)*:
   a. ☐ This statement is submitted by party *(name)*:
   b. ☐ This statement is submitted jointly by parties *(names)*:

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date)*:
   b. ☐ The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not)*:
      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names)*:
      (3) ☐ have had a default entered against them *(specify names)*:
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served)*:

4. **Description of case**
   a. Type of case in ☐ complaint    ☐ cross-complaint    *(describe, including causes of action)*:

| Form Adopted for Mandatory Use Judicial Council of California CM-110 [Rev. January 1, 2007] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court, rules 3.720–3.730 www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.FormsWorkflow.com

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4.  b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐  *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**
    The party or parties request ☐ a jury trial ☐ a nonjury trial  *(if more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**
    a.  ☐ The trial has been set for *(date):*
    b.  ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

    c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**
    The party or parties estimate that the trial will take *(check one):*
    a.  ☐ days *(specify number):*
    b.  ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*
    The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
    a.  Attorney:
    b.  Firm:
    c.  Address:
    d.  Telephone number:
    e.  Fax number:
    f.  E-mail address:
    g.  Party represented:
    ☐  Additional representation is described in Attachment 8.

9.  **Preference**
    ☐  This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
    a.  Counsel ☐ has ☐ has not  provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
    b.  ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
    c.  ☐ The case has gone to an ADR process *(indicate status):*

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d.    The party or parties are willing to participate in *(check all that apply):*

    (1) ☐ Mediation

    (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

    (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

    (4) ☐ Binding judicial arbitration

    (5) ☐ Binding private arbitration

    (6) ☐ Neutral case evaluation

    (7) ☐ Other *(specify):*

    e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

    f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

    g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption):*

**11. Settlement conference**

    ☐ The party or parties are willing to participate in an early settlement conference *(specify when):*

**12. Insurance**

    a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

    b. Reservation of rights: ☐ Yes ☐ No

    c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**13. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

    ☐ Bankruptcy ☐ Other *(specify):*

    Status:

**14. Related cases, consolidation, and coordination**

    a. ☐ There are companion, underlying, or related cases.

        (1) Name of case:

        (2) Name of court:

        (3) Case number:

        (4) Status:

    ☐ Additional cases are described in Attachment 14a.

    b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**15. Bifurcation**

    ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**16. Other motions**

    ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**CASE MANAGEMENT STATEMENT**

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Discovery**

   a. ☐ The party or parties have completed all discovery.

   b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|

   c. ☐ The following discovery issues are anticipated *(specify)*:

**18. Economic Litigation**

   a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.

   b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

**19. Other issues**

   ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

**20. Meet and confer**

   a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

   b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

**21. Case management orders**

   Previous case management orders in this case are *(check one)*: ☐ none ☐ attached as Attachment 21.

**22. Total number of pages attached *(if any)*: _____**

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____     ▶ _____
(TYPE OR PRINT NAME)                            (SIGNATURE OF PARTY OR ATTORNEY)

_____     ▶ _____
(TYPE OR PRINT NAME)                            (SIGNATURE OF PARTY OR ATTORNEY)

   ☐ Additional signatures are attached

CM-110 [Rev. January 1, 2007]      **CASE MANAGEMENT STATEMENT**     Page 4 of 4

# Alternative Dispute Resolution (ADR) Program Information Package

# Alternatives to Trial

## There are other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package
on each defendant along with the complaint.  (CRC 201.9(c))

**Superior Court of California
County of San Francisco**

# Introduction

Did you know that most civil lawsuits settle without a trial?

And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?

These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.

## Advantages of ADR

ADR can have a number of advantages over a lawsuit.

- *ADR can save time.* A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- *ADR can save money.* Court costs, attorneys fees, and expert fees can be saved.

- *ADR can be cooperative.* This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- *ADR can reduce stress.* There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- *ADR encourages participation.* The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- *ADR is flexible.* The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- *ADR can be more satisfying.* For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' position harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

## Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

# ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy. Attorneys are encouraged to share this guide with clients. By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

1) Judicial Arbitration
2) Mediation
3) The Early Settlement Program (ESP) in conjunction with the San Francisco Bar Association.

## JUDICIAL ARBITRATION

### Description

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case. When the Court orders a case to arbitration it is called <u>judicial arbitration</u>. The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through <u>private arbitration</u>. Here, the parties

voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

## Operation

Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the Court's Arbitration Panel. Most cases ordered to arbitration are also ordered to a pre-arbitration settlement conference. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is <u>not</u> binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a court trial within 30 days after the arbitrator's award has been filed.

## Cost

There is no cost to the parties for judicial arbitration or for the pre-arbitration settlement conference.

## MEDIATION

## Description

Mediation is a voluntary, flexible, and confidential process in which a neutral third party "mediator" facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of the dispute after exploring the significant interests, needs, and priorities of the parties in light of relevant evidence and the law.

Although there are different styles and approaches to mediation, most mediations begin with presentations of each side's view of the case. The mediator's role is to assist the parties in communicating with each other, expressing their interests, understanding the interests of opposing parties, recognizing areas of agreement and generating options for resolution. Through questions, the mediator aids each party in assessing the strengths and weaknesses of their position.

A mediator does not propose a judgment or provide an evaluation of the merits and value of the case. Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions. Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

## Operation

San Francisco Superior Court Local Court Rule 4 **provides three different voluntary mediation programs** for civil disputes. An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at www.sfgov.org/courts. Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties. A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

## Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation. The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial. Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110). Both forms are attached to this packet.

### Mediation Services of the Bar Association of San Francisco

The Mediation Services is a coordinated effort of the San Francisco Superior Court and The Bar Association of San Francisco (BASF) in which a court approved mediator provides three hours of mediation at no charge to the parties. It is designed to afford civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint, in an effort to resolve the matter before substantial funds are expended on the litigation process. Although the goal of the program is to provide the service at the outset of the litigation, the program may be utilized at anytime throughout the litigation process.

The mediators participating in the program have been pre-approved by the court pursuant to strict educational and experience requirements.

After the filing of the signed Stipulation to Alternative Dispute Resolution form included in this ADR package the parties will be contacted by BASF. Upon payment of the $200 per party administration fee, parties select a specific mediator from the list of court approved mediation providers. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waiver of the administrative fee based on financial hardship is available.

A copy of the Mediation Services rules can be found on the BASF website at www.sfbar.org, or you may call BASF at 415-782-9000.

### Judicial Mediation

The Judicial Mediation program is designed to provide early mediation of complex cases by volunteer judges of the San Francisco Superior Court. Cases considered for the program include construction defect, employment discrimination, professional malpractice, insurance coverage, toxic torts and industrial accidents.

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Coordinator will coordinate assignment of cases that qualify for the program.

## Cost

Generally, the cost of Private Mediation ranges from $200 per hour to $400 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $200 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

## EARLY SETTLEMENT PROGRAM

### Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar. The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute. The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference. A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case. The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

### Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court. Parties who wish to choose the early settlement process should indicate this preference on the status and setting conference statement.

If a matter is assigned to the ESP by the Court, parties may consult the ESP program materials accompanying the "Notice of the Early Settlement Conference" for information regarding removal from the program.

Participants are notified of their ESP conference date approximately 4 months prior to trial. The settlement conference is typically held 2 to 3 months prior to the trial date. The Bar Association's ESP Coordinator informs the participants of names of the panel members and location of the settlement conference approximately 2 weeks prior to the conference date.

Local Rule 4.3 sets out the requirements of the ESP. All parties to a case assigned to the ESP are required to submit a settlement conference statement prior to the conference. All parties, attorneys who will try the case, and insurance representatives with settlement authority are required to attend the settlement conference. If settlement is not reached through the conference, the case proceeds to trial as scheduled.

### Cost

All parties must submit a $250 generally non-refundable administrative fee to the Bar Association of San Francisco. Parties who meet certain eligibility requirements may request a fee waiver. For more information, please contact the ESP Coordinator at (415) 782-9000 ext. 8717.

* * * * * * * * * * * * * * * * * * * *

For further information about San Francisco Superior Court ADR programs or dispute resolution alternatives, please contact:

Superior Court Alternative Dispute Resolution,
400 McAllister Street, Room 103
San Francisco, CA   94102
(415) 551-3876

or visit the Superior Court Website at
http://sfgov.org/site/courts_page.asp?id=3672



# Superior Court of California
## County of San Francisco

**HON. DAVID BALLATI**
**PRESIDING JUDGE**

### Judicial Mediation Program

**JENIFFER B. ALCANTARA**
**ADR PROGRAM ADMINISTRATOR**

The Judicial Mediation program offers mediation of complex civil litigation by a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

The Honorable David J. Ballati
The Honorable Anne Bouliane
The Honorable Ellen Chaitin
The Honorable Robert L. Dondero
The Honorable Ernest H. Goldsmith
The Honorable Harold E. Kahn
The Honorable Patrick J. Mahoney
The Honorable Tomar Mason

The Honorable James J. McBride
The Honorable Kevin M. McCarthy
The Honorable John E. Munter
The Honorable Ronald Quidachay
The Honorable A. James Robertson, II
The Honorable John K. Stewart
The Honorable Mary E. Wiss

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program and deliver a courtesy copy to Dept. 212. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Program Administrator will facilitate assignment of cases that qualify for the program.

