JOHN B. SULLIVAN (State Bar No. 96742)
jbs@severson.com
JAN T. CHILTON (State Bar No. 47582)
jtc@severson.com
ANDREA H. HENNINGSEN (State Bar No. 167361)
ahh@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA  94111
Telephone:  (415) 398-3344
Facsimile:  (415) 956-0439

Attorneys for Defendant
SEATTLE MORTGAGE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY B. LABRADOR, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  vs.<br><br>SEATTLE MORTGAGE COMPANY,<br><br>        Defendant. | Case No.:  CV-08-2270 MEJ<br><br>**APPENDIX OF OTHER AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT**<br><br>Hearing:      June 19, 2008<br>Time:         10:00 a.m.<br>Courtroom:  B, 15th Floor<br>Judge:      Maria-Elena James |

Seattle Mortgage Company presents this appendix of other authorities that it has referenced in its memorandum in support of its motion to dismiss complaint:

      1.      HUD Handbook 4235.1 (rev. 1), Section 6-13

      2.      HUD, Mortgagee Letter 2004-25

      *3.*      HUD, Mortgagee Letter 00-10

      4.      Report Relative to Assembly Bill No. 292 (Sept. 23, 1970), 4 Cal. Assembly Daily J. (1970 Reg. Sess.) p. 8464

1    DATED:  May 6, 2008            SEVERSON & WERSON

2                                           A Professional Corporation

3

4                                           By:                  /s/
                                                  Andrea H. Henningsen

5                                           Attorneys for Defendant

6                                           SEATTLE MORTGAGE COMPANY

7    I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/s/) within this e-filed document.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11925/0001/669671.1                                         APPENDIX OF OTHER AUTHORITIES
                                                       CASE No. CV-08-2270 MEJ

1

Case 3:08-cv-02270-SC     Document 6-2     Filed 05/06/2008     Page 2 of 16

## *[Prev Hit][Next Hit]Home Equity Conversion Mortgages*

---

*Directive Number:* 4235.1

---

4235.1 REV-1

---

CHAPTER 6.   CLOSING AND ENDORSEMENT

6-1 PURPOSE.  This chapter outlines the procedures for closing and submitting a loan for endorsement.  The procedures for the local HUD office to follow in endorsing a loan are also explained.  Refer to HUD Handbook 4165.1 for further standard closing and endorsement procedures.

6-2 GENERAL INSTRUCTIONS.  HUD will not provide mortgages and notes for use with the HECM program.  Mortgagees MUST use the model mortgage forms (Appendices 1 and 4), and the model note forms (Appendices 2, 3, 5, and 6), and the accompanying instructions and footnotes, with only such adaptation as may be necessary to conform to State or local requirements.  Using the model mortgage and forms provided, a lender must develop or procure mortgages and notes which comply in form and substance with both this chapter and all applicable State and local requirements for a recordable and enforceable mortgage and an enforceable note.  This chapter incorporates all previous mortgagee letters concerning mortgage and note forms.  It may be modified by subsequent mortgagee letters.  A lender must be careful to comply with the most recent instructions.

     A. This chapter does not supersede HUD regulations.  It supersedes anything contained in other HUD administrative issuances, such as handbooks, notices or mortgagee letters, that prescribes the form and content of a mortgage or note, and conflicts directly with these requirements.  Some of the mortgage or note language required or permitted by this chapter may result in a borrower granting broad rights to a lender while the exercise of those rights is limited by HUD regulations or administrative issuances.  These requirements do not supersede any such limitations on borrowers, and a borrower's rights under the mortgage and note may be exercised only in a manner consistent with all relevant HUD requirements.

---

6-1

    4235.1 REV-1

---

(6-2)

     B. Lenders should not seek advance approval of forms from either HUD Headquarters or local HUD offices.  Lenders are responsible for determining that the mortgage and note comply with all

requirements.  However, questions regarding the appropriate
interpretation of Sections 6-2, 6-3, 6-4, and 6-6 may be directed
to:

                    Department of Housing and Urban Development
                    Assistant General Counsel for [Prev Hit][Next Hit]**Home** Mortgages
                    Room 9258
                    451 7th Street, S.W.
                    Washington, DC 20410

        Any requests for changes to the requirements of this chapter
should be directed to the same address.  HUD does not expect to
grant case-by-case exceptions.

        C.The term "mortgage" as used in this chapter includes any form of
security instrument commonly used in a jurisdiction in connection
with loans secured by residential property, such as a deed of
trust or security deed.  The term "note" as used in this chapter
includes any form of credit instrument commonly used in a
jurisdiction to evidence such loans.

        D.HUD does not require that a rider be attached to a mortgage for
an adjustable rate HECM.  In most States, there is no clear need
to record an extra rider to explain the adjustable rate features
of the mortgage.  The description of the note that is given on
the first page of the model mortgage forms should be a sufficient
description of the debt for recordation purposes, so lenders
should use the model mortgage forms with no special adaptation
for adjustable rate loans, if such mortgages would be fully
enforceable under State or local law.  However, HUD does allow
the lender to add language to reflect the adjustable rate nature
of the mortgage, if necessary to comply with State or local law.
One or more of the following adaptations may be made to the form:

        1)Change the title to "Adjustable Rate [Prev Hit][Next Hit]**Home Equity Conversi**

        2)Change the first use of the word "note" to "adjustable rate
note."

_____

6-2

4235.1 REV-1

_____

(6-2D.)

        3)Change the first use of the word "interest" on the first
page to "interest at a rate subject to adjustment
(interest)."

        4)Add additional language, either to Paragraph 1, or as an
additional numbered paragraph at the end of the mortgage,
which references, describes or summarizes the adjustable
rate feature of the note to the extent required by the
lender, or by State or local law.

6-3FORMAT.  A mortgage, note, and loan agreement may include the lender's
business name and/or logotype at the top of the form.  Although layout
and format are within the discretion of lenders where not specified in
this chapter; size, style, typeface and print should be similar to the
mortgages and notes approved by the Federal National Mortgage

Association (Fannie Mae) and the Federal [Prev Hit][Next Hit] Home Loan Mortgage
Corporation (FHLMC).  The Department recommends that lenders include
the last revision date on each form in order to clarify the versions
being distributed.

6-4 STATE LAWS.  The mortgage instructions and the note footnotes in
Appendices 1-6 identify a number of specific adaptations of the model
forms that are needed to comply with State laws.  Other State laws may
require further adaptation.  Lenders aware of such laws should bring
them to the Department's attention so that the requirements may be
updated or the local HUD office may issue a Circular Letter reflecting
additional State law requirements.  The validity and enforceability of
the mortgage and note will depend on compliance with State law even if
such law is not reflected in this handbook.  For this reason, HUD
emphasizes the need for a lender to use mortgages and notes that are
in compliance with State law.

6-5 LOCAL HUD OFFICE AUTHORITY.  Local HUD offices have authority to
impose additional requirements regarding mortgage and note provisions
for consistency with State laws appropriate to their jurisdictions,
and to advise lenders of any such requirements through a Circular
Letter.

