UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY B. LABRADOR, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>SEATTLE MORTGAGE COMPANY,<br><br>    Defendant. | Case No. 08-2270 SC<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S <u>MOTION TO DISMISS</u> |

## I. **INTRODUCTION**

This matter comes before the Court on the Motion to Dismiss ("Motion") submitted by the defendant Seattle Mortgage Company ("Defendant" or "SMC"). Docket No. 5. The plaintiff Mary B. Labrador ("Plaintiff" or "Labrador") opposed the Motion and Defendant filed a Reply. Docket Nos. 18, 22. For the following reasons, the Court GRANTS in part and DENIES in part Defendant's Motion.

## II. **BACKGROUND**

This class action arose out of a reverse mortgage transaction between Plaintiff and SMC. According to Plaintiff's Complaint, a

reverse mortgage is a type of home equity loan available only to senior homeowners whereby the homeowner is able to convert his or her home equity into cash while maintaining ownership of the home. Notice of Removal, Docket No. 1, Ex. A ("Compl.") ¶ 12. Unlike a typical mortgage, where the borrower makes monthly payments to the lender, in a reverse mortgage the lender makes monthly payments to the borrower. Id. These cash payments may in turn be used by the homeowner for living expenses, health care, or any other purpose. Id. The loan is secured by a deed of trust on the home. Id. Depending on the terms of the reverse mortgage, the borrower may not have to repay either the loan principal or the accrued interest so long as he or she remains living in the home. Id. If and when the homeowner is no longer able to care for him or herself and requires nursing-home care, or when the homeowner dies, the subsequent sale of the home is expected to generate the proceeds to repay the principal of the loan, as well as any interest, fees and expenses. Id. ¶ 13.

Plaintiff is an 82-year-old resident of San Francisco. Id. ¶ 7. In July 2006, a representative of Home Center, a mortgage loan broker, contacted Plaintiff and convinced her to enter into a reverse mortgage loan. Id. ¶ 22. The following month Plaintiff executed an HECM reverse mortgage loan originated by Defendant.[1] Id. At the close of the loan, Plaintiff paid an "origination fee" to Defendant of $7,255.80. Id. ¶ 24. This fee was conveyed in

---

[1] HECM is Home Equity Conversion Mortgage, the title of a federal program under which the Department of Housing and Urban Development ("HUD") provides mortgage insurance for qualifying reverse mortgage loans. See 12 U.S.C. § 1715z-20; Mot. at 2.

2

1  its entirety by Defendant to the mortgage broker, Home Center.
2  <u>Id.</u>  In addition, Defendant paid a "correspondent fee" to Home
3  Center in the amount of $490 in connection with Plaintiff's loan.
4  <u>Id.</u> ¶ 25.

5  Plaintiff subsequently filed her Complaint in the Superior
6  Court of California for the City and County of San Francisco.  <u>See</u>
7  Compl.  Defendant then removed the action to this Court based on
8  diversity jurisdiction.  <u>See</u> Notice of Removal.  The crux of
9  Plaintiff's Complaint is that Defendant violated the federal
10 regulation 24 C.F.R. § 206.31(a)(1).  Section 206.31(a)(1) states,
11 in part, that a mortgage broker's fee may be included in the
12 origination fee charged to the borrower only "if there is no
13 financial interest between the mortgage broker and the mortgagee."
14 24 C.F.R. § 206.31(a)(1).  Plaintiff alleges that SMC, in paying
15 the $490 "correspondent fee" to the mortgage broker Home Center,
16 sought to induce Home Center to steer loans to SMC, and thereby
17 created a financial interest between SMC and Home Center.
18 Because, as Plaintiff alleges, this financial interest existed,
19 Defendant was prohibited under § 206.31(a)(1) from charging
20 Plaintiff the origination fees she paid in connection with her
21 reverse mortgage loan.