Note: Space is limited. Submission of a stipulation to judicial mediation does not guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3876

10/07 (ja)

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SAN FRANCISCO

400 McAllister Street, San Francisco, CA  94102-4514

|  |  |
|---|---|
| Plaintiff<br><br>v.<br><br><br>Defendant | Case No. _____<br><br>**STIPULATION TO ALTERNATIVE<br>DISPUTE RESOLUTION** |

The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:

☐  **Private Mediation**          ☐  **Mediation Services of BASF**    ☐  **Judicial Mediation**
☐  **Binding arbitration**                                                        Judge _____
☐  **Non-binding judicial arbitration**                                   Judge _____
☐  **BASF Early Settlement Program**
☐  **Other ADR process (describe)** _____

**Plaintiff(s) and Defendant(s) further agree as follows:**

_____

_____

_____

_____

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐  Plaintiff    ☐  Defendant    ☐  Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐  Plaintiff    ☐  Defendant    ☐  Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐  Plaintiff    ☐  Defendant    ☐  Cross-defendant | | Dated: _____ |

☐  *Additional signature(s) attached*

1

1  JOHN B. SULLIVAN (State Bar No. 96742)
   JAN T. CHILTON (State Bar No. 47582)
2  ANDREA H. HENNINGSEN (State Bar No. 167361)
   ahh@severson.com
3  SEVERSON & WERSON
   A Professional Corporation
4  One Embarcadero Center, Suite 2600
   San Francisco, CA 94111
5  Telephone: (415) 398-3344
   Facsimile: (415) 956-0439
6

7  Attorneys for Defendant
   SEATTLE MORTGAGE COMPANY

*ENDORSED FILED*
*Superior Court of California*
*County of San Francisco*

**MAY - 1 2008**

GORDON PARK-LI, Clerk
BY: _MARIA SANCHEZ_
    Deputy Clerk

8             SUPERIOR COURT OF CALIFORNIA

9              COUNTY OF SAN FRANCISCO

10

11  MARY B. LABRADOR, individually and on
    behalf of all others similarly situated,

12          Plaintiff,

13

14     vs.

15  SEATTLE MORTGAGE COMPANY,

16          Defendant.

Case No.: CGC-08-473475

**NOTICE TO ADVERSE PARTY OF
REMOVAL TO FEDERAL COURT**

Dept.: 212

Complaint Filed: March 19, 2008

17     TO THE ABOVE-ENTITLED COURT AND TO MARY B. LABRADOR AND HER

18  ATTORNEYS OF RECORD:

19     PLEASE TAKE NOTICE THAT a Notice of Removal of this action was filed in the United

20  States District Court of the Northern District of California on May 1, 2008. A copy of the Notice

21  of Removal is attached to this Notice and is served and filed herewith.

22  DATED: May 1, 2008

                    SEVERSON & WERSON
23                      A Professional Corporation

24

25                   By: _____
                           Andrea H. Henningsen

26                    Attorneys for Defendant
27                    SEATTLE MORTGAGE COMPANY

28

1

# PROOF OF SERVICE

2    I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I
am employed in the City of San Francisco, California; my business address is Severson & Werson,
3    One Embarcadero Center, Suite 2600, San Francisco, CA 94111.

4    On the date below I served a copy, with all exhibits, of the following document(s):

5    **NOTICE TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT**

6    on all interested parties in said case addressed as follows:

7    Mark A. Chavez, Esq.                    Andrew S. Friedman, Esq.
Nance F. Becker, Esq.                    Garrett W. Wotkyns, Esq.
8    Dan Gildor, Esq.                         BONNETT, FAIRBURN, FRIEDMAN & BALINT, PC
CHAVEZ & GERTLER LLP                      2901 N. Central Avenue, Suite 1000
9    42 Miller Avenue                         Phoenix, AZ 85012
Mill Valley, CA 94941                    Telephone: (602) 274-1100
10   Telephone: (415) 381-5599                Facsimile: (602) 274-1199
Facsimile: (415) 381-5572                **Attorneys for Plaintiff**
11   **Attorneys for Plaintiff**

12   ☒ **(BY MAIL)** By placing the envelope for collection and mailing following our ordinary
business practices. I am readily familiar with the firm's practice of collecting and processing
13   correspondence for mailing. On the same day that correspondence is placed for collection and
mailing, it is deposited in the ordinary course of business with the United States Postal Service in
14   San Francisco, California, in sealed envelopes with postage fully prepaid.

15

16   I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct. This declaration is executed in San Francisco, California, on May 1,
17   2008.

18   _____
Anne Ogonowski

19

20

21

22

23

24

25

26

27

28

1 | JOHN B. SULLIVAN (State Bar No. 96742)
jbs@severson.com
2 | JAN T. CHILTON (State Bar No. 47582)
jtc@severson.com
3 | ANDREA H. HENNINGSEN (State Bar No. 167361)
ahh@severson.com
4 | SEVERSON & WERSON
A Professional Corporation
5 | One Embarcadero Center, Suite 2600
San Francisco, CA 94111
6 | Telephone: (415) 398-3344
Facsimile: (415) 956-0439
7
8 | Attorneys for Defendant
SEATTLE MORTGAGE COMPANY

9 | UNITED STATES DISTRICT COURT

10 | NORTHERN DISTRICT OF CALIFORNIA

11

12 | MARY B. LABRADOR, individually and on behalf of all others similarly situated,

Case No.:

13 | Plaintiff,

**NOTICE OF REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT [28 U.S.C. §§1332(d), 1453(b)]**

14 | vs.

15 | SEATTLE MORTGAGE COMPANY,

16 | Defendant.

17

18 | TO THE CLERK OF THE ABOVE-ENTITLED COURT:

19 | PLEASE TAKE NOTICE that, under the Class Action Fairness Act (28 U.S.C. §§1332(d),

20 | 1453(b)), defendant Seattle Mortgage Company hereby removes to this Court the state court action

21 | described below:

22 | **The Removed Action**

23 | 1.     On March 19, 2008, plaintiff Mary B. Labrador commenced this action, entitled

24 | *Mary B. Labrador, individually and on behalf of all others similarly situated, plaintiff, v. Seattle*

25 | *Mortgage Company, defendant,* No. CGC-08-473475 in the Superior Court of the State of

26 | California for the City and County of San Francisco.

27

28

EXHIBIT A

2.       Seattle Mortgage Company first received a copy of the complaint in this action on April 4, 2008, when Seattle Mortgage Company's agent for service of process was served with a copy of the complaint and summons in the action.

3.       As required by 28 U.S.C. § 1446(a), Seattle Mortgage Company has attached as Exhibit A true and correct copies of the civil case cover sheet (2 pages) summons (1 page); complaint (17 pages); Labrador's declaration pursuant to Civil Code section 1780 (3 pages); the notice to plaintiff re case management conference (1 page); Amended General Order Re: Procedure for Approval of Complex Litigation Designation (2 pages); blank form CM-110 for Case Management Statement (4 pages); Alternatives to Trial information (9 pages); Judicial Mediation Program (1 page); and blank ADR-2 form, Stipulation to Alternative Dispute Resolution (1 page), which constitute all process, pleadings and orders served on Seattle Mortgage Company in the action.

**Basis For Removal**

4.       This action is a civil class action of which this Court has original jurisdiction under 28 U.S.C. §1332(d) and is one which may be removed to this Court by Seattle Mortgage Company pursuant to 28 U.S.C. §§1441(a) and 1453(b).

5.       The action is a class action within the meaning of 28 U.S.C. § 1332(d)(1)(B). Paragraph 36 of the complaint alleges that Labrador brings the action on her own behalf and, pursuant to California Civil Code section 1780 and Code of Civil Procedure section 382, on behalf of a class of all "elders" within California who obtained reverse mortgages from Seattle Mortgage Company during the past four years and who were charged an origination fee some or all of which was paid to an originating mortgage broker to whom Seattle Mortgage Company also paid a correspondent fee or similar fee. Civil Code section 1770 and Code of Civil Procedure section 382 are similar to Federal Rule of Civil Procedure 23 and allow one or more representative persons to sue on behalf of others as a class action.

/ / / / /

/ / / / /

/ / / / /

- 2 -

6.    A member of the class is a citizen of a state different from that of defendant.

    a.    Seattle Mortgage Company is informed and believes that Labrador was, and still is, a citizen of the State of California. Paragraph 7 of the complaint alleges that she lives in the City and County of San Francisco.

    b.    Seattle Mortgage Company is informed and believes that one or more other members of the alleged plaintiff class are citizens of the State of California. Paragraph 36 of the complaint defines the class as "elders" in California.

    c.    Seattle Mortgage Company is a citizen of the State of Washington only. Its principal place of business is in Washington and it was incorporated in Washington. 28 U.S.C. §1332(c)(1).