6-6 PREPARATION OF SECURITY INSTRUMENTS.  The lender must prepare the
following legal instruments (see appendices at the end of this
Handbook for mandatory model forms), as needed for a particular case:

---

6-3

    4235.1 REV-1

---

(6-6)

      A. Mortgage and note.  The lender must provide a copy of the first
mortgage and the appropriate first note (fixed or adjustable
rate) for review by the borrower during the application process
(see Paragraph 4-7), but not later than when the borrower signs
the URLA.

      B. Second mortgage and note.  The lender must complete a second
mortgage and second note (fixed or adjustable rate) to secure any
payments made by HUD to the borrower.  A copy of the second
mortgage and second note need not be provided for review by the
borrower during the application process, however, their
relationship to the first mortgage and first note should be fully
explained.  The second mortgage and second note secure any
mortgage payments which might be made by HUD to the borrower in
the event that the lender fails to make the payments under the
loan Agreement.

      HUD policy does not require a maximum mortgage amount to be
stated in the mortgage.  Where State law requires the mortgage to
reflect a maximum mortgage amount, the lender must use an amount
that is equal to 150% of the maximum claim amount.  This amount
is required because the loan payments are secured not only by the
current value of the house but also by any possible appreciation
in value.  This amount is intended to protect the borrower in the
later years of the mortgage.  When a maximum mortgage amount is
stated in the mortgage, the lender is not secured for payments to
the borrower beyond the stated amount.  If the mortgage balance

reaches the maximum mortgage amount, payments to the borrower
would cease or the borrower would have to try to extend the
mortgage which may not be possible if the property value has
declined or if other liens were placed on the property.  Both of
these risks are greatly reduced when the maximum mortgage amount
is a higher amount.

6-4

4235.1 REV-1

(6-6)

        C.Loan Agreement.  A copy of the Loan Agreement (Appendix 7) must
be provided for review by the borrower during the application
process.  Three copies of the Loan Agreement must be executed at
closing by the borrower and the lender.  The copies of the
agreement will be signed by HUD when the mortgage is endorsed for
insurance.  This agreement outlines the process of disbursing the
mortgage proceeds, the obligations and rights of the lender, and
the rights and limitations on the borrower.  A Repair Rider
(Appendix 8), containing provisions covering the completion of
any required repairs, must accompany the agreement, if
applicable.

        D.Shared Appreciation Rider and Allonge.  If the mortgage provides
for shared appreciation, the lender must use the Shared
Appreciation Rider (Appendix 11) and the Shared Appreciation
Allonge (Appendix 12).

        E.Condominium or Planned Unit Development (PUD).  If the mortgage
to be insured is on a condominium or a [Prev Hit][Next Hit]**home** in a PUD, the
appropriate mortgage rider must be used (Appendices 9 and 10,
respectively).

The lender is advised to seek counsel's opinions to assure that State
law has been considered, and that any necessary changes to the model
instruments are made.  The model instruments may require modification
to comply with State laws.

6-7BORROWERS LACKING LEGAL COMPETENCY.  Power of attorney (durable or
otherwise) may be used for closing documents.  Any power of attorney
must comply with State law and allow for the Note to be legally
enforced in that jurisdiction (see Paragraph 4-6).

6-8LOAN CLOSING DATE.  The Loan Closing Date for all HECMs is defined as
the date on which the borrower SIGNS the Note.  THIS DATE MUST APPEAR,
AND BE IDENTIFIED, AS THE "LOAN CLOSING DATE" IN BLOCK I. ON PAGE 1 OF
THE FORM HUD-1 SETTLEMENT STATEMENT.

        A.Regulation Z (12 CFR 226.15) provides the borrower with a right
of rescission for three business days after loan closing.
Lenders are prohibited from charging interest on funds held
available for the borrower during the three day rescission
period.  Interest must begin to accrue on the day after the
disbursement is made.

6-5

4235.1 REV-1

---

(6-8)

  B.In order to ensure an accurate accounting of interest accrual,
the DISBURSEMENT DATE (the date on which the lender relinquishes
control of the funds) MUST ALSO APPEAR, AND BE IDENTIFIED AS, THE
"DISBURSEMENT DATE" IN BLOCK I. ON PAGE 1 OF THE FORM HUD-1
SETTLEMENT STATEMENT.

  For example, if (1) the borrower signs the Note on August 5,
1993, (2) the rescission period expires on August 9, 1993, (3)
disbursement of funds takes place on August 10, 1993, and (4)
interest begins to accrue on August 11, 1993, the following
information should appear in BLOCK I. of the FORM HUD-1 for ALL
HECM LOANS:

---

  I.SETTLEMENT DATE:

LOAN CLOSING DATE     AUGUST 5, 1993
  DISBURSEMENT DATE     AUGUST 10, 1993

---

6-6

4235.1 REV-1

---

(6-8)

  C.Since lenders must use the appropriate indices in effect on the
date of loan closing when setting the mortgage interest rate and
the expected average mortgage interest rate for adjustable rate
HECM loans, lenders originating HECMs in escrow closing states
must arrange to have the borrower sign the Note while the same
interest rates are in effect as when the mortgage documents are
drawn.

  D.Weekly average yields are published in the Federal Reserve
Bulletin and are made available by the Federal Reserve Board in
Statistical Release H.15(519).  This Release is published weekly
on Monday, or on Tuesday if Monday is a Federal holiday, and the
index shown on that release is effective the day it is issued
until the H.15(519) is issued the next week.  Statistical Release
H.15(519) is often not released until mid- or late-afternoon on
Monday.  Consequently, lenders closing HECM loans on Monday
should use the index from the Statistical Release issued the
previous Monday (one week earlier), and lenders closing HECM
loans on Tuesday should use the index from the Statistical
Release issued the day before closing.

  E.For purposes of MIP remittance (see Chapter 7) to Computer Data
Systems, Inc. (CDSI), lenders must use the "LOAN CLOSING DATE"
from BLOCK I. of the FORM HUD-1 to complete the CDSI "CLOSE DATE"
field, and must continue to use the "DISBURSEMENT DATE" in the

Case 3:08-cv-02270-SC    Document 6-2    Filed 05/06/2008    Page 7 of 16

CDSI "FUND DATE" field on the LOAN SET-UP screen.

6-9 REQUIREMENTS FOR CLOSING.  At or before closing, the following must be accomplished:

    A. During the application process, in order to provide the borrower with an estimate of his or her principal limit and to allow the local HUD office to verify that the correct indices are being used, the lender should use the indices in effect at the time the application is signed.  The lender MUST recalculate the principal limit at closing using the indices in effect on the day of closing.

6-7

    4235.1 REV-1

(6-9)

    B. On the day of closing, the lender must determine the principal limit, expected rate, mortgage interest (accrual) rate, and the margin (if applicable).  The expected rate is needed to calculate the principal limit and payment plan for all borrowers, and is also the accrual rate for fixed rate HECMs.  The mortgage interest rate is needed to calculate the first year accrual rate for adjustable rate HECMs.  The lender MUST use the indices in effect on the date of closing.

    For adjustable rate mortgages, HUD does not require that the lender round either the expected rate or the ARM note rate.  Therefore, the lender may round both rates, only one rate, or none of the rates.  However if the lender chooses to round either rate, the rate must be rounded to the nearest one-eighth (1/8) of a percentage point (i.e. the nearest 1/8th either up or down) and must be rounded throughout the life of the loan.  Whether or not a lender decides to round the rates may depend on the preference of the secondary market investor.  Lenders should check with their investors to determine if rounding will be required.  If the mortgage interest rate is rounded, the lender should refer to the footnotes of Appendices 3 and 6 for instructions on appropriate changes to the First and Second Adjustable Rate Notes.