22 Based on the foregoing alleged violation, Plaintiff asserts
23 the following causes of action: (1) financial elder abuse, in
24 violation of California's Elder Abuse and Dependent Adult Civil
25 Protection Act ("Elder Abuse Act"), Welfare and Institutions Code
26 § 15657.5 <u>et</u> <u>seq.</u>; (2) unlawful, deceptive, and unfair business
27 practices, in violation of California Business and Professions
28

3

1  Code § 17200 et seq.; (3) violation of California's Consumers
2  Legal Remedies Act ("CLRA"), California Civil Code § 1770 et seq.;
3  (4) unjust enrichment; and (5) declaratory relief.  See Compl. ¶¶
4  45-77.

## III. LEGAL STANDARD

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss tests the sufficiency of the complaint.  Dismissal pursuant to Rule 12(b)(6) is appropriate if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  All reasonable inferences are to be drawn in favor of the plaintiff.  Everest & Jennings, Inc. v. Am. Motorists Ins. Co., 23 F.3d 226, 228 (9th Cir. 1994).  Unreasonable inferences or conclusory legal allegations cast in the form of factual allegations, however, are insufficient to defeat a motion to dismiss.  W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

## IV. DISCUSSION

Defendant asserts various grounds for dismissal; the Court addresses each in turn.

### A. Whether There Existed a "Financial Interest"

Defendant moves to dismiss the entire Complaint based on the argument that there was no "financial interest" between Defendant and the mortgage broker Home Center, and, accordingly, that there was no violation of 24 C.F.R. § 206.31(a)(1).  As noted above, §

4

206.31(a)(1) prohibits lenders from charging reverse mortgage "origination fees" and sharing those fees with mortgage brokers if there is a financial interest between the mortgage broker and the lender. Plaintiff alleges that the $490 "correspondent fee" paid by Defendant to the mortgage broker was in fact a "back-channel fee arrangement" used to induce mortgage brokers to steer mortgages to Defendant. Compl. ¶ 19. This fee, according to Plaintiff, created a "financial interest" within the meaning of 24 C.F.R. § 206.31(a)(1), and therefore should have prohibited Defendant from charging Plaintiff the "origination fee" of $7,255.80.

Both parties agree that neither 24 C.F.R. § 206.31 nor the set of mortgage regulations of which it is a part defines the phrase "financial interest." "When a statute or regulation defines a term, that definition controls, and the court need not look to the dictionary or common usage." Alaska Trojan P'ship v. Gutierrez, 425 F.3d 620, 628 (9th Cir. 2005). In the absence of such a definition, however, courts "construe a statutory term in accordance with its ordinary or natural meaning." F.D.I.C. v. Meyer, 510 U.S. 471, 476 (1994). Thus, to interpret a regulation, courts look "to its plain language." United States v. Bucher, 375 F.3d 929, 932 (9th Cir. 2004). "If the regulation is unambiguous, its plain meaning controls unless such a reading would lead to absurd results." Id. As both parties rely on Black's Law Dictionary in support of their interpretations, so too will this Court. Black's Law Dictionary defines "financial interest" as: "An interest involving money or its equivalent; esp., an interest

5

in the nature of an investment." Black's Law Dictionary 829 (8th ed. 2004). Defendant argues that the payment of $490 by Defendant to the mortgage broker did not create any type of interest between the two, but rather was merely a payment for services rendered. Plaintiff argues that this payment was, in effect, an investment by Defendant in the mortgage broker, with the intention that such a payment would result in the mortgage broker Home Center steering additional reverse mortgages to Defendant.

Without further factual development, the Court cannot conclude at this time that the payment of $490 did not result in a financial interest between Defendant and the mortgage broker. Perhaps anticipating this, Defendant also points to various other regulations that prohibit not only a "financial interest" but also prohibit any "financial benefits." See, e.g., 24 C.F.R. § 570.611(b) (stating that, in regards to Community Development Block Grants ("CDBGs"), "no persons . . . who are in a position to participate in a decisionmaking process or gain inside information . . . may obtain a financial interest or benefit from a CDBG-assisted activity . . . ."). Thus, according to Defendant, where, as here, the regulation prohibits only "financial interests," and does not bar "financial benefits," the payment at issue was permissible as it cannot be construed as anything other than a "financial benefit." This only begs the question, however, of what, precisely, was the nature of the payment. For these reasons, Defendant's Motion to Dismiss the entire Complaint based on the argument that there was no "financial interest" is DENIED.
///