7.    The matter in controversy in this action exceeds the sum or value of $5 million, exclusive of interest and costs, when the claims of all class members are aggregated as provided in 28 U.S.C. § 1332(d)(6).

    a.    The complaint does not allege an aggregate amount in controversy or pray for the award of any stated total sum on behalf of the class. The complaint does not allege that the aggregate amount in controversy is less than $5 million.

    b.    Paragraphs 28 – 34 of the complaint challenge the origination fee paid by Labrador and class members to the mortgage broker, and the correspondent fee paid by Seattle Mortgage to the mortgage broker for the delivery of the class members' loans to Seattle Mortgage. Labrador alleges she was charged $7,225.80 for the origination fee. Paragraph 38 of the complaint alleges that Labrador "reasonably estimates that Class members may number into the thousands…." Even if there are only 1,000 class members, and even if only origination fee is considered, the amount of controversy will exceed $5 million if the amount of Labrador's origination fee is representative of that paid by other class members.

    c.    Seattle Mortgage Company's records show that during the one-year period including plaintiff Labrador's loan (i.e., from September 2005 through August 2006), (i) Seattle Mortgage Company made HECM reverse mortgage loans to more than 2,000

1   persons in California who fit the class definition alleged in the complaint, and (ii) these

2   borrowers paid, on average, an origination fee of more than $6,000.

3          d.     Labrador seeks return of the $7,255 origination fee which she claims was

4   improperly collected from her, plus treble damages, punitive damages, and attorney fees

5   pursuant to statute. (Compl., ¶¶ 34, 51-53, 62, 74.) Labrador also seeks those additional

6   remedies on behalf of all class members.

7          8.     This notice of removal is timely under 28 U.S.C. § 1446(b) because Seattle Mortgage

8   Company has filed it within 30 days of service of the summons and complaint on Seattle Mortgage

9   Company.

10         9.     As required by 28 U.S.C. § 1446(d), Seattle Mortgage Company will provide

11  written notice of the removal of this action to Labrador, and to the San Francisco Superior Court.

12        WHEREFORE, Seattle Mortgage Company prays that this action be removed to this Court

13  for final determination.

14

15  DATED: May 1, 2008                 SEVERSON & WERSON

16                                A Professional Corporation

17

18                      By:_____

19                            Andrea H. Henningsen

20                      Attorneys for Defendant

21                      SEATTLE MORTGAGE COMPANY

22

23

24

25

26

27

28

EXHIBIT A

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): 90858
Mark A. Chavez
Chavez & Gertler LLP
42 Miller Ave.
Mill Valley, CA 94941
TELEPHONE NO.: 415 381-5599   FAX NO.: 415 381-5572
ATTORNEY FOR (Name): Plaintiff Mary Labrador

FOR COURT USE ONLY

ENDORSED
FILED
SAN FRANCISCO COUNTY
SUPERIOR COURT

2008 MAR 19 AM 12: 58

GORDON PARK-LI, CLERK

BY: ELIAS DIH
DEPUTY CLERK

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 433 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, Ca 94102
BRANCH NAME:

CASE NAME: Labrador v. SMC

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: CGC-08-473475 |
|---|---|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: DEPT.: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[X] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [X] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [X] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [X] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought (check all that apply): a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action (specify): Five;
5. This case [X] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case.(You may use form CM-015.)

Date: March 19, 2008

Mark A. Chavez
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

Martin Dean's
ESSENTIAL FORMS™

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

427/LABRADOR

COPY

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)-Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the*
  *case involves an uninsured*
  *motorist claim subject to*
  *arbitration, check this item*
  *instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or*
  *toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice-
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil*
  *harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer*
    *or wrongful eviction)*
  Contract/Warranty Breach-Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case-Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally*
  *complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent*
    *domain, landlord/tenant, or*
    *foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal*
  *drugs, check this item; otherwise,*
  *report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ-Administrative Mandamus
  Writ-Mandamus on Limited Court
    Case Matter
  Writ-Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal-Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400-3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex*
  *case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-*
    *domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified*
  *above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-*
    *harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified*
  *above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late
    Claim
  Other Civil Petition

427/LABRADOR

SUM-100

# SUM....NS
## *(CITATION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO)* :
Seattle Mortgage Company

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE)* :
Mary Labrador

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DIAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es)*:<br>San Francisco Superior Court | CASE NUMBER<br>*(Número del Caso)*: **CGC-08-473475** |
|---|---|

433 McAllister Street          San Francisco, Ca 94102
The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es)*:
Mark A. Chavez          Chavez & Gertler LLP
42 Miller Ave.          Mill Valley, CA  94941
415 381-5599
DATE: March MAR 1 9 2008          Clerk, by ~~Gordon Park-Li~~ **ELIAS BOU**, Deputy
*(Fecha)*          *(Secretario)*          *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

| (SEAL) | **NOTICE TO THE PERSON SERVED:** You are served |
|---|---|

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)* :

3. ☒ on behalf of *(specify)* :  Seattle Mortgage Company
   under:  ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)          ☐ CCP 416.90 (authorized person)
   ☐ other *(specify)* :
4. ☐ by personal delivery on *(date)* :

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. January 1, 2004]<br>Martin Dean's Essential Forms ™ | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 |
|---|---|---|

427/LABRADOR

ENDORSED
FILED
SAN FRANCISCO COUNTY
SUPERIOR COURT

2008 MAR 19  AM 12: 58

GORDON PARK-LI, CLERK

BY: _____

1    BONNETT, FAIRBOURN, FRIEDMAN & BALINT, PC
     ANDREW S. FRIEDMAN (to be admitted *pro hac vice*)
2    GARRETT W. WOTKYNS (to be admitted *pro hac vice*)
     2901 N. Central Avenue, Suite 1000
3    Phoenix, Arizona 85012
     Telephone: (602) 274-1100
4    Facsimile:  (602) 274-1199

5    CHAVEZ & GERTLER LLP
     MARK A. CHAVEZ (Bar No. 90858)
6    NANCE F. BECKER (Bar No. 99292)
     DAN GILDOR (Bar No. 223027)
7    42 Miller Ave.
     Mill Valley, California  94941
8    Telephone: (415) 381-5599
     Facsimile:  (415) 381-5572
9

10   Attorneys for Plaintiff

11                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                           COUNTY OF SAN FRANCISCO

13                             UNLIMITED JURISDICTION

14

15   MARY B. LABRADOR, individually and on     )   Case No.: CGC-08-473475
     behalf of all others similarly situated,  )
16                                             )   CLASS ACTION COMPLAINT FOR:
                                               )   1.   Elder Financial Abuse;
17          Plaintiff,                          )   2    Unlawful, Deceptive and Unfair
                                               )        Business Practices;
18                                             )   3.   CLRA Violations;
                                               )   4.   Unjust Enrichment and
19   vs.                                        )        Imposition of Constructive Trust;
                                               )   5.   Declaratory Relief
20   SEATTLE MORTGAGE COMPANY,                  )
                                               )   JURY TRIAL DEMANDED
21                                             )
                                               )
22          Defendant.                          )

23

24

25

26

27

28

CASE MANAGEMENT CONFERENCE SET

AUG 2 2 2008 -9ᵒᵒAM

DEPARTMENT 212

COPY

CLASS ACTION COMPLAINT

1         Plaintiff MARY B. LABRADOR brings this action against SEATTLE MORTGAGE

2    COMPANY ("SMC" or "Defendant"), on behalf of herself and all others similarly situated.

3    Upon information and belief, as well as the investigation of counsel, Plaintiff alleges as follows:

4    <div align="center">**INTRODUCTION**</div>

5         1.    This class action challenges and seeks to redress Defendant's unlawful assessment

6    of fees in connection with reverse mortgage loans.  As explained further below, under the

7    governing federal regulations, Defendant is barred from charging borrowers loan origination fees

8    which are passed on to the loan broker in situations where there is a financial interest between

9    the mortgage broker and the lender.  In complete disregard of this rule, Defendant charged senior

10   citizens who purchased reverse mortgages loan-related origination fees that were paid to brokers

11   with whom Defendant had a financial interest.  The existence of such a "financial interest" is

12   apparent where, as here, the lender pays the broker both a "correspondent fee" *and* all or a

13   portion of the "origination fee" charged to the borrower.  Such origination fees do not

14   compensate Defendant for origination expenses, but are used as a financial incentive to

15   encourage mortgage brokers to refer loan business to Defendant.  This practice is both unlawful

16   and unfair.

17        2.    Reverse mortgages are a lucrative business for lenders. The potential market for

18   reverse mortgages in California is huge.  Based on home ownership rates in California and

19   national trends, approximately 2.1 million Californians, or roughly 60% of seniors in the state,

20   are eligible for reverse mortgages.  Because of the large population of senior citizens combined

21   with high real estate values, interest in and use of reverse mortgages in California is particularly

22   strong.  Given the immense amount of money at stake in this relatively new market and the

23   development in recent years of sophisticated "predatory lending" schemes by mortgage lenders,

24   it is unsurprising that the unlawful activity many borrowers have experienced in the "forward"

25   loan market has migrated to the reverse mortgage market.

26        3.    On behalf of herself and a California class of all others similarly situated, Plaintiff

27   asks the Court to declare unlawful and to enjoin Defendant's unlawful and unfair practice of

28   assessing improper origination fees in connection with reverse mortgages.  Plaintiff also seeks to

1 | recover restitution and damages from Defendant.

2 | <center>**JURISDICTION AND VENUE**</center>

3 | 4.    This Court has jurisdiction under Code of Civil Procedure § 410.10. Plaintiff's

4 | damages exceed the jurisdictional minimum of this Court.

5 | 5.    Venue is proper in the County of San Francisco because Plaintiff's causes of

6 | action accrued?? in the County of San Francisco, and Plaintiff resides in this County.