    C. The ten-year Treasury rate is the index which must be used to establish the expected rate, and the one-year Treasury rate is the index which must be used to establish the mortgage interest (accrual) rate for adjustable rate HECMs.  Both indices are published in the Federal Reserve Bulletin and are made available by the Federal Reserve Board in Statistical Release H.15(519).  This is a national index, which can be obtained from the Federal Reserve Board, by requesting to be placed on the mailing list for receipt of the weekly H.15 publication.  The address is:

                Publications Services
                    Mail Stop 138
                    Board of Governors
                    Federal Reserve System
                    Washington, DC 20551

6-8

4235.1 REV-1

---

(6-9)

      D. If the mortgage interest rate (or the index for ARMs) has increased by more than one percent or the margin has increased at all since the Firm Commitment was issued, the commitment must be reprocessed before the loan can close.  The lender is also required to provide the borrower with a new ARM Disclosure Statement indicating the new rate.

      E. On ARMs, the lender must use the one-year Treasury rate (to establish the initial mortgage interest rate) and the ten-year Treasury rate (to establish the expected rate) from the same day.

      F. The borrower must choose his or her initial payment plan, which identifies the method by which he or she wishes to receive the mortgage proceeds.

      1) The lender should encourage the borrower to establish a line of credit along with monthly payments, if he or she has not done so, to avoid incurring unnecessary costs and inconvenience when unexpected expenses occur.

      2) At closing, the borrower will receive the payment plan (Appendix 13) that he or she has selected.

      3) The borrower must sign the plan, indicating that he or she has chosen the options contained on the plan.

      4) Whenever the borrower changes a payment option or has his or her payments recalculated, the borrower will receive a payment plan, and will be required to sign the plan.

      G. The lender must prepare the HUD-1 Settlement Statement (or other similar statement approved by HUD) at least one business day before closing.  The borrower must be allowed to inspect the statement one business day before closing.  As part of HUD's ongoing effort to strengthen quality control procedures, HECM lenders are required to obtain certifications to the HUD-1 Settlement Statement from the borrower(s) and settlement agent. The borrower(s) and settlement agent in a HECM transaction must sign the applicable certifications below, which must be printed at the bottom of the HUD-1, or attached to the HUD-1 as an addendum:

---

6-9

    4235.1 REV-1

---

      I have carefully reviewed the HUD-1 Settlement Statement, and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or

by me in this transaction. I further certify that I have
received a copy of the HUD-1 Settlement Statement.


_____      _____
Borrower(s)                  Date


        To the best of my knowledge, the HUD-1 Settlement Statement which
I have prepared is a true and accurate account of the funds which
were received, and have been or will be disbursed, by the
undersigned as part of the settlement of this transaction.


_____      _____
Settlement Agent             Date

                WARNING:  It is a crime to knowingly make false
statements to the United States on this or any other
similar form.  Penalties upon conviction can include a
fine and imprisonment.  For details see Title 18 U.S.
Code Section 1001 and Section 1010.

---

6-10 POST-CLOSING RESPONSIBILITIES.  After closing, the lender must:

        A. Record the first and second mortgages.

            1) The lender is responsible for ensuring that the first and
second mortgages are the first and second liens of record,
and that other liens do not intervene between the first and
second mortgage.

            2) The second mortgage is not subject to any State or local
recording taxes, or stamp taxes, because the second mortgage
is a mortgage to the Federal Government.  Taxation of the
property of the Federal government violates the supremacy
clause of the U.S. Constitution.

---

6-10

4235.1 REV-1

---

(6-10A.)

            However, fees are distinguished from taxes.  Recording fees,
which are a charge for a service, may be imposed by the
local recording office.  Customary and reasonable fees to
record the second mortgage may be collected from the
borrower by the mortgagee.

        B. Submit the original second mortgage, along with any riders, to
the local HUD office after recording.  The lender should submit
the original second mortgage to HUD with the closing package if
recording has been completed by that time.  Otherwise, the lender
should submit the document to HUD immediately after recording.
If local recording office will be submitting the second mortgage,
they should be fully instructed with respect to the correct
address for the appropriate local HUD office to which the second
mortgage should be sent.

6-11 REQUIRED DOCUMENTS FOR ENDORSEMENT.  The following documents must

be submitted by the lender to the local HUD office for
endorsement:

        A.Mortgagee's Certification.  To facilitate endorsement, the lender
must certify that the mortgage has been closed in accordance with
all HUD requirements.  The following closing certification must
be executed (signature, title, and date) by an officer or
authorized signatory of the company:

            "We (name of company), Mortgagee at the time of closing of
this mortgage loan, certify that we have reviewed the
outstanding commitments, legal instruments, closing
statements and other documents of mortgage loan closing.
Our review indicates that the mortgage loan has been closed
in accordance with the statutory and regulatory requirements
of the National Housing Act and HUD and that the terms of
the outstanding commitments have been satisfied to the best
of our knowledge and belief"

        B.Certified true copy of the signed first mortgage and first note.
The lender must ensure the accuracy of the information on the
instruments and that they were completed as prescribed by
Appendices 1, and 2 or 3, along with appropriate allonges and
riders.

---

6-11

    4235.1 REV-1

---

(6-11)

        C.Original or certified true copy of the signed second mortgage and
original second note to be held by HUD.  The lender must ensure
the accuracy of the information on the instruments and that they
were completed as prescribed by Appendices 4, and 5 or 6, along
with appropriate allonges and riders.

        D.Original Loan Agreements.  Three original Loan Agreements
(Appendix 7) signed by the borrower and the lender must be
included.  The authority to sign the Loan Agreement has been
delegated to the Director of the Single Family Housing Division
of a local HUD office.  They may, in turn, re-delegate this
authority to subordinate employees of the Department.

        E.Copy of the Borrower's Initial Payment Plan.  The lender must
submit a copy of the borrower's initial payment plan signed by
the borrower (Appendix 13).

        F.MIP Statement of Account (SOA).  The lender must submit the SOA
to confirm payment of the MIP.

        G.HUD-1 Settlement Statement.  A HUD-1 Settlement Statement, or
other similar statement approved by HUD, and the Addendum to the
HUD-1 containing borrower and settlement agent certifications
must be completed at closing, and copies of these documents must
be submitted.  For appropriate HUD-1 Settlement Statement and
closing certifications, see Paragraph 69G. above.

        H.Evidence of Hazard Insurance Policy.  The lender must provide
evidence of a hazard insurance policy equal to the value of

insurable property improvements at closing, obtained by either
the borrower or the lender.

I.Title Insurance Policy.  The lender must provide evidence of a
title insurance policy at least equal to the maximum claim
amount.  The title insurance policy must show that:

1)The borrower owns the property in fee simple or on a
leasehold under a renewable lease for not less than 99 years
or under a lease having 50 years beyond the youngest
borrower's 100th birthday, and

2)That the mortgage will be a first lien of record when
recorded.

---

6-12

4235.1 REV-1

---

(6-11I.)