### B. First Cause of Action

Defendant also argues that Plaintiff's first cause of action for violations of the Elder Abuse Act should be dismissed. First, Defendant argues that Plaintiff has not alleged sufficient facts to state a claim. Mot. at 13. Plaintiff, however, clearly alleges that "Defendant manipulated Plaintiff and the Class into paying excessive, unlawful and unfair fees and costs in connection with her reverse mortgage." Compl. ¶ 48. These factual allegations, in combination with the allegations incorporated by reference, sufficiently allege violations of the Elder Abuse Act. See Welf. & Inst. Code § 15610.30 (stating "'[f]inancial abuse' of an elder . . . occurs when a person or entity does any of the following: (1) Takes, . . . appropriates, or retains real or personal property of an elder . . . to a wrongful use or with intent to defraud, or both . . .").

Defendant also asserts that the first cause of action must be dismissed because the Elder Abuse Act does not confer an independent private right of action. In support of this argument, Defendant cites Berkeley v. Dowds, 152 Cal. App. 4th 518, (Ct. App. 2007), which held that "[t]he Act does not create a cause of action as such, but provides for attorney fees, costs and punitive damages under certain conditions." Id. at 529. Subsequent California Court of Appeal cases, however, have called into question this holding. Recently, in Perlin v. Fountain View Management, Inc., 163 Cal. App. 4th 657 (Ct. App. 2008), the court concluded that the holding in Berkeley regarding the absence of a private right of action in the Elder Abuse Act was "inconsistent

7

1 with the California Supreme Court's dicta." Id. at 665. After a
2 careful review of relevant caselaw, the court in Perlin stated
3 that the California "Supreme Court's language in Barris v. County
4 of Los Angeles, . . . 20 Cal. 4th 101 [(1999)] and Covenant Care,
5 Inc. v. Superior Court, . . . 32 Cal. 4th 771 [(2004)] is
6 authority for the proposition that the Act creates an independent
7 cause of action." Perlin, 163 Cal. App. 4th at 666. Accordingly,
8 the court "reject[ed] plaintiffs' argument that a violation of the
9 Act does not constitute an independent cause of action." Id.
10     Other federal courts in California have reached the same
11 conclusion. See, e.g., Genton v. Vestin Realty Mortgage II, Inc.,
12 Case No. 06-2516, 2007 WL 951838, at *2 (S.D. Cal. March 9, 2007)
13 (stating "Plaintiffs' assertion that its Elder Abuse claim is not
14 a cause of action is unavailing"); Negrete v. Fid. & Guar. Life
15 Ins. Co., 444 F. Supp. 2d 998, 1002 (C.D. Cal. 2006) (finding the
16 plaintiff's allegations sufficient to state a claim under the
17 Elder Abuse Act). After review of the statutory language and the
18 relevant caselaw, the Court is convinced that the Elder Abuse Act
19 does in fact confer a private right of action. Defendant's Motion
20 to Dismiss Plaintiff's first cause of action is DENIED.

21     **C.**    **Second Cause of Action**

22     Plaintiff's second cause of action is for unlawful,
23 deceptive, and/or unfair business practices in violation of
24 California Business and Professions Code § 17200 et seq.
25 Defendant's argument in favor of dismissal hinges on the
26 invalidity of the underlying claim under 24 C.F.R. § 206.31. As
27 discussed above, however, Plaintiff has sufficiently alleged a §

28

8

206.31 violation. Insofar as Plaintiff alleges unlawful or unfair business practices, such a claim has been properly alleged. To the extent that Plaintiff alleges fraudulent business practices, see Compl. ¶ 58, Plaintiff has failed to plead the necessary particularity as required by Federal Rule of Civil Procedure 9(b). See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (stating that "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong") (internal quotation marks omitted, alteration in original); see also id. (holding "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged") (internal quotation marks omitted). As Plaintiff's Complaint fails to plead fraud with this particularity, the fraud allegations, to the extent there are any, are DISMISSED without prejudice and Plaintiff may amend her Complaint to cure this defect.