7 | 6.    Venue is also proper in this County under Civil Code § 1780(c), because

8 | Defendant is doing business in this County, a substantial number of Defendant's reverse

9 | mortgages, including Plaintiff's reverse mortgage, were originated in this county, and Plaintiff

10 | resides in this County.

11 | <center>**PARTIES**</center>

12 | 7.    Plaintiff Mary Labrador is 82 years old, and therefore an "elder" as defined by

13 | Welfare and Institutions Code § 15610.27 and Civil Code § 1761(f). Mrs. Labrador lives in the

14 | City and County of San Francisco, California.

15 | 8.    Defendant SMC is a mortgage banker which is a member of the Seattle Financial

16 | Group family of companies. On information and belief, up until April, 2007, SMC conducted

17 | the majority of its reverse mortgage business through a subsidiary or operating division known as

18 | Reverse Mortgage of America ("RMA"). Effective on or about April 26, 2007, SMC sold RMA,

19 | and/or the assets of RMA, to Bank of America. (*See* (http://newsroom.bankofamerica.com/

20 | index.php?s=press_releases&item=7752, last viewed December 12, 2007). RMA's Internet site

21 | states that "[a]s of June 29, 2007, Reverse Mortgage of America is now Bank of America, as

22 | Bank of America acquired the reverse mortgage business of Seattle Mortgage Company,

23 | including Reverse Mortgage of America." (http://www.reversemortgageofamerica.com/

24 | about_reverse_mortgage.asp, last viewed December 12, 2007).

25 | 9.    Notwithstanding the acquisition, SMC continues to offer reverse mortgages along

26 | with a variety of other secured loan products. (www.seattlemortgage.com/products.php, last

27 | viewed January 14, 2008.)

28 |

CLASS ACTION COMPLAINT

1      10.    Plaintiff is informed and believes and thereon alleges that at the time of Plaintiff's

2  loan, and continuing through the present, SMC was and is a reverse mortgage lender approved

3  by the U.S. Department of Housing and Urban Development.

4                        **NATURE OF ACTION**

5      11.    Defendant SMC provides "reverse mortgages" to senior citizens. In connection

6  with these transactions, Defendant charges borrowers designated "origination fees" and pays all

7  or a portion of those fees to the mortgage brokers who arrange or refer the loan. In addition,

8  when the loan closes, Defendant "pays outside of closing" to the mortgage brokers

9  "correspondent" fees or similar fees. It is a violation of applicable federal regulations, and thus

10  an unlawful and unfair practice under state law, for borrowers to be charged such origination fees

11  when the brokers are also receiving these back-channel fees. This action seeks to halt the

12  imposition of these charges and secure relief for class members who have been improperly

13  charged.

14      12.    A reverse mortgage is a type of home equity loan that allows a senior homeowner

15  to convert her home's equity into cash, while allowing her to retain ownership and not make

16  immediate repayments. The term "reverse" refers to the fact that instead of the borrower making

17  a monthly payment to the lender, the lender makes payments to the borrower. Money obtained

18  through a reverse mortgage can be used for any purpose. Reverse mortgage loan proceeds are

19  commonly used for everyday living expenses, home repairs and/or in-home health care.

20  Depending on the reverse loan program, the borrower may not have to repay either the loan

21  principal or accrued interest as long as she lives in her home. That period typically ends when

22  the homeowner becomes incapable of caring for herself, requires nursing home care, or dies.

23  Due to the advanced age of most reverse mortgage borrowers, the term of the reverse mortgage

24  loan is often short. *See* Victoria Wong and Norma Paz Garcia, *There's No Place Like Home:*

25  *The Implications of Reverse Mortgages on Seniors in California*, Consumers Union Report

26  (August 1999).

27

28

CLASS ACTION COMPLAINT

1    13.    Repayment of the reverse mortgage is secured by means of a deed of trust on the

2    home.  The eventual sale of the home is expected to generate proceeds to repay the principal

3    ultimately borrowed, along with interest, fees and expenses.

4    14.    Reverse mortgage loans appear to be an attractive option for the many financially-

5    strapped seniors like Plaintiff who live on fixed or limited incomes.  However, reverse mortgages

6    impose substantial fees and costs on borrowers.  Those fees and costs are added to the loan

7    balance at the outset.

8    15.    Reverse mortgages are highly complex financial instruments that even relatively

9    sophisticated consumers have difficulty understanding.  One would never guess this, however,

10   from reading the Internet site of Home Center Mortgage ("Home Center"), the firm that brokered

11   Plaintiff's reverse mortgage loan.  It baldly states that the reverse mortgage is:

12   > [t]he *newest and absolute best loan program for seniors, it allows you to*
13   > *borrow money without ever making payments*. Do you want to eliminate
>    your house payment? Do you need extra income every month? Do you need
14   > to make home improvements? Do you want to take a vacation? Does your
>    family need help? Our Reverse Mortgage Specialists are ready to help you
15   > secure a government insured Reverse Mortgage for all of your financial
>    needs. There is virtually no qualifying, as long as you are 62 or over and
16   > own your home, even if it is not paid off, we can start working toward
>    helping you enjoy your retirement.
17

18   (http://homecenterrealty.com, last visited September 14, 2007 [emphasis added].)  In contrast to

19   Home Center's representations concerning reverse mortgage costs, the Federal Trade

20   Commission warns consumers in an Internet advisory entitled "Reverse Mortgages: Get the Facts

21   Before Cashing In On Your Home's Equity" that "reverse mortgages tend to be more costly than

22   other home loans.  The up-front costs can be high[.]"  (http://www.ftc.gov/bcp/conline/pubs/

23   homes/rms.shtm, last viewed May 17, 2007).

24   16.    For these reasons, the still-young reverse mortgage industry has already generated

25   a wide variety of consumer financial abuse.  One example of such abuse is the imposition of

26   abusive loan-related fees and costs such as the origination fees that are the subject of this

27   Complaint.

28

4    CLASS ACTION COMPLAINT

17.     As a result of reverse mortgage consumer abuses, the federal government and state governments have promulgated reverse mortgage-specific consumer protection laws, which generally protect rights of senior citizens and require full disclosure of all material facts associated with reverse mortgages. The reverse mortgage loan made by Defendant to Plaintiff violated at least one of these laws, 24 C.F.R. § 206.31(a)(1), which expressly states that, "A mortgage broker's fee can be included as part of the origination fee only if the mortgage broker is engaged independently by the homeowner *and if there is no financial interest between the mortgage broker and the mortgagee*" (emphasis added).

18.     Although an "origination fee" is intended to be a fee that "covers the reverse mortgage operating expenses of the lender" (*see* www.reversemortgageofamerica.com, last visited December 4, 2007), Defendant charges borrowers "origination fees" that it in fact pays to mortgage brokers. In addition, under the pretext of purchasing loan servicing rights from reverse mortgage loan brokers, Defendant systematically makes direct payments to brokers, including Plaintiff's broker. These payments are offered as an incentive to brokers to steer loan applicants to Defendant, and to reward them when they do so. The payments do not, however, secure servicing rights to reverse mortgage loans. Properly speaking, loan brokers such as Home Center have no "servicing rights" in the loans they broker to sell to Defendant or any other party.

19.     A community of financial interest exists between Defendant and its loan brokers (including Plaintiff's broker, Home Center) in transactions where Defendant makes these payments to brokers. Indeed, the Home Center's website promotes the company by stating, "[w]e are proud to have close relationships with the most reputable Reverse Mortgage lenders Seattle Mortgage (Seattle Savings Bank [and others]." (www.homecenterrealty.com, Reverse Mortgage, "About Us," last visited Jan. 18, 2007.) Both brokers and Defendant benefit when a reverse mortgage loan is consummated under the back-channel fee arrangement that Defendant maintains with its broker force. Brokers in such cases often receive not only the back-channel fee, but also, typically, a much larger origination fee – a fee to which brokers have no right under federal law. And by paying these fees, Defendant in turn gains a stronger position in the one segment of the mortgage market that is "poised for a sustained boom" even as the rest of the

1  mortgage market founders.  (http://realtytimes.com/rtcpages/20070430_reversemort.htm, last

2  viewed November 8, 2007).

3      20.    By this action, Plaintiff and the Class seek an order enjoining Defendant from

4  continuing improperly to assess borrowers for reverse loan origination and correspondent fees,

5  and declaring that practice unlawful.  Plaintiff and the Class also seek treble damages for

6  violations of the elder abuse statutes of California, together with monetary damages, statutory

7  damages, restitution, attorney fees, and such other legal and/or equitable relief as may be

8  appropriate to redress Defendant's wrongful conduct.

9                    **PLAINTIFF'S REVERSE MORTGAGE TRANSACTION**

10     21.    On information and belief, Defendant markets its reverse loan products primarily

11 through a network of mortgage brokers and other agents, including Home Center.