Many State laws require that a maximum mortgage amount be stated
in the mortgage or deed of trust, and consequently the amount
recorded will be equal to 150% of the maximum claim amount,
rather than the property value or the maximum mortgage amount
under Section 203(b) of the National Housing Act.
Notwithstanding this larger amount for the purpose of
recordation, the title insurance policy obtained should be equal
to the maximum claim amount, NOT 150% of that amount.

In order to avoid incurring unnecessary expenses, lenders must
review borrower eligibility requirements (age, Federal credit
record, principal residence) before ordering a title insurance
commitment to be paid for by the borrower.

J.Choice of Insurance Options.  The mortgagee should indicate in
writing its choice of the assignment or shared premium insurance
options.

K.Copy of the Notice of the Right of Rescission.  This notice must
be given to the borrower at closing according to Regulation Z
requirements (12 CFR 226.15).  This notice informs the borrower
of his or her right to rescind the contract within three (3) days
of loan closing.  The notice must be signed and dated by the
borrower to indicate receipt date.

M.Proof of Compliance with Conditions on Firm or Conditional
Commitments.  The lender must submit proof that the borrower has
satisfied any conditions which were placed on his or her
approval, including proof of payment of any delinquent Federal
debts.

6-12REVIEW OF THE CLOSING DOCUMENTS.  HUD review of the closing
package will comprise the following:

A.Lender's Certification.  Verify that the lender's certification
meets the requirements as stated in Paragraph 6-11A., above.

B.Certified true copy of the signed first mortgage and first note.

1)Verify that the information on the instruments is accurate
and that they include the uniform covenants prescribed by
Appendices 1, and 2 or 3.

---

6-13

    4235.1 REV-1

---

(6-12B.)

        2)Verify that the mortgage interest rate is no more than one
point higher than the rate disclosed for processing the Firm
Commitment (increases of more than one point require
reprocessing of the commitment) and that the margin has not
increased at all since the Firm Commitment was issued (any
increases require reprocessing of the commitment).

        3)Verify that appropriate riders and allonges have been
included.

    C.Original or certified true copy of the signed second mortgage and
original second mortgage note to be held by HUD.  Verify that information
in the instruments is accurate and that they were completed in
the manner prescribed by Appendices 4 and, 5 or 6.  The same
riders and allonges accompanying the first mortgage and note must
also be included.

    D.Original Loan Agreements.  Ensure that three Loan Agreements are
completed and that they adhere to the sample format in Appendix
7.

    E.Copy of the Borrower's Initial Payment Plan.

        1)The Mortgage Credit Examiner should review the plan using
the HECM software to ensure that the payments were
calculated correctly, and that the borrower signed the plan.

        2)The examiner must ensure that the expected rate is either
equal to the mortgage interest rate (for a fixed rate
mortgage) or equal to the ten year Treasury rate plus the
margin (if applicable).  For an ARM, the examiner must
ensure that the one-year Treasury rate and the ten-year
Treasury rate were released on the same day, and that the
loan closing took place while those rates were in effect.

    F.Initial MIP Statement of Account.  Verify payment of the initial
MIP by the Statement of Account submitted by the lender.

    G.HUD-1 Settlement Statement.  Review the HUD-1, or other similar
statement approved by HUD, to ensure that all charges are
allowable.

---

6-14

4235.1 REV-1

---

H. Evidence of Hazard Insurance Policy. Verify evidence of a hazard insurance policy equal to the value of insurable property improvements.

I. Evidence of Title Insurance Policy. Verify evidence of a title insurance policy at least equal to the maximum claim amount. The title insurance policy must show that the borrower owns the property in fee simple or on a leasehold as described in Paragraph 6-11I., and that the mortgage will be a first lien of record when recorded.

J. Choice of Insurance Options. The lender must select the assignment or shared premium insurance options.

K. Copy of the Notice of the Right of Rescission. Verify evidence of the borrower's receipt of this notice at closing, as required by Regulation Z (12 CFR 226.15). The notice must give the borrower three (3) days to rescind on the contract and must be included. The notice must be signed and dated by the borrower to indicate receipt date.

M. Proof of Compliance with Conditions on Firm and Conditional Commitments. Verify that the borrower has complied with any conditions on his or her approval, including proof of payment of any delinquent Federal debts.

6-13 THIRD-PARTY FEES. In addition to the following list of fees and charges, the local HUD Office may authorize or reject any other charge, or the amount of any charge, based on what is reasonable and customary in the area.

A. Appraisal Fee and Inspection Fee. The borrower may pay HUD's established maximum fee, or the actual cost of the service, whichever is less.

B. Credit Report. The borrower may pay the actual cost for a merged in-file report, containing the information currently available from three consumer credit information repositories.

C. Deposit Verification Charge. The borrower may pay the actual charge imposed by the depository institution.

---

6-15

    4235.1 REV-1

---

(6-13)

D. Document Preparation Fee. The borrower may pay a document preparation fee if this service is performed by a third-party who is not controlled by the mortgagee. The mortgagee may not charge a fee if it performs this service itself.

E. Property Survey. The borrower may pay if a survey is required by the lender, although a survey is not required by HUD.

F. Title Examination and Title Insurance Policy. A title insurance policy equal to the maximum claim amount must be submitted in the

closing package, and the borrower may pay for these items.

G.Attorney's Fees.  The borrower may pay only if the attorney is not an employee of the mortgagee, or is not an attorney who routinely receives referrals from a particular mortgagee AND issues the title insurance.  If an attorney who is not an employee of the mortgagee is routinely used on referral from the mortgagee to close loans and issue title insurance, the borrower may only be charged a notary fee.

H.Settlement Fees.  The borrower may pay only if the closing agent is not an employee of the mortgagee.  A fee may be charged if the settlement agent is an independent company or a subsidiary of the mortgagee that regularly closes loans for several different mortgagees.

I.Mortgage Broker's Fees.  The borrower may pay only if the broker is engaged independently by the mortgagor.  A broker's fee is prohibited if there is any financial interest between the broker and the mortgagee.  The broker agreement must be submitted with the mortgage insurance application.

J.Tax Service Fee.  The borrower may NOT pay a tax service fee in order for the mortgage loan servicer to check the tax rolls in each county where loans are recorded.

K.Recording Fees and Taxes.  The borrower may pay recording fees on the first and second mortgages that are customary or required in the area, and recording taxes on the first mortgage that are required.  The second mortgage is not subject to any State or local recording taxes, or stamp taxes, because the second mortgage is a mortgage to the Federal government.

---

6-16

4235.1 REV-1

---

(6-13)

L.Tests or Treatments.  The borrower may pay for tests or treatments required by HUD such as tests of water supplies, soil percolation tests for individual septic systems, or testing for or treating insect infestation.

M.Courier Fees.  The borrower may pay a courier fee for delivery of a mortgage payoff to a lien holder and for closing documents to and from the settlement agent.  If this arrangement will take place, a written agreement between the borrower and the lender must be executed before loan closing.

6-14ENDORSEMENT.  The local HUD Office should issue a HUD Form 59100, Mortgage Insurance Certificate (MIC), on CHUMS after determining the acceptability of the closing submission by the lender.

A.Loans submitted for endorsement will be entered into CHUMS using the Endorsement Processing Screen.

B.The local HUD Office will verify the presence of the necessary documents listed in Paragraph 6-11.