### D. Third Cause of Action

Plaintiff's third cause of action alleges violations of California's CLRA, which prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Plaintiff alleges that Defendant failed to disclose, and therefore misrepresented, its financial relationship with the mortgage broker in violation of § 1770(a)(3); misrepresented that

9

the transactions and services it offered conferred rights that these transactions and services did not actually contain in violation of § 1770(a)(14); and failed to properly disclose costs, fees, and charges associated with its reverse mortgage in violation of § 1770(a)(19).

Defendant's primary argument for dismissal of Plaintiff's CLRA claim is that the CLRA applies only to the sale of "goods" and "services," and not to credit transactions. Neither the California Supreme Court nor the Ninth Circuit has squarely addressed the issue of whether a transaction involving the provision of a reverse mortgage loan is covered by the CLRA. Federal courts must apply "California law as we believe the California Supreme Court would apply it." In re K F Diaries, Inc. & Affiliates, 224 F.3d 922, 924 (9th Cir. 2000). Intermediate California appellate court decisions, although persuasive, are not binding authority and federal courts are not bound by them if it is believed that "the California Supreme Court would decide otherwise." Id. (internal quotation marks omitted).

Defendant relies heavily on two California Court of Appeal decisions in support of its argument. In Berry v. American Express Publishing, Inc., 147 Cal. App. 4th 224 (Ct. App. 2007), the Court of Appeal analyzed whether the defendant's provision of a credit card to the plaintiff constituted either a "service" or "good" as defined by the CLRA. Id. at 229. Relying extensively on the legislative history, the court concluded that "[t]he issuance of a credit card is not a 'transaction intended to result or which results in the sale or lease of goods or services to any

10

1  consumer under [the] CLRA." Id. at 228 (citing Cal. Civ. Code §
2  1770(a)).

3  In McKell v. Washington Mutual, Inc., 142 Cal. App. 4th 1457
4  (Ct. App. 2006), the plaintiffs alleged that they were overcharged
5  by the defendant in connection with underwriting, tax services,
6  and wire transfer fees in conjunction with home loans. Id. at
7  1465. The court, distinguishing the CLRA's protections over
8  transactions for the sale of goods or services, concluded that the
9  plaintiffs' claims did not fall within the CLRA as the defendant's
10 "actions were undertaken in transactions resulting in the sale of
11 real property." Id. at 1488.

12 This Court has previously addressed the issue of whether the
13 CLRA applies to mortgages. In Knox v. Ameriquest Mortgage Co.,
14 Case No. 05-0240 SC, 2005 WL 1910927, at *1 (N.D. Cal. Aug. 10,
15 2005), the plaintiffs alleged that the defendants had engaged in a
16 variety of predatory lending practices in providing mortgage
17 loans. After surveying the relatively sparse landscape of cases
18 that had addressed this issue at the time, this Court concluded
19 that "the CLRA covers the mortgages at issue" and denied the
20 defendants' motion to dismiss. Id. at *4.

21 Subsequent to Knox, both Berry and McKell were decided.
22 These decisions, however, do not change the Court's conclusion
23 that, were the California Supreme Court to address the issue of
24 whether the CLRA applies to the reverse mortgage at issue in the
25 present case, it would likely answer in the affirmative. First,
26 the CLRA contains an explicit provision stating that it "shall be
27 liberally construed and applied to promote its underlying