12     22.    In or about July 2006, Michael R. Fullam, an agent of Home Center, contacted

13 Plaintiff, then 80 years of age, concerning the possibility of Plaintiff entering into a reverse

14 mortgage loan.  Mr. Fullam advised Plaintiff to enter into a reverse mortgage originated by

15 Defendant, brokered by Home Center, and secured by a deed of trust on her home.

16     23.    On or about August 10, 2006, Plaintiff entered into a reverse mortgage loan

17 originated by Defendant.  Upon information and belief, Bank of America presently services

18 Plaintiff's reverse mortgage loan.

19     24.    According to Plaintiff's HUD-I Settlement Statement, Plaintiff paid at closing a

20 $7,255.80 "origination fee" in connection with her reverse mortgage loan.  According to

21 Plaintiff's loan materials, that fee was conveyed in its entirety not to the bank that actually

22 originated her loan (Defendant SMC), but to her mortgage broker, Home Center.

23     25.    According to Plaintiff's HUD-I Settlement Statement, Defendant also paid a

24 "correspondent fee" to Home Center in the amount of $490 in connection with Plaintiff's loan

25 closing.

26     26.    Plaintiff's reverse mortgage was a Home Equity Conversion Mortgage loan

27 ("HECM") guaranteed by the U.S. Department of Housing and Urban Development ("HUD"),

28 and thus subject to loan cost and fee limitations contained in applicable HUD regulations.

27.    Defendant's reverse mortgage loan to Plaintiff violated 24 C.F.R. § 206.31(a)(1) because, among other things, Plaintiff was charged origination fees which were paid to the mortgage broker despite the fact that Defendant and Home Center had a financial relationship.

28.    Because there was a "financial interest" between Home Center and Defendant within the meaning of 24 C.F.R. § 206.31(a)(1), Plaintiff should not have been charged a reverse mortgage "origination fee" that was paid in whole or in part to Home Center.

29.    In a November 6, 2007 letter from Bank of America's Assistant General Counsel on behalf of Bank of America and its "predecessor in interest, Seattle Mortgage Company," the Bank contended that the "correspondent fee" Plaintiff paid was: (a) a "back-funded payment to [a] mortgage broker;" and (b) a fee that "the lender paid the originating broker for servicing rights to the loan." As numerous courts have held, though, originating mortgage brokers own no servicing rights in the loans they broker. Thus, Home Center owned no servicing rights in Plaintiff's reverse mortgage loan that it could sell to Defendant or to any other party.

30.    Among other things, servicing rights on a mortgage loan include the rights to collect principal and interest payments on the loan, to obtain from the borrower any delinquent principal, interest and/or penalty payments due under the loan agreement, and to recover payment of property taxes. The servicing rights on Plaintiff's reverse mortgage loan did not exist until the loan was consummated and funded by Defendant. Defendant – and not Home Center – was the initial owner of all servicing rights associated with Plaintiff's loan.

31.    Thus, while the so-called "correspondent fee" that Defendant paid to Home Center was indeed a payment to Home Center for delivering Plaintiff's loan to Defendant, it was not a payment for servicing rights on Plaintiff's loan. In connection with its enforcement of the Real Estate Settlement Procedures Act (RESPA), HUD has unambiguously condemned such covert payments from lenders to brokers. HUD's website plainly states that, "your mortgage lender may not pay your real estate broker . . . for referring you to the lender." (http://www.hud.gov/offices/hsg/sfh/res/sc2secti.cfm, last viewed November 11, 2007).

32.    Such "back-funded payments" link brokers like Home Center and lenders like Defendant in a community of financial interest. Both parties benefit from this concealed fee

1  arrangement: brokers by obtaining payment of increased fees at closing, and lenders by

2  obtaining profitable and well-performing mortgage loans. Such payments incentivize brokers

3  like Home Center to steer additional reverse mortgage loans to Defendant.

4      33.    Given the nature of this disguised fee arrangement and Plaintiff's relationship

5  with her broker, Defendant was prohibited under 24 C.F.R. § 206.31(a)(1) from charging

6  Plaintiff the origination fee she paid in connection with her reverse mortgage loan while it was

7  also compensating Home Center through a "correspondent fee."

8      34.    Plaintiff was harmed by her purchase of the reverse mortgage. The $7,255.80

9  origination fee that Plaintiff was charged in connection with her reverse mortgage loan was in

10  whole or in part a broker fee, and should not have been charged.

11                          <u>CLASS ALLEGATIONS</u>

12      35.    Plaintiff is informed and believes and on that basis alleges that Defendant has

13  charged and is continuing to charge senior citizens origination fees and correspondent fees which

14  are unlawfully paid to mortgage brokers who have not been independently engaged by class

15  members and/or with whom Defendant has a financial interest. As set forth more fully below,

16  Plaintiff alleges that Defendant's actions are unlawful, unfair and deceptive within the meaning

17  of Business & Professions Code § 17200 et seq. and California Civil Code § 1750 et seq., and

18  that they constitute "elder abuse" as defined by California Welfare & Institutions Code

19  § 15657.5 et seq.

20      36.    Pursuant to Code of Civil Procedure §382 and Civil Code §1780, Plaintiff asserts

21  these claims on behalf of herself and all other persons similarly situated. The Class consists of

22  the following individuals:

23          All "elder[s]" in California: (a) who purchased reverse mortgages that were
            originated, structured and/or underwritten by Defendant at any time during
24          the four years preceding the filing of this Complaint, and continuing until
            the date of trial; and (b) who were charged both an "origination fee" that
25          was conveyed, in whole or in part, to an originating mortgage broker, and a
            "correspondent fee" or similar fee that was also paid to the originating
26          mortgage broker.

27

28

8

1    37.    Plaintiff and the Class seek to enjoin Defendant from engaging in the unfair,

2    fraudulent and unlawful business practices alleged in this Complaint, to require Defendant to

3    make restitution and to restore to the affected members of the Class all monies wrongfully

4    obtained through its unfair and unlawful business practices, and to declare such business

5    practices unlawful.

6    38.    Class treatment of these claims is appropriate because the members of the Class

7    are so numerous that joinder of all members would be impracticable. Plaintiff reasonably

8    estimates that Class members number into the thousands; for example, in a pleading filed

9    January 18, 2008, Bank of America stated that SMC made 2,200 reverse mortgages to California

10    residents during the relevant time period. The precise number of class members entitled to

11    restitution, and their addresses, are unknown to Plaintiff, but can be ascertained through

12    appropriate discovery of Defendant's records. Class members may be notified of the pendency

13    of this action by mail, publication and/or other notice.

14    39.    There is a well-defined community of interest in the relevant questions of law and

15    fact affecting putative Class members. Common questions of law and fact predominate over any

16    individual questions affecting Class members, including but not limited to the following:

17        (a)    Whether Defendant, through its operation of RMA, improperly originated,

18            structured and/or underwrote reverse mortgage loans to senior citizens, including

19            Plaintiff and the Class;

20        (b)    Whether Defendant, in its current operations, continues improperly to

21            originate, structure and/or underwrite reverse mortgage loans to senior citizens,

22            including members of the Class;

23        (c)    Whether Defendant committed and continues to commit unfair, unlawful

24            and/or deceptive business practices in violation of Bus. & Prof. Code § 17200 in

25            its origination, structuring and/or underwriting of reverse mortgage loans to senior

26            citizens, including Plaintiff and the Class;

27        (d)    Whether Defendant committed elder abuse as defined in Welf. & Inst.

28            Code § 15600 *et seq.*;

(e)    Whether, in participating in the activities alleged in this Complaint, Defendant violated the Consumers Legal Remedies Act (Civil Code §1750 et seq.);

(f)    Whether Defendant has been unjustly enriched at the expense of Plaintiff and the Class;

(g)    Whether Plaintiff and members of the Class have sustained injury;

(h)    Whether Plaintiff and the Class are entitled to damages; and

(i)    Whether the Class is entitled to injunctive, declaratory and/or other relief.

40.    Plaintiff's claims are typical of those of the absent Class Members. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

41.    Plaintiff will fairly and adequately protect the interests of the Class and she has no interests adverse to, or that directly and irrevocably conflict with, the interests of other Class Members. Plaintiff is willing and prepared to serve the Court and the putative Class in a representative capacity with all of the obligations and duties attendant thereto.

42.    Plaintiff has retained the services of counsel, identified below on the signature page, who are experienced in complex class action litigation and in particular class actions involving financial services matters. Plaintiff's counsel will adequately prosecute this action, and will otherwise assert, protect and fairly and adequately represent Plaintiff and all absent Class Members.

43.    Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

(a)    individual claims by the Class members would be impracticable as the costs of pursuit would far exceed what any individual class member has at stake;

(b)    very little individual litigation has been commenced over the controversies alleged in this Complaint and individual Class members are unlikely to have an interest in separately prosecuting and controlling individual actions;

CLASS ACTION COMPLAINT

1     (c) the concentration of litigation of these claims in one forum will achieve

2    efficiency and promote judicial economy; and

3     (d) the proposed Class is manageable.

4   44. Therefore, class treatment of Plaintiff's claims is both appropriate and necessary.

5         **FIRST CAUSE OF ACTION**

6          **(Financial Elder Abuse)**

7   45. Plaintiff repeats and incorporates herein the allegations of paragraphs 1-44,

8 inclusive.

9   46. Defendant's conduct constitutes financial abuse under Welf. & Inst. Code

10 § 15657.5 *et seq.*, as defined in Welf. & Inst. Code § 15610.30. Welf. & Inst. Code § 15610.30

11 reads in pertinent part as follows:

12     (a) "Financial abuse" of an elder or dependent adult occurs when a person or

13    entity does any of the following:

14       (1) Takes, secretes, appropriates, or retains real or personal property of

15        an elder or dependent adult to a wrongful use or with intent to

16        defraud, or both.