C.Besides borrower and property information, the MIC will contain information on the ADP code, amortization plan (fixed or ARM), program I.D., borrower type, living units, interest rate, margin, cap (2/5 or lifetime), endorsement date and maximum claim amount.

6-15NON-ENDORSEMENT.  If the local HUD Office determines that endorsement is not possible and that the impediments to endorsement cannot be corrected, the local HUD Office must return the original Loan Agreements to the borrower and the lender.  The lender must inform the borrower that HUD cannot legally assume any responsibility for ensuring that the lender makes the payments required by the loan agreement.

6-16POST-ENDORSEMENT RESPONSIBILITIES.  After endorsement, the local HUD Office must:

A.Sign the Loan Agreements (see Paragraph 6-12D.) and send one original to the lender, one original to the borrower, and retain one original.

6-17

4235.1 REV-1

(6-16)

B.Send a signed Notice to the Borrower (Appendix 14) to the borrower, which explains the procedures to follow if the mortgagee fails to make the required payments to the borrower.

C.Ensure that the lender has submitted the original second mortgage and riders after closing, and retain the original second mortgage, note and any riders and allonges.  The Loan Management Branch of the local HUD Office will be responsible for retaining these documents.

6-17 MAINTENANCE OF THE CASE BINDER.

A.During the insurance demonstration.  After endorsement, the local HUD Office should transfer the case binder via pouch mail to Headquarters at the following address:

U.S. Department of Housing and Urban Development
        Office of Economic Affairs
        Room 8218
        451 Seventh Street, S.W.
        Washington, D.C. 20410

B.Following the insurance demonstration.  As soon as possible after insurance endorsement, the local HUD Office will box and ship the insured case binders to Headquarters in accordance with the instructions in Chapter 3 of HUD Handbook 2226.1.

6-18

Case 3:08-cv-02270-SC     Document 6-2     Filed 05/06/2008     Page 16 of 16
[Search] [Prev List] [Doc List] [Next List] [First Doc] [Prev Doc] [Curr Doc] [Next Doc] [Last Doc] [Top] [Prev Hit] [Help]

2



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC 20410-8000

ASSISTANT SECRETARY FOR HOUSING-
FEDERAL HOUSING COMMISSIONER

June 23, 2004

**MORTGAGEE LETTER 2004-25**

TO:　　　　**ALL APPROVED MORTGAGEES**
　　　　　　**ALL HUD-APPROVED HOUSING COUNSELING AGENCIES**

SUBJECT:　**Home Equity Conversion Mortgage (HECM) Program -- Clarification of
　　　　　　HECM Counseling Requirements**

　　　　The purpose of this Mortgagee Letter is to clarify the housing counseling requirements of
the HECM program.  Specifically, this Mortgagee Letter addresses:

a) When a potential mortgagor must be referred for counseling;
b) The acceptable listing of entities eligible to provide HECM counseling to which a client
must be referred;
c) The topics that must be covered in a counseling session;
d) The types of counseling that are permissible;
e) Acceptable means of documenting that a potential HECM borrower has received
counseling;
f) The counselor's responsibility for referring potential mortgagors to Federal Housing
Administration (FHA)-approved HECM lenders; and
g) How to notify the Department of Housing and Urban Development of concerns
regarding the services of a HECM lender or HECM counselor.

　　　　All of the policies covered by this Mortgagee Letter are included in various policy
documents, including Section 255 of the National Housing Act, 24 CFR 206.41, Mortgagee Letters
00-10 and 00-39, and Handbook 4235.1, REV 1.  This Mortgagee Letter clarifies and consolidates
the FHA's requirements.  Given that some mortgagees and counseling agencies were confused
about FHA's requirements and were not complying with the policies stated in this Mortgagee
Letter, FHA will provide mortgagees and counseling agencies time to bring their operations into
compliance.  Therefore, all of the policies stated in this Mortgagee Letter take effect 30 days after
the publication date.

**Initial Contact between Mortgagor and Mortgagee**

　　　　When a potential HECM mortgagor first contacts or communicates with an FHA-approved
mortgagee, the mortgagee must explain that the HECM program requires counseling and refer the

client to a list of entities eligible to provide HECM counseling. To satisfy this requirement, the lender must provide the potential HECM borrower with information on the American Association of Retired Persons (AARP) Foundation HECM Counseling network and a list of all HUD-approved housing counseling agencies that offer HECM counseling within the state in which the potential borrower lives. The mortgagee may also provide the client the phone number for Fannie Mae's telephone counseling service. See below for more details on these eligible counseling entities.

The lender may not steer, direct, recommend, or otherwise encourage a client to seek the services of any one particular counseling agency, but must provide the entire listing of agencies located within the state in which the borrower resides, as described above. Further, before, during, or after the counseling session is completed, the lender may not contact a counselor or counseling agency to refer a client; discuss a client's personal information, including the timing or scheduling of the counseling; or request information regarding the topics covered in a counseling session.

## Mortgagee Activities Allowed Prior to Counseling

HUD recommends and urges mortgagees to refer clients to counseling prior to taking initial application. However, if a mortgagee decides to discuss the program with a potential mortgagor and/or take initial application prior to counseling, the mortgagee may only undertake the following permissible activities: a) explain the HECM program to the potential client; b) discuss whether the potential borrower is eligible; c) provide information regarding the fees and charges associated with the HECM product; d) describe the potential financial implications of a HECM loan for the client; and e) provide the borrower with copies of the mortgage, note, and Loan Agreement. The potential HECM borrower is not obligated to pursue a HECM loan from a lender who takes initial application or discusses the HECM program with the potential mortgagor before the potential mortgagor completes the counseling.

## Mortgagee Activities Prohibited Prior to Counseling

The mortgagee may not order an appraisal, title search, or an FHA case number or in any other way begin the process of originating a HECM loan before the potential mortgagor completes the required counseling. The mortgagee may only proceed to process the initial HECM loan application once the counseling is complete, as evidenced by the signed and dated counseling certificate (described below).

## Fees and Charges

Until the mortgagee receives the required HECM counseling certificate indicating the counseling has been completed, the mortgagee may not charge the borrower an application fee, an appraisal fee, or charge for any other HECM-related services.

## Entities Eligible to Provide HECM Counseling

Entities providing HECM counseling must be separate from HECM lending institutions. The only entities eligible to provide HECM counseling are: the AARP Foundation Network HECM Counselors; housing counseling agencies that are approved by HUD, including affiliates of HUD-

approved national and regional housing counseling intermediaries; state Housing Finance Agencies that receive grant funding from HUD to offer HECM counseling services; and the Fannie Mae Telephone HECM Counseling Service.