purposes, which are to protect consumers against unfair and deceptive business practices . . . ." Cal. Civil Code § 1760. Second, unlike Berry, which addressed only the extension of credit, in the present case Plaintiff has alleged that Defendant provided various services in conjunction with the issuance of the reverse mortgage. See Compl. ¶ 67 (stating "[t]he deceptive and fraudulent business practices employed by Defendant in the sale of reverse mortgages are 'services'" under the CLRA). This distinction is significant and has been recognized in other decisions from this District that have concluded that the CLRA applies to mortgage loans. See, e.g., Hernandez v. Hilltop Fin. Mortgage, Inc., Case No. 06-7401 SI, 2007 WL 3101250, at *6 (N.D. Cal. Oct. 22, 2007) (stating "unlike Berry, the situation in the present case involves more than the mere extension of a credit line. Instead, the circumstances here deal not just with the mortgage loan itself, but also with the services involved in developing, securing and maintaining plaintiffs' loan."); Jefferson v. Chase Home Fin. LLC, Case No. 06-6510 TEH, 2007 WL 1302984, at *3 (N.D. Cal. May 3, 2007) (distinguishing Berry and McKell and holding that the defendant had "failed to persuade this Court that financial services agreements related to real estate transactions are excepted from CLRA's scope"). For these reasons, the Court concludes, as it did in 2005 in Knox, that mortgage loans such as those in the instant action may be covered by the CLRA.

Defendant also argues that Plaintiff has failed to sufficiently plead factual allegations for a CLRA claim.

12

Plaintiff presents three separate theories for CLRA violations. First, Plaintiff alleges that Defendant failed to disclose, and therefore misrepresented, its financial relationship with the mortgage broker in violation of § 1770(a)(3). Section 1770(a)(3) prohibits "[m]isrepresenting the affiliation, connection, or association with, or certification by, another." Cal. Civil Code § 1770(a)(3). As stated in her Complaint, Plaintiff's § 1770(a)(3) theory is premised on Defendant's alleged failure to disclose its financial relationship with mortgage brokers. Compl. ¶ 68. This failure to disclose, according to Plaintiff, constituted a misrepresentation. Id.

As currently alleged, this CLRA theory fails to satisfy the minimum pleading requirements of Federal Rule of Civil Procedure 8 and fails to articulate "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974. Although § 1770(a)(3) on its face prohibits misrepresentations, Plaintiff has instead alleged a failure to disclose. While a failure to disclose might, under certain circumstances, be tantamount to a misrepresentation, Plaintiff's bare factual allegations in support of this claim fall short of the minimum requirements.

Plaintiff's second theory under the CLRA alleges that Defendant violated § 1770(a)(14) by "representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." Cal. Civil Code § 1770(a)(14). Plaintiff has failed to allege any facts related to this theory, and instead has merely

13

repeated the conclusory language of the statute.

Finally, Plaintiff alleges that Defendant failed to properly disclose costs, fees, and charges associated with its reverse mortgage in violation of § 1770(a)(19). Section 1770(a)(19) prohibits "[i]nserting an unconscionable provision in the contract." Cal. Civil Code § 1770(a)(19). Plaintiff's Complaint states that "Defendant failed to properly disclose costs, fees, and charges associated with its reverse mortgages." Compl. ¶ 68. Such factual allegations noticeably do not assert that any of the provisions were in fact "unconscionable." Without such an allegation, this theory also fails to sufficiently allege the requisite facts.

For the reasons stated above, the Court concludes that although the CLRA may apply to mortgage loans such as the ones in the instant action, Plaintiff has nonetheless failed to state a claim under the CLRA. As amendment may cure these deficiencies, this claim is DISMISSED WITHOUT PREJUDICE.

### E.   **Fourth and Fifth Causes of Action**

Plaintiff's fourth cause of action is for unjust enrichment and the fifth cause of action seeks declaratory relief. Defendant's entire argument in favor of dismissal of these claims is premised on the invalidity of Plaintiff's underlying § 206.31 theory. As noted above, however, this theory, at this stage, is valid. Accordingly, Defendant's Motion to Dismiss Plaintiff's fourth and fifth causes of action is DENIED.

///

///

14

**V.     CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss is GRANTED with respect to the fraud claim in Plaintiff's second cause of action and Plaintiff's third cause of action for violations under the CLRA.  Both claims are DISMISSED without prejudice.  Defendant's Motion is otherwise DENIED.


IT IS SO ORDERED.


Dated: October 29, 2008           

UNITED STATES DISTRICT JUDGE

15