17       (2) Assists in taking, secreting, appropriating, or retaining real or

18        personal property of an elder or dependent adult to a wrongful use

19        or with intent to defraud, or both.

20   47. At all relevant times, Defendant took and/or assisted in the taking of property

21 from Plaintiff and the Class for its own wrongful use and/or with intent to defraud.

22   48. Defendant manipulated Plaintiff and the Class into paying excessive, unlawful

23 and unfair fees and costs in connection with her reverse mortgage.

24   49. In performing these wrongful acts, the agents and employees of Defendant acted

25 on behalf of Defendant.

26   50. The conduct of Defendant was knowing, reckless, oppressive, fraudulent and

27 malicious within the meaning of Welf. & Inst. Code § 15657.5 *et seq.*

28

1    51.    Under Welf. & Inst. Code § 15657.5 *et seq.*, Defendant is liable for Plaintiff's

2    reasonable attorneys' fees and costs incurred in investigating and litigating this claim.

3    52.    Under Civil Code § 3294 and Welf. & Inst. Code § 15657.5, Defendant is liable

4    for punitive damages.

5    53.    Under Civil Code § 3345, Defendant is liable for treble damages and penalties

6    because: (a) Defendant knew its conduct was directed at senior citizens; (b) Defendant's conduct

7    caused a senior citizen to encumber her personal residence and suffer substantial loss of property

8    and assets set aside for her retirement and essential to her health and welfare; (c) Plaintiff is a

9    senior citizen who is more vulnerable than other members of the public to Defendant's conduct

10   because of her age, impaired understanding, impaired health or restricted mobility; and

11   (d) Plaintiff and the Class members actually suffered substantial economic damages as a result

12   Defendant's conduct.

13                              **SECOND CAUSE OF ACTION**

14                  **(Unlawful, Deceptive and Unfair Business Practices)**

15   54.    Plaintiff repeats and incorporates herein the allegations of paragraphs 1-53,

16   inclusive.

17   55.    Section 17200 prohibits any "unlawful ... business act or practice." Defendant has

18   violated §17200's prohibition against engaging in an unlawful act or practice by, *inter alia*, the

19   following:

20                  (a)    violating Cal. Welf. & Inst. Code §§ 15610.30 and 15657.5 et seq. (as

21                         further alleged above);

22                  (b)    violating 24 C.F.R. § 206.31(a)(1) by charging Plaintiff and the Class

23                         origination fees and conveying those fees to Home Center, a mortgage broker,

24                         where a financial interest existed between Home Center and Defendant.

25   56.    Plaintiff reserves the right to allege other violations of law and/or other unlawful

26   business acts or practices. Such conduct is ongoing and continues to this date.

27   57.    Section 17200 also prohibits any "unfair ... business act or practice." As detailed

28   in the preceding paragraphs, Defendant sold a reverse mortgage to Plaintiff with terms,

CLASS ACTION COMPLAINT

1    conditions, and under circumstances that violate federal and state law and fundamental policies

2    delineated in statutory provisions. Defendant gained the trust of Plaintiff, had access to her

3    private financial information, and induced her to encumber her personal residence and enter into

4    a reverse mortgage. Defendant acted similarly toward the other members of the Class. As a

5    result, Defendant engaged in unfair business practices prohibited by Cal. Bus. & Prof. Code

6    § 17200 *et seq.*.

7        58.    Section 17200 also prohibits any "fraudulent ... business act or practice." As

8    detailed in the preceding paragraphs, the conduct of Defendant was likely to deceive and did

9    deceive Plaintiff and the absent Class members. Defendant made misrepresentations about

10   reverse mortgages that it knew were likely to be deceptive and misleading for senior consumers,

11   failing to disclose all material features, facts, risks and/or attributes of reverse mortgages.

12   Defendant gained the trust of Plaintiff, had access to her personal information, and through its

13   unscrupulous sales practices, induced her to enter into a reverse mortgage loan transaction, all

14   the time knowing that those sales practices were likely to be misleading and deceptive for

15   Plaintiff.

16       59.    Defendant's practices have deceived or are likely to deceive members of the

17   public, including Plaintiff.

18       60.    As a result of Defendant's practices, Plaintiff and the Class have incurred actual

19   financial losses and damages including fees and charges that they otherwise would not have

20   incurred.

21       61.    Unless Defendant is enjoined from continuing to engage in the unlawful,

22   deceptive and unfair business practices described above, Plaintiff and the Class will continue to

23   be damaged.

24       62.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order requiring

25   Defendant immediately to cease such unlawful, unfair and deceptive business practices and

26   requiring Defendant to return the full amount of money improperly collected, including any

27   income derived from fees imposed on Plaintiff and the Class, plus interest and attorneys' fees.

28   ///

## THIRD CAUSE OF ACTION

### (Violation of the Consumers Legal Remedies Act)

63.    Plaintiff repeats and incorporates herein the allegations of paragraphs 1-62, inclusive.

64.    Plaintiff brings this cause of action on behalf of the Class seeking injunctive relief pursuant to the Consumers Legal Remedies Act ("CLRA"), Civil Code §1750, *et seq.*

65.    The CLRA applies to the conduct described herein, because it extends to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers. Specifically, the CLRA exists to protect consumers from unconscionable, fraudulent and deceptive sales practices.

66.    Plaintiff and each member of the Class are "consumers" within the meaning of California Civil Code §1761(d).

67.    The reverse mortgages that Defendant markets to seniors and originates are "goods" within the meaning of Civil Code §1761(a). The deceptive and fraudulent sale of reverse mortgages to senior citizens constitutes a "transaction" pursuant to Civil Code §1761(c). The deceptive and fraudulent business practices employed by Defendant in the sale of reverse mortgages are "services" pursuant to Civil Code §1761(b), and are services for other than commercial or business use. Plaintiff and the Class utilized these "services," which included deceptive and fraudulent disclosures and/or omissions made by Defendant.

68.    Defendant has violated, and continues to violate, the CLRA in at least the following respects:

(a)    In violation of Civil Code §1770(a)(3), Defendant failed to disclose and thus misrepresented its financial relationship with mortgage brokers, including but not limited to the broker who dealt with the Plaintiff, Home Center;

(b)    In violation of Civil Code §1770(a)(14), Defendant represented that the transactions, services or goods that it offers confer or involve rights that the transaction, service or good does not have;

14                    CLASS ACTION COMPLAINT

1        (c)    In violation of Civil Code §1770(a)(19), while providing financial

2    services to Plaintiff, Defendant failed to properly disclose costs, fees, and

3    charges associated with its reverse mortgages.

4        69.    Unless Defendant is permanently enjoined from continuing to engage in such

5    violations of the CLRA, other senior citizens will continue to be harmed by Defendant's acts and

6    practices in the same way Plaintiff and other members of the Class have been harmed already.

7        70.    Pursuant to Civil Code §1780(a)(3), Plaintiff and members of the class are

8    entitled to injunctive relief for Defendant's violations of the CLRA, as well as their costs and

9    reasonable attorney's fees, pursuant to Civil Code §1780(d). Plaintiff and members of the Class

10   request this Court to enjoin Defendant from continuing to employ the unlawful methods, acts,

11   and practices alleged above in whatever context they occur, pursuant to Civil Code §1780(a)(2).

12   <div align="center">**FOURTH CAUSE OF ACTION**</div>

13   <div align="center">**(Unjust Enrichment and Imposition of Constructive Trust)**</div>

14       71.    Plaintiff repeats and incorporates herein the allegations of paragraphs 1-70,

15   inclusive.

16       72.    By engaging in inappropriate reverse mortgage practices, Defendant obtained

17   payments from Plaintiff in the form of commissions, charges and fees, expenses and costs.

18       73.    As a result of the relationship between the parties and the facts stated above,

19   Defendant has been and will be unjustly enriched if it is permitted to retain such funds and

20   therefore a constructive trust should be established over the monies Plaintiff paid to Defendant,

21   including reverse mortgage commissions, charges and/or other fees, expenses and costs imposed

22   by Defendant. These monies are traceable to Defendant and/or firms utilized, operated and/or

23   controlled by Defendant.

24       74.    Plaintiff has no adequate remedy at law and has been damaged in an amount to be

25   determined at the trial of this action.

26   ///

27   ///

28   ///

## FIFTH CAUSE OF ACTION

### (Declaratory Relief)

75.    Plaintiff repeats and incorporates herein the allegations of paragraphs 1-74, inclusive.

76.    A controversy has arisen and exists between Plaintiff and the proposed Plaintiff Class, on the one hand, and Defendant, on the other, in that Plaintiff contends, and Defendant denies, that the fees charged by Defendant in connection with reverse mortgage loans and the other practices alleged above violate state and federal law and are deceptive and unfair.

77.    The Court can and should resolve this controversy by providing Plaintiff and the Class appropriate declaratory relief.