AARP Foundation Network Counselors – In response to a 1999 Congressional mandate, HUD worked with the AARP Foundation to develop a national network of expert HECM counselors. Counselors providing services through the AARP Foundation network must pass a rigorous exam and receive continuing education on the HECM program. The AARP Foundation counselors work at HUD-approved housing counseling agencies and provide both face-to-face counseling and telephone counseling services. HUD has established no conditions or requirements that limit the number or type of clients that may receive HECM counseling through the AARP Foundation network. HUD encourages lenders to inform all potential HECM borrowers that any client seeking HECM counseling may receive counseling services from an AARP Foundation counselor. The phone number for the AARP Foundation counseling service is 202-434-6082 (not a toll free number). Consumers can also obtain a listing of reverse mortgage counselors in the AARP Foundation network on the web at: http://www.hecmresources.org/network.cfm

HUD-Approved Housing Counseling Agencies – The list of HUD-approved housing counseling agencies (including affiliates of HUD-approved national and regional intermediaries) and state housing finance agencies that provide HECM counseling services is available on HUD's website. This listing arrays agencies in alphabetical order by state, then by city. Lenders, as well as the general public, may obtain a copy of the most recent listing of the HECM housing counseling agency directory at: http://www.hud.gov/offices/hsg/sfh/hecm/rmtopten.cfm.

Fannie Mae Telephone HECM Counseling – Fannie Mae has an agreement with HUD to provide telephone counseling services to potential HECM borrowers under a very limited set of circumstances. See the Telephone Counseling section of this mortgagee letter for the criteria that must be met for a client to receive telephone counseling from Fannie Mae.

**Topics to be Covered**

Financial Implications of and Alternatives to a HECM

In accordance with the HECM statute and regulations, the following information must be provided to the potential HECM borrower:

a) options, other than a HECM, that are available to the homeowners, including other housing, social service, health, and financial options;

b) other home equity conversion options that are or may become available to the homeowner, such as other reverse mortgage products, sale-leaseback financing, deferred payment loans, and property tax deferral;

c) the financial implications of entering into a HECM;

d) a disclosure that a home equity conversion mortgage may have tax consequences, affect eligibility for assistance under federal and state programs, and have an impact on the estate and heirs of the homeowners; and whether the potential HECM mortgagor has signed a contract or agreement with an estate planning firm that requires, or purports to require, the mortgagor to pay a fee on or after closing that may exceed amounts permitted by the Secretary under 24 CFR part 206 and the extent to which these services may not be needed or may be available at nominal or no cost from other sources, including the mortgagee (24 CFR 206.41(b)).

In providing information on the financial implications of entering into a HECM, a counselor must cover, at a minimum: a) the advantages and disadvantages of each payment plan; b) the steps followed in determining the borrower's principal limit, including all loan costs and set-asides; c) the increase in the loan balance and likely decrease in the borrower's equity over time; d) the growth of the HECM line of credit; and e) the borrower's ongoing responsibility to pay property taxes, ground rents, and insurance either directly or indirectly by electing to require the mortgagee to withhold funds from monthly payments or to charge such funds to a line of credit.

HECM Calculation Software

In providing this information, a counselor should use computer printouts generated by HUD's software, or similar software generating the same information, for calculating the maximum funds available to HECM borrower(s) and payment plan options. The HUD HECM software was recently updated and the most recent version must be used. For agencies that have never installed the HECM software, it can be downloaded from: http://www.hud.gov/offices/hsg/sfh/hecm/hecminst.cfm,

For agencies already using the software, the upgrade can be downloaded from: http://www.hud.gov/pub/chums/hecm_upgrade.html.

Costs to Obtain a HECM

Finally, counselors must explain for all HECM clients: what costs are required to obtain a HECM loan; the maximum amount HUD permits a mortgagee to charge for specific loan costs; which loan costs are the same for every lender and which costs may vary from lender to lender.

Prohibition on Dissemination of Specific Loan Product Information

A counselor must never provide information on the specific prices charged by any individual lender, because prices are subject to market fluctuations and may depend on variables that are not constant from client to client. The counselor should tell the client that information on prices must come from a loan officer. If a client presents a counselor with detailed information on a variety of loans offered by multiple lenders, the counselor may help the client compare the costs by pointing out the features described above (i.e., what costs are required, what HUD permits, what costs may vary and which may not).

**<u>Counseling Certificate</u>**

All parties shown on the property deed must receive counseling in order to obtain a HECM loan. For borrowers lacking legal competency, the counseling session may be conducted with a person holding a durable power of attorney, or with a court-appointed conservator or guardian (as specified in Handbook 4235.1, REV-1, paragraph 4-6). When the counseling session is successfully completed, the counseling agency will issue a certificate stating that counseling was provided. <u>All</u> owners shown on the property deed are eligible mortgagors and each of them (or legal representative, as described above) must sign the counseling certificate.

In the event that multiple parties shown on the deed are not located in the same place, counseling may be provided to these parties by one counseling agency via teleconference call <u>or</u> the individuals may receive counseling separately from distinct counseling agencies. So long as one party participating in the counseling resides in the state where the counseling agency conducting the telephone counseling is located, the counseling agency may offer this service across state boundaries. If the potential HECM mortgagors choose to receive counseling from separate counseling agencies, each of the parties would sign a separate HECM counseling certificate.

The certificate must contain the name of the counselor, the name of the counseling agency, and the Employer Identification Number (EIN) of the counseling agency. In addition, the certificate must be signed and dated by both the counselor and all potential mortgagors, indicating the counseling has been completed. The counselor must also provide the actual expiration date for the certificate. The certificate will expire 180 calendar days from the date the counseling was completed.

A sample certificate is attached for your convenience. This sample certificate replaces the sample previously provided by FHA in Handbook 4235.1, REV-1, Appendix 16. Consistent with the other provisions of this mortgagee letter, the new certificate must be used for all prospective HECM mortgagors referred for counseling 30 days after the mortgagee letter is published.

<u>Mortgagee Responsibilities Regarding Counseling Certificate</u>

The mortgagee must take initial application from a prospective mortgagor before the counseling certificate expires, but it is not necessary for a loan to close before the certificate expires. FHA prohibits the mortgagee and/or the potential mortgagor from waiving the certificate expiration date.

The mortgagee must verify that the housing counseling entity listed on the certificate is an entity that HUD has deemed eligible to provide HECM counseling. To do so, the mortgagee may check the name of the counseling agency identified on the certificate against the HUD's listing of eligible HECM counseling entities, provided on HUD's website.

As mentioned above, a mortgagee may not order an appraisal or request an FHA case number until the potential borrower completes the required counseling and presents the lender with the counseling certificate.

## Permissible Types of Counseling

Face-to-Face Counseling

HUD expects potential HECM borrowers to meet face-to-face with a counselor to discuss their unique financial circumstances and decide what housing options are best for them. Face-to-face counseling enables the counselor to assess whether the homeowner understands the features of the HECM program and the financial implications of a HECM on his/her household.

Telephone Counseling

Should telephone counseling be necessary, the AARP Foundation Network of HECM counselors is the only entity permitted by HUD to provide telephone counseling with no special conditions or limitations. As mentioned above, AARP Foundation counselors work at HUD-approved housing counseling agencies and provide both face-to-face counseling and telephone counseling services. HUD has established no conditions or requirements that limit the circumstances under which a client may receive HECM counseling through the AARP Foundation network. In other words, any client, located anywhere in the country and under any circumstances, may receive telephone counseling from an AARP Foundation counselor.