### PRAYER

WHEREFORE, Plaintiff and the Class pray for judgment against Defendant as follows:

1.    For a preliminary and permanent order of injunctive relief enjoining Defendant from pursuing the acts and practices complained of herein;

2.    Imposition of a constructive trust and an Order granting restitution, disgorgement of ill-gotten profits, and such other equitable relief as the Court deems just and proper;

3.    For actual damages according to proof;

4.    For declaratory relief;

5.    For reasonable attorneys' fees, costs and expenses of investigation and litigation;

6.    For costs of suit, pre-judgment, and post-judgment interest; and

7.    For such other and further relief as the Court may deem necessary or appropriate.

Dated: March 19, 2009        CHAVEZ & GERTLER LLP

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, PC

By: _____
        Mark A. Chavez

Attorneys for Plaintiff

1

## JURY DEMAND

2      Plaintiff demands a trial by jury.

3  Dated:  March 19, 2009          CHAVEZ & GERTLER LLP

4                                  BONNETT, FAIRBOURN, FRIEDMAN
5                                    & BALINT, PC

6

7  By: _____
                Mark A. Chavez

8

   Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ENDORSED
FILED
SAN FRANCISCO COUNTY
SUPERIOR COURT

2008 MAR 19 AM 12: 58

GORDON PARK-LI, CLERK

BY: ELIAS GEITER

1  BONNETT, FAIRBOURN, FRIEDMAN & BALINT, PC
   ANDREW S. FRIEDMAN (to be admitted *pro hac vice*)
2  GARRETT W. WOTKYNS (to be admitted *pro hac vice*)
   2901 N. Central Avenue, Suite 1000
3  Phoenix, AZ 85012
   Telephone: (602) 274-1100
4  Facsimile: (602) 274-1199

5  CHAVEZ & GERTLER LLP
   MARK A. CHAVEZ (Bar No. 90858)
6  NANCE F. BECKER (Bar No. 99292)
   42 Miller Ave.
7  Mill Valley, CA 94941
   Telephone: (415) 381-5599
8  Facsimile: (415) 381-5572

9  Attorneys for Plaintiff

**CASE MANAGEMENT CONFERENCE SET**

**AUG 2 2 2008 -9:00 AM**

**DEPARTMENT 212**

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                      COUNTY OF SAN FRANCISCO

12                         UNLIMITED JURISDICTION

13  MARY B. LABRADOR, individually and on     )  Case No.: **CGC-08-473475**
    behalf of all others similarly situated,   )
14                                             )  CLASS ACTION
                                               )
15            Plaintiff,                        )  VENUE DECLARATION PURSUANT TO
                                               )  CIVIL CODE §1780
16      vs.                                    )
                                               )
17  SEATTLE MORTGAGE COMPANY,                  )
                                               )
18                                             )
            Defendant.                          )
19                                             )
                                               )
20  _____)

21      I, Mark A. Chavez, declare:

22      1.      I am an attorney admitted to practice before all courts of the State of California. I

23  am a partner in the law firm Chavez & Gertler, LLP, one of the counsel of record for plaintiff

24  Mary Labrador and the proposed plaintiff class herein. I have personal knowledge of the

25  following matters, and if called as a witness I could testify competently to them.

26      2.      This is a class action suit challenging defendant Seattle Mortgage Company's

27  practice of charging unlawful fees in connection with reverse mortgage loans. In particular,

28  Plaintiff alleges that Defendant charged her and other consumers substantial loan broker fees –

                                               1

COPY

1   including but not limited to loan broker fees included in or characterized as "origination" fees --

2   in circumstances where the broker was not engaged independently by the borrower and there is

3   an ongoing financial relationship between the mortgage broker and the Defendant. Plaintiff

4   asserts that this practice violates Business & Professions Code §17200 in that it is unlawful (*see*

5   24 C.F.R. § 206.31(a)(1)), unfair and deceptive; violates the Consumers Legal Remedies Act

6   ("CLRA"), Civil Code § 1750 *et seq.*; and, because Plaintiff and the other members of the

7   proposed class are senior citizens, constitutes "elder abuse" as defined in Welfare & Institutions

8   Code § 15600 *et seq.* The class consists of all persons in California (a) with reverse mortgages

9   that were originated, structured and/or underwritten by Defendant, and (b) who were charged an

10   "origination fee" by Defendant that was conveyed to an originating mortgage broker where the

11   broker also was paid a "correspondent fee" or similar fee.

12        3.     I am informed and believe that plaintiff Mary Labrador is a resident of San

13   Francisco, and that she entered into the reverse mortgage transaction which gives rise to her

14   claims in San Francisco.

15        4.     Defendant Seattle Mortgage Company is a mortgage banker which offers reverse

16   mortgages and other secured loan products in several states in the United States, including

17   California. Based on publicly filed documents, Plaintiff is informed and believes that Seattle

18   Mortgage Company made 2,200 reverse mortgages to California residents during the time period

19   relevant hereto, including residents of the City and County of San Francisco. The property

20   which secured Plaintiff's loan is located in San Francisco, Defendant contracted with her in San

21   Francisco, and Defendant's liability to Plaintiff arose in San Francisco. I am also informed and

22   believe that Defendant generally does business in the City and County of San Francisco and has

23   solicited business from and imposed unlawful loan fees and charges on other class members who

24   live in San Francisco. On that basis, I am informed and believe that venue is proper in this Court

25   under C.C.P. § 395.5 and Civil Code § 1780(c).

26   ///

27   ///

28   ///

1    I declare under penalty of perjury under the laws of the State of California that the

2    foregoing is true and correct, and that this declaration was executed in Mill Valley, California

3    on March 19, 2008.

4

5                                                    Mark A. Chavez

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

## NOTICE TO PLAINTIFF

A Case Management Conference is set for

      **DATE:**   **AUG-22-2008**

      **TIME:**   **9:00AM**

      **PLACE:**   **Department 212**
                 **400 McAllister Street**
                 **San Francisco, CA 94102-3680**

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 212 twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

## ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL.** (SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400 McAllister Street, Room 103
San Francisco, CA 94102
(415) 551-3876

See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges

# FILED

San Francisco County Superior Court

OCT 2 3 2007

GORDON PARK-LI, Clerk

BY: _____
                    Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 304

In re:                              )
                                    )
COMPLEX LIGITATION                  )   **AMENDED GENERAL ORDER RE:**
                                    )   **PROCEDURE FOR APPROVAL OF**
                                    )   **COMPLEX LITIGATION DESIGNATION**
                                    )
                                    )   The Honorable Richard A. Kramer
                                    )
                                    )
                                    )

This Order shall apply to any case designated as a Complex Case on the Civil Case Cover Sheet (Judicial Council Form CM-010, Rule 3.220, Cal. Rules of Court) filed in San Francisco Superior Court. As to all such cases:

1. The fee(s) required by California Government Code section 70616 shall be paid upon filing such designation.

2. No case shall be assigned to the Complex Litigation Department until an Application For Approval of Complex Litigation Designation has been made in accordance with this Order, and the Court has ordered the case so assigned.

-1-

GENERAL ORDER ... COMPLEX LITIGATION

3. An Application for Approval of Complex Designation should be made as early in the case as is feasible and must set forth with specificity the reasons that the case should be assigned to the Complex Litigation Department in accordance with the factors set forth in Rule 3.400 *et seq.*, California Rules of Court. A copy of such Application, together with a copy of the operative Complaint and of the Civil Case Cover Sheet, shall be delivered to the clerk of Department 304 promptly upon filing. Copies of the Application shall be served on all other parties who have been served with the Complaint or have appeared in the case.

4. A Complex Case Designation which does not comply with this Order may be deemed denied without further order.

5. Until such time as the Court issues an order assigning the case to the Complex Litigation Department, it will remain in its otherwise assigned case management plan and shall be subject to all applicable case management rules and procedures. *See* Rule 3 – Civil Case Management, San Francisco Superior Court Local Rules of Court.

6. Upon the denial of Complex Case Designation, either under paragraph 4 hereof or by specific court order, and no sooner than 60 days after the date of filing the Civil Case Cover Sheet, the Clerk of the Court shall, upon request, refund any fees paid pursuant to California Government Code section 70616(a) or (b). *See* Cal. Gov. Code § 70616(d).

7. This Order does not modify the provisions of Rule 3.403(b), California Rules of Court.

IT IS SO ORDERED.

Dated: October 23, 2007

_____
The Honorable Richard A. Kramer

GENERAL ORDER

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.:                          FAX NO. *(Optional):*
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| (Check one): ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000) ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:
Date:                          Time:                          Dept.:                          Div.:                          Room:
Address of court *(if different from the address above):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐ This statement is submitted by party *(name):*
   b. ☐ This statement is submitted jointly by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*
   b. ☐ The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not):*
      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names):*
      (3) ☐ have had a default entered against them *(specify names):*
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served):*

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint          *(describe, including causes of action):*

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2007]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720–3.730
*www.courtinfo.ca.gov*

American LegalNet, Inc.
www.FormsWorkflow.com

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

[ ] *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
The party or parties request [ ] a jury trial [ ] a nonjury trial *(if more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
a. [ ] The trial has been set for *(date):*
b. [ ] No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a. [ ] days *(specify number):*
b. [ ] hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial [ ] by the attorney or party listed in the caption [ ] by the following:
a. Attorney:
b. Firm:
c. Address:
d. Telephone number:
e. Fax number:
f. E-mail address:
g. Party represented:
[ ] Additional representation is described in Attachment 8.