Local housing counseling agencies (including affiliates of national and regional intermediaries) may provide telephone counseling only under a limited set of circumstances and only to clients residing in the state where the agency is approved to operate. Only under the following circumstances may a local housing counseling agency whose counselors are not part of the AARP Foundation network offer telephone counseling: the potential borrower has a mobility problem or medical condition that will affect his or her ability to travel to the local counseling agency or no counseling agency is located within 50 miles of the borrower's home. HUD encourages local agencies to refer clients in need of telephone counseling to the AARP Foundation Network of expert HECM counselors. If a local agency receives a telephone inquiry from a caller who resides in a state that is different from that where the agency is located, the agency must refer that caller to the AARP Foundation counselors or to an agency in the caller's state, which can be obtained by looking at the listing of agencies on HUD's web site.

Fannie Mae has an agreement with HUD to provide telephone counseling services to potential HECM borrowers, if any one of the following circumstances apply:
a) There is no HUD-approved counseling agency within 50 miles of the potential HECM borrower's home;
b) The local counseling agencies do not provide reverse mortgage counseling in the potential mortgagor's language;
c) There is a waiting period of three or more weeks for a reverse mortgage counseling appointment;
d) The potential HECM mortgagor is unable or unwilling to travel and the local agency does not make home visits; or
e) The potential HECM mortgagor is experiencing an emergency such as foreclosure of

his/her present home and no counseling is immediately available in the local area.
    Fannie Mae's toll-free counseling service can be reached at 800-732-6643, weekdays, from 9:00 am to 5:00 pm, Eastern Standard Time.

## Exceptions to HECM Counseling Requirement

    In accordance with the provisions of 24 CFR Part 206.53, HUD may waive the HECM counseling requirement for HECM mortgagors who are refinancing into a new HECM mortgage and choose not to receive counseling, only if the following conditions are met: a) the HECM mortgagor received the anti-churning disclosure form required by law; b) the increase in the mortgagor's principal limit exceeds the total cost of the refinancing by 5 times; and c) the timing between the closing on the original HECM loan and the date of the application for refinancing does not exceed five years. See Mortgagee Letter 04-18 for more details on this subject.

## Lender Steering

    Housing counseling agencies are not permitted to promote, represent, recommend, or speak for any specific lender. Potential borrowers seeking assistance in locating a lender may be referred to HUD's listing of approved HECM lenders located at: http://www.hud.gov/ll/code/llplcrit.html.

## Concerns or Complaints Regarding a HECM Lender or HECM Counselor

    If a consumer, lender, counselor, or representative from the housing industry has a concern or complaint about the services provided by a particular HECM lender or HECM counselor, they should immediately contact the homeownership center in their jurisdiction. Toll-free contact numbers for the Homeownership Centers are: Philadelphia (800) 440-8647; Atlanta (888) 696-4687; Denver (800) 543-9378; and Santa Ana (888) 827-5605.

## Information Collection Requirements

The information collection requirements referred to in this Mortgagee Letter have been approved by the Office of Management and Budget (OMB) under the Paperwork Reduction Act of 1995 (44 U.S.C. Chapter 35). The OMB number issued for this requirement is OMB 2502- 0546

    If you have questions regarding this Mortgagee Letter, please contact your local Homeownership Center (HOC). The toll-free numbers for the four HOCs are listed above.

                            Sincerely,




                            John C. Weicher
                            Assistant Secretary for Housing-
                                Federal Housing Commissioner

Attachment

3

Click Here or type Alt-k to Download MS Word version of letter

┌─────────┐
│ ☒ HUD   │
│   LOGO  │
│         │
└─────────┘

**U. S. Department of Housing and Urban Development**
Washington, D.C. 20410-8000

March 8, 2000

OFFICE OF THE ASSISTANT SECRETARY
FOR HOUSING-FEDERAL HOUSING COMMISSIONER

MORTGAGEE LETTER **00-10**

TO:  ALL APPROVED MORTGAGEES

**SUBJECT:** Revisions to the Home Equity Conversion Mortgages
(HECMs) Program

     The Department is continuing its efforts to both promote the
HECM program and deliver this valuable product more efficiently
to seniors.  Recently, Congress converted the HECM program from a
temporary program to a permanent one and also increased the
number of HECM loans that FHA can insure to 150,000.  Congress
also increased the maximum mortgage amounts available under this
program.  This Mortgagee Letter implements a number of changes to
the HECM program to increase its availability and further
streamline the process for mortgage lenders.  These changes are
effective immediately.

o     Increase in Loan Origination Fee --- Must Cover Mortgage
      Broker or Loan Correspondent Fee

      FHA permits a lender to charge a loan origination fee agreed
      upon by the borrower and lender.  However, we are now capping the
      amount of the origination fee that can be charged the borrower
      and also permitting the borrower to finance the entire amount of
      the fee.  The origination fee amount will now be limited to the
      greater of $2000 or 2 percent of the maximum claim amount on the
      reverse mortgage.

      The financed origination fee is now the full amount that the
      borrower can pay for the origination and underwriting of the
      mortgage and must also include the full amount of any mortgage
      broker fee or loan correspondent fee.  The borrower is not
      permitted to pay any additional origination fees of any kind to a
      mortgage broker or loan correspondent.  Lenders are reminded that
      a mortgage broker fee can be included as part of the origination
      fee only if the mortgage broker is engaged independently by the
      homeowner and that a mortgage broker's fee is prohibited if there
      is any financial interest between the mortgage broker and lender.
      A copy of the agreement between the borrower and the mortgage
      broker to pay the broker fee must be submitted along with the
      loan application and other documents in the binder submitted to
      FHA.  Consequently, the Home Equity Conversion Mortgage Loan
      Agreement section 2.2.1 is amended to:

2

      **2.2.1.** Loan Advances shall be used by Lender to pay, or reimburse
              Borrower for, closing costs listed in the Schedule of
              Closing Costs (Exhibit 2) attached to and made a part of this
              Loan Agreement, provided that Loan Advances will only be used to
              pay origination fees in an amount not exceeding the greater of

$2,000 or 2 percent of the maximum claim amount, nor shall the
Lender charge the Borrower an origination fee in excess of this
amount.

o    Counseling Certificates

In all circumstances the borrower must receive reverse mortgage
counseling.  The Certificate of HECM Counseling includes a
180-day expiration period.  Provided the homeowner applies for a
HECM within 180 days of signing the certificate, there is no need
to obtain an updated certificate.  Further, when the loan is
being applied for by more than one homeowner, as long as at least
one homeowner's signature on the certificate is within the
180-day expiration period, the lender may consider the counseling
certificate as being valid for all borrowers on the loan.  In
addition, those borrowers that received the counseling more than
180 days previously but do not believe that a second session
would be useful may also waive the expiration date in writing.

o    HECM Counseling Provided by Fannie Mae

On October 15, 1999, Fannie Mae began providing telephone
counseling for homeowners contemplating using FHA's HECM loans.
This service will be offered under a one-year pilot.  Fannie Mae
will provide counseling under any of the following circumstances:

    o    HUD-approved counseling is not available within 50
         miles of the homeowner's residence, or
    o    The HUD-approved counseling agency has a waiting period
         of three weeks or more before it can see the homeowner, or
    o    The local agencies do not provide reverse counseling in
         the homeowner's native language, or
    o    The homeowner is unable to travel and the local
         agencies do not make home visits, or
    o    The local agency charges a fee for reverse mortgage
         counseling.

o    Face-to-Face Interview Requirement

In Mortgagee Letter 98-15  (March 16, 1998), FHA eliminated the
face-to-face interview requirement.  Those rules, which affected
forward mortgages insured by FHA, now also apply to reverse
mortgages under the HECM program provided that the homeowner has
at least had a face-to-face interview with a HUD-approved reverse
mortgage counseling agency.  In other words, a face-to-face
interview with an acceptable counseling agency may substitute for
a

    3

    face-to-face interview with the mortgage lender.  However,
please note that the above telephone counseling provided by
Fannie Mae cannot also substitute for the lender's face-to-face
interview.