9. **Preference**
[ ] This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
a. Counsel [ ] has [ ] has not provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
b. [ ] All parties have agreed to a form of ADR. ADR will be completed by *(date):*
c. [ ] The case has gone to an ADR process *(indicate status):*

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d.    The party or parties are willing to participate in *(check all that apply):*
    (1) ☐ Mediation
    (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)
    (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)
    (4) ☐ Binding judicial arbitration
    (5) ☐ Binding private arbitration
    (6) ☐ Neutral case evaluation
    (7) ☐ Other *(specify):*

    e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.
    f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
    g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption):*

11. **Settlement conference**
    ☐ The party or parties are willing to participate in an early settlement conference *(specify when):*

12. **Insurance**
    a. ☐ Insurance carrier, if any, for party filing this statement *(name):*
    b. Reservation of rights: ☐ Yes ☐ No
    c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

13. **Jurisdiction**
    Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.
    ☐ Bankruptcy ☐ Other *(specify):*
    Status:

14. **Related cases, consolidation, and coordination**
    a. ☐ There are companion, underlying, or related cases.
        (1) Name of case:
        (2) Name of court:
        (3) Case number:
        (4) Status:
    ☐ Additional cases are described in Attachment 14a.
    b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

15. **Bifurcation**
    ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

16. **Other motions**
    ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

CM-110 [Rev. January 1, 2007]                    **CASE MANAGEMENT STATEMENT**                    Page 3 of 4

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

17. **Discovery**
    a. ☐ The party or parties have completed all discovery.
    b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

    Party                    Description                    Date

    c. ☐ The following discovery issues are anticipated *(specify)*:

18. **Economic Litigation**
    a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.
    b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

19. **Other issues**
    ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

20. **Meet and confer**
    a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

    b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

21. **Case management orders**
    Previous case management orders in this case are *(check one)*: ☐ none ☐ attached as Attachment 21.

22. Total number of pages attached *(if any)*: _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____          ▶ _____
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY)

_____          ▶ _____
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY)

                                          ☐ Additional signatures are attached

**CASE MANAGEMENT STATEMENT**

# Alternative Dispute Resolution (ADR) Program Information Package

# Alternatives to Trial

# There are other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package
on each defendant along with the complaint.  (CRC 201.9(c))

**Superior Court of California**
**County of San Francisco**

## Introduction

Did you know that most civil lawsuits settle without a trial?

And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?

These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.

## Advantages of ADR

ADR can have a number of advantages over a lawsuit.

- *ADR can save time.* A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- *ADR can save money.* Court costs, attorneys fees, and expert fees can be saved.

- *ADR can be cooperative.* This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- *ADR can reduce stress.* There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- *ADR encourages participation.* The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- *ADR is flexible.* The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- *ADR can be more satisfying.* For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' position harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

## Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

# ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy. Attorneys are encouraged to share this guide with clients. By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

1) Judicial Arbitration
2) Mediation
3) The Early Settlement Program (ESP) in conjunction with the San Francisco Bar Association.

## JUDICIAL ARBITRATION

### Description

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case. When the Court orders a case to arbitration it is called <u>judicial arbitration</u>. The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through <u>private arbitration</u>. Here, the parties

voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

## Operation

Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the Court's Arbitration Panel. Most cases ordered to arbitration are also ordered to a pre-arbitration settlement conference. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is <u>not</u> binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a court trial within 30 days after the arbitrator's award has been filed.

## Cost

There is no cost to the parties for judicial arbitration or for the pre-arbitration settlement conference.

# MEDIATION

## Description

Mediation is a voluntary, flexible, and confidential process in which a neutral third party "mediator" facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of the dispute after exploring the significant interests, needs, and priorities of the parties in light of relevant evidence and the law.

Although there are different styles and approaches to mediation, most mediations begin with presentations of each side's view of the case. The mediator's role is to assist the parties in communicating with each other, expressing their interests, understanding the interests of opposing parties, recognizing areas of agreement and generating options for resolution. Through questions, the mediator aids each party in assessing the strengths and weaknesses of their position.

A mediator does not propose a judgment or provide an evaluation of the merits and value of the case. Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions. Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

## Operation

San Francisco Superior Court Local Court Rule 4 **provides three different voluntary mediation programs** for civil disputes. An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at www.sfgov.org/courts. Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties. A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

## Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation. The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial. Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110). Both forms are attached to this packet.

### Mediation Services of the Bar Association of San Francisco

The Mediation Services is a coordinated effort of the San Francisco Superior Court and The Bar Association of San Francisco (BASF) in which a court approved mediator provides three hours of mediation at no charge to the parties. It is designed to afford civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint, in an effort to resolve the matter before substantial funds are expended on the litigation process. Although the goal of the program is to provide the service at the outset of the litigation, the program may be utilized at anytime throughout the litigation process.

The mediators participating in the program have been pre-approved by the court pursuant to strict educational and experience requirements.

After the filing of the signed Stipulation to Alternative Dispute Resolution form included in this ADR package the parties will be contacted by BASF. Upon payment of the $200 per party administration fee, parties select a specific mediator from the list of court approved mediation providers. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waiver of the administrative fee based on financial hardship is available.

A copy of the Mediation Services rules can be found on the BASF website at www.sfbar.org, or you may call BASF at 415-782-9000.

### Judicial Mediation

The Judicial Mediation program is designed to provide early mediation of complex cases by volunteer judges of the San Francisco Superior Court. Cases considered for the program include construction defect, employment discrimination, professional malpractice, insurance coverage, toxic torts and industrial accidents.

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Coordinator will coordinate assignment of cases that qualify for the program.

## Cost

Generally, the cost of Private Mediation ranges from $200 per hour to $400 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $200 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

## EARLY SETTLEMENT PROGRAM

### Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar. The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute. The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference. A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case. The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

### Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court. Parties who wish to choose the early settlement process should indicate this preference on the status and setting conference statement.

ADR-1   10/07 (ja)                                                      Page 8

If a matter is assigned to the ESP by the Court, parties may consult the ESP program materials accompanying the "Notice of the Early Settlement Conference" for information regarding removal from the program.

Participants are notified of their ESP conference date approximately 4 months prior to trial. The settlement conference is typically held 2 to 3 months prior to the trial date. The Bar Association's ESP Coordinator informs the participants of names of the panel members and location of the settlement conference approximately 2 weeks prior to the conference date.

Local Rule 4.3 sets out the requirements of the ESP. All parties to a case assigned to the ESP are required to submit a settlement conference statement prior to the conference. All parties, attorneys who will try the case, and insurance representatives with settlement authority are required to attend the settlement conference. If settlement is not reached through the conference, the case proceeds to trial as scheduled.

### Cost

All parties must submit a $250 generally non-refundable administrative fee to the Bar Association of San Francisco. Parties who meet certain eligibility requirements may request a fee waiver. For more information, please contact the ESP Coordinator at (415) 782-9000 ext. 8717.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

For further information about San Francisco Superior Court ADR programs or dispute resolution alternatives, please contact:

Superior Court Alternative Dispute Resolution,
400 McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

or visit the Superior Court Website at
http://sfgov.org/site/courts_page.asp?id=3672

ADR-1  10/07 (ja)



# Superior Court of California
## County of San Francisco

**HON. DAVID BALLATI**
**PRESIDING JUDGE**

## Judicial Mediation Program

**JENIFFER B. ALCANTARA**
**ADR PROGRAM ADMINISTRATOR**

The Judicial Mediation program offers mediation of complex civil litigation by a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

The Honorable David J. Ballati
The Honorable Anne Bouliane
The Honorable Ellen Chaitin
The Honorable Robert L. Dondero
The Honorable Ernest H. Goldsmith
The Honorable Harold E. Kahn
The Honorable Patrick J. Mahoney
The Honorable Tomar Mason

The Honorable James J. McBride
The Honorable Kevin M. McCarthy
The Honorable John E. Munter
The Honorable Ronald Quidachay
The Honorable A. James Robertson, II
The Honorable John K. Stewart
The Honorable Mary E. Wiss

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program and deliver a courtesy copy to Dept. 212. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Program Administrator will facilitate assignment of cases that qualify for the program.

Note: Space is limited. Submission of a stipulation to judicial mediation does not guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3876

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
400 McAllister Street, San Francisco, CA   94102-4514

|  |  |
|---|---|
| Plaintiff<br><br>v.<br><br><br>Defendant | Case No. _____<br><br>**STIPULATION TO ALTERNATIVE<br>DISPUTE RESOLUTION** |

The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:

☐ Private Mediation          ☐ **Mediation Services of BASF**   ☐  **Judicial Mediation**
☐ Binding arbitration                                                           Judge _____
☐ Non-binding judicial arbitration                                       Judge _____
☐ BASF Early Settlement Program
☐ Other ADR process (describe) _____

Plaintiff(s) and Defendant(s) further agree as follows:

_____

_____

_____

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐  Plaintiff    ☐  Defendant    ☐  Cross-defendant |  | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐  Plaintiff    ☐  Defendant    ☐  Cross-defendant |  | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐  Plaintiff    ☐  Defendant    ☐  Cross-defendant |  | Dated: _____ |

☐ *Additional signature(s) attached*

ADR-2  3/06                           **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**