    With or without a face-to-face interview, the lender remains
completely accountable for positively identifying the applicant
and assuring that the homeowner is eligible based on his or her
age for the HECM loan.

o    Revised Appraisal Disclosure Requirements

    Mortgagee Letter 99-18  announced numerous changes to FHA's
appraisal requirements.  Please note, however, that the

"Importance of Home Inspections" form is not required to be
provided on HECM loans.

If you have any questions regarding this mortgagee letter,
please contact your Homeowner Centers in Atlanta (888-696-4687),
Denver (800-543-9378), Philadelphia (800-440-8647) or Santa Ana
(888-527-5605).

Sincerely,



William C. Apgar
Assistant Secretary for Housing-
    Federal Housing Commissioner

4

Report Relative to Assembly Bill No. 292

Assembly Committee on Judiciary
September 23, 1970

*The Honorable Bob Monagan*
*Speaker of the Assembly*

Re: Assembly Bill 292

Dear Mr. Speaker: Attached is a report on the above bill prepared by the undersigned in order to indicate more fully the intent of the Legislature with respect to this measure.

Respectfully submitted,

JAMES A. HAYES, Chairman
Assembly Judiciary Committee

———

The Consumers Legal Remedies Act is designed to provide affirmative remedies for consumers which will protect them from unscrupulous business practices while insulating responsible businessmen from spurious or vexatious lawsuits. This is done by providing the consumer a lawsuit for himself or on behalf of all other similarly situated consumers to rescind unfair business transactions, collect damages, and stop future bad practices.

Section 1770 of the Civil Code provides sixteen specific practices outlawed by the Act. By way of illustration and not limitation the following are examples of violations of each subdivision of Section 1770:

a. Selling a product *as being made by Y* when it is *really made by X*. Although passing off originally denominated unauthorized use of trade identification, today the term is also applied to covert substitution of a different brand of goods for the one requested by a customer. *Coca-Cola Co. v. Foods, Inc.*, 220 F. Supp. 101.

b. There exists today no industry-wide, government or other accepted system of quality standards or grading of industry products. Within the industry, however, a variety of trade terminology has developed which, when used in conjunction with consumer transactions, has the tendency to suggest that a system of quality standards or grading does in fact exist. Typical of such terminology are the expressions "premium" "super" "supreme". The consumer usually does not understand the significance of the absence of accepted or quality standards and is likely to assume that these expressions connote valid criteria. Since a consumer may misinterpret the meaning of such terminology, he may be deceived into buying a more inferior product because it has been given such designation.

This confusion as to commercial source, approval, endorsement, or certification of goods or services caused by trademarks, or collective marks likely to be associated with pre-existing trade symbols.

c. Representing that a product, such as tires, has the approval of Parnelli Jones, or that someone like Mario Andretti always uses brand X tire when he doesn't.

In *Vissir v. Macres*, Cal App 2 249 defendant opened up a competing florist shop with the same name as plaintiff's at plaintiff's former location after the latter had moved across the street.

d. Selling a camera as being made in Japan when it is really made in Taiwan. Or perfume concentrate imported from France and combined in the U.S. with domestic alcohol may not be sold as imported perfume. *Distributors, Inc. v. FTC*, 263 Fed 396.

e. This section would be violated by actually representing that there is an industry wide system of grading tires when there isn't, and actually representing that the tire being sold meets those standards. Actually representing that the tires are used or approved by Parnelli Jones or Mario Andretti would also be violations.

f. It would be a deceptive practice for a salesman to fail to disclose that products are reprocessed even though the reprocessed products are as good as new. *FTC v. Colgate Palmolive* 85 S. Ct. 1035.

g. A violation of this section would be an advertisement representing that bread sold under trademark "Lite Diet" was a low calorie food when in fact it contained same number of calories as other white bread but had thinner slices.



LEGISLATIVE INTENT SERVICE    (800) 666-1917

1

A2

h. False assertions as to a product's inferiority.

i. Advertising to sell a quality Y tire when you actually intend to sell a quality X tire. one of lesser quality.

j. To lure consumers into a store, an advertisement will offer a product at a very low price, but the seller will intend to only sell one or two of the offered product. An appliance store will offer to sell a T.V. at $100 less than its regular retail price, but will only offer one or two T.V. sets.

k. This subsection applies to spurious "fire" and "liquidation" sales as well as to fictitious price cuts.

i.e., "Prices are slashed due to impending bankruptcy."

l. In this case the subsection would be violated if the seller advertised "satisfaction or your money back" or "10-day free trial", as they are usually construed as a guaranty that the full purchase price will be refunded. Any conditions to the contrary should be set forth.

m. Self-explanatory.

Protect the innocent consumer from the unscrupulous practices of repairmen. Recommending that new brakes are needed, or that a new battery is needed when they are not.

n. A seller would be in violation of this subsection by selling a different product than the one advertised. The seller sells the regulation model rather than the luxury model advertised.

o. The consumer, in this instance, might be required to buy an additional product before he could receive the advertised discount, or that he buy a more expensive and high quality product than the one advertised.

p. The prime example of a violation of this subsection is the car salesman who negotiates a deal, but before the contract can be signed, he tells the consumer that he has to get approval. Of course, when he returns, he tells the consumer that 'his boss' won't let him sell the car at such a low price, so new adjustments must be made.

Since passage of the bill by the Legislature, representatives of business and the consumer have asked for specific statements of intention regarding two Sections of the Act.

Jurisdiction of the Superior Court: Assuming a case and controversy within the jurisdictional limitations of the Superior Court, Section 1780 is not intended to be construed to limit actions under the Act to municipal or justice courts. That is, an action may be commenced under the provisions of the Consumers Legal Remedies Act in the Superior Court.

Statute of Limitations: Section 1783 provides that no action may be commenced more than three years after the commission of the allegedly wrongful method, act or practice. The statute applies to individual and class actions. In order to be included within the class, the Legislature intended that each member of the class would have been injured by a violation of Section 1770 within three years of the commencement of the action. Thus, if A is damaged in 1965, and B.C.D.E.F, and G are injured in 1968. class action may be commenced in 1970 [*] but A cannot be included within the class.

The Consumers Legal Remedies Act has charted a new course for protection of the consumer. There is no state or federal precedent for much of the substantive or procedural provisions of the measure. The Legislature therefore anticipates controversy and debate will attend application of the measure during the oncoming months. This in mind Section 1760 was included in the bill to give jurists and advocates an insight into the legislative intent underlying the Consumers Legal Remedies Act. Simply the Title should be construed liberally to promote the objective of efficient and economic consumer protection against unfair and deceptive business practices.

---

* This is an error. Section 1756 of the act provides the substantive and procedural provision of the act shall only apply to actions filed on or after January 1, 1971.

-2-

A3

LEGISLATIVE INTENT SERVICE    (800) 666-1917