IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY LABRADOR, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SEATTLE MORTGAGE COMPANY,<br><br>　　　　　Defendant. | Case No. 08-2270 SC<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS <u>CERTIFICATION</u> |

**I.　INTRODUCTION**

　　This is a putative class action arising out of the sale of home equity conversion mortgages by Defendant Seattle Mortgage Company ("SMC") to Plaintiff Mary Labrador ("Labrador") and others similarly situated.  First Amended Complaint, ECF No. 65 ("FAC").  Now before the Court is Labrador's Motion for Class Certification.  ECF No. 75 ("Mot.").  SMC filed an Opposition, and Labrador filed a Reply.  ECF Nos. 92 ("Opp'n"), 94 ("Reply").  Pursuant to Civil Local Rule 7-1(b), the Court finds the Motion suitable for determination without oral argument.  For the reasons stated below, the Court GRANTS Labrador's Motion.

**II.　BACKGROUND**

　　The following facts are taken from evidence submitted by

1   Labrador in support of this Motion; SMC has not objected to this
2   evidence.  From April 2004 to July 2007, SMC sold home equity
3   conversion mortgages ("HECMs") to California homeowners.  Becker
4   Decl. Ex. A ("Engelhorn Dep.") at 24:2-9.[1]  HECMs (also known as
5   "reverse mortgages") allow homeowners to convert the equity in
6   their homes to cash while maintaining home ownership.  Becker Decl.
7   Ex. C ("Hulbert Dep.") at 26:3-15.  The lender, or "mortgagee,"
8   loans the homeowner, or "mortgagor," money based on factors
9   including the current interest rate and the borrower's age and home
10  value.  Id.  The mortgagor makes no payments on this loan until he
11  or she permanently leaves the house; at that point, the principal
12  and the accrued interest becomes due.  Id.

13       HECMs are heavily regulated by the U.S. Department of Housing
14  and Urban Development ("HUD").  For example, under HUD regulations,
15  the mortgagor must be sixty-two years old.  24 C.F.R. § 206.33.
16  And in addition to mandatory counseling for prospective mortgagors
17  and lender disclosure requirements, HUD regulations permit only two
18  types of fees to be charged to the mortgagor.  Id. § 206.31.  A
19  mortgagee may pass on to the mortgagor a limited set of "reasonable
20  and customary amounts" it has paid in making the mortgage, such as
21  fees paid to an appraiser for the appraisal of the property, or
22  recording fees and other charges "incident to the recordation of
23  the insured mortgage."  Id. § 206.21(2).  The mortgagee may also
24  include a "charge to compensate the mortgagee for expenses incurred
25  in originating and closing the mortgage loan."  Id. § 206.21(1).
26  This charge may not include "any additional origination fee of any

---

[1] Nance F. Becker ("Becker"), counsel for Labrador, filed a declaration in support of Labrador's Motion.  ECF No 75-1.

2

kind [paid to] a mortgage broker or loan correspondent," unless "the mortgage broker is engaged independently by the homeowner and if there is no financial interest between the mortgage broker and the mortgagee." Id.

SMC sold HECMs in two ways. It funded and closed HECMs that were originated by SMC employees; the parties refer to these as "retail" HECMs. Hulbert Dep. at 35:7-13.[2] SMC also sold "wholesale" HECMs -- HECMs solicited and originated by non-SMC employees. Id. at 41:17-22. These wholesale HECMs were solicited and originated by "loan correspondents" (also referred to by the parties as "lender sponsors"). Id. Loan correspondents are mortgage brokers who would meet with prospective borrowers, accept loan applications, and then submit the materials to SMC for servicing and, in most instances, underwriting and funding.[3] Id. During the relevant time period, SMC approved fifty-nine such companies to serve as loan correspondents in California and funded between 7,819 and 7,865 wholesale HECMs in California. Engelhorn Dep. at 48:8-10, 29:4-6, 24:2-9.

Each relationship between SMC and a loan correspondent was

---

[2] In the words of Sarah Hulbert ("Hulbert"), SMC's Rule 30(b)(6) witness, "to originate a reverse mortgage loan means to complete an application, [and] to assist the borrower in completing the loan application." Hulbert Dep. at 27:10-14.

[3] SMC worked with both "full-eagle" and "mini-eagle" loan correspondents. Full-eagle loan correspondents are authorized by HUD not only to originate loans, but to close and fund loans in their own name. Hulbert Dep. at 62:25-63:8. SMC serviced loans that were closed and funded by full eagles; SMC also purchased loans from full eagles. Id. at 63:17-64:1. A mini eagle lacks authorization from HUD to close and fund loans in their own name; "they are able to originate and process reverse mortgages . . . and deliver these loans to their sponsor who underwrites, prepares the closing documents, and provides funds and the servicing solution." Id. at 66:13-21.

3

governed by a "correspondent agreement." Hulbert Dep. at 42:21-43:7. SMC drafted and maintained a standard template agreement for these correspondent agreements, and with the exception of the amount of compensation, the agreements were nearly identical for all correspondents. Id. at 44:10-15, 49:10-50:10. Under every correspondent agreement, a loan correspondent who referred a HECM to SMC would receive a "correspondent fee" and an "origination fee." Id. at 183:19-184:10.[4] SMC calculated these fees based on the amount of servicing fees to be collected on the HECM, which were set at $25, $30, or $35 per month. Becker Decl. Ex. E ("Nixon Dep.") at 103:17-105:4. SMC gave the loan correspondents the discretion to set these servicing fees, and the fees paid to loan correspondents were tied to the size of these servicing fees such that a larger servicing fee would yield a larger fee paid by SMC to the loan correspondent. Id. at 105:2-4, 107:14-17.

In 2006, Mary Labrador was an eighty-year-old San Francisco homeowner. Fullam Dep. at 21:17-22:24, 25:23-26:09. That year, Labrador was visited by Michael R. Fullam ("Fullam") of Home Center Mortgage ("Home Center"), an SMC loan correspondent. Id. Fullam presented Labrador with an application for a HECM, which Labrador filled out during this meeting. Id. at 72:25-73:14. SMC accepted Labrador's application, and underwrote and funded a HECM; under the agreement between SMC and the loan correspondent, Home Center was paid a $490 "correspondent fee" and a $7255 "origination fee." Hulbert Dep. at 183:7-18.

---

[4] SMC originally referred to the correspondent fee as the "service release premium," but changed the name to make it "more clearly understood by the parties involved." Hulbert Dep. at 90:22-91:21. This name change did not change the purpose or the calculation of the fee. Id.

Labrador claims that these fees -- and the fees paid on all other wholesale HECMs made by SMC during the relevant time period --violate HUD regulations. Mot. at 7. Labrador alleges that the method used to calculate these fees created a "financial interest" between the loan correspondents and SMC, in violation of 24 C.F.R. § 206.31. Id. Labrador argues that this alleged HUD regulation violation serves as a predicate act underlying three of Labrador's claims: elder abuse under California's Elder Abuse and Dependent Adult Civil Protection Act, Cal. Welf. & Inst. Code §§ 15657.5 et seq.; unfair competition under section 17200 of California's Business and Professions Code; and negligence per se. Id. at 8.

By 2007, SMC had become the second largest provider of HECMs in terms of national market share. Becker Decl. Ex. E ("Nixon Dep.") at 108:15-18. In or around April 2007, Bank of America purchased SMC's wholesale HECM business and SMC exited the wholesale HECM business. Hulbert Dep. at 35:22-36:16. Under the terms of SMC's agreement with Bank of America, loans signed on or before June 20, 2007 are considered to be SMC loans, and loans funded after the date are considered Bank of America loans. Engelhorn Dep. at 25:5-9.

Pursuant to Federal Rule of Civil Procedure 23, Labrador moves for an order certifying the following class:

> All elders in California who, during the period March 19, 2004 through June 20, 2007, purchased an SMC-funded Home Equity Conversion Mortgage through a loan correspondent sponsored by SMC and were charged an "origination fee," when (a) the loan origination fee was conveyed, in whole or in part, to the loan correspondent, and (b) the loan correspondent was also paid a "correspondent" or "service release premium" fee by SMC.

5

1 Mot. at 1-2. Labrador also seeks an order from the Court
2 designating her as the class representative and appointing law
3 firms Schneider Wallace Cottrell Brayton Konecky LLP ("SWCBK") and
4 Chavez & Gertler LLP ("CG") as counsel for the class, pursuant to
5 Rule 23(g). Id. at 2.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 23(a) consists of four requirements for class certification: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"); (2) commonality ("there are questions of law or fact common to the class"); (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). Fed. R. Civ. P. 23(a)(1)-(4). In addition, the court must also find that the requirements of Rule 23(b)(1), (b)(2), or (b)(3) are satisfied. Dukes v. Wal-Mart Stores, Inc. 603 F.3d 571, 580 (9th Cir. 2010). Rule 23(b)(3) requires a finding by the court "that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts refer to the requirements of Rule 23(b)(3) as its "predominance" and "superiority" requirements. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997).

The party seeking certification bears the burden of showing that the requirements of Rule 23(a) and (b) are met. Dukes, 603

F.3d at 580. This burden is met by providing the court with a sufficient basis for forming a reasonable judgment on each requirement. Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975). On a motion for class certification under Rule 23, "district courts are not only at liberty to, but must, perform a rigorous analysis to ensure that the prerequisites of Rule 23 have been satisfied, and this analysis will often, though not always, require looking behind the pleadings to issues overlapping with the merits of the underlying claims." Dukes, 603 F.3d at 594. However, "district courts may not analyze any portion of the merits of a claim that do not overlap with the Rule 23 requirements." Id.

**IV. DISCUSSION**

Labrador argues that Rule 23(a)'s four requirements are satisfied, as are Rule 23(b)(3)'s predominance and superiority requirements. See Mot. SMC does not contest the numerosity, commonality, typicality, and predominance requirements. Opp'n at 6 n. 2.[5] SMC argues that Labrador is an inadequate class representative because she does not sufficiently understand the suit. SMC also argues that class treatment is not superior to

---

[5] In a footnote in its Opposition, SMC states that because new counsel substituted into the case days before Labrador's Motion was filed, SMC was unprepared to challenge these requirements, and made a tactical decision to proceed with the motion as scheduled rather than petition the Court for additional time. Opp'n at 6 n.2. SMC states that its non-opposition to these requirements is "[f]or the purposes of this motion only," and suggests that it will challenge these requirements at a later date -- ostensibly through a motion to decertify the class -- "if appropriate." Id. The Court notes that decertification is appropriate in light of changes in the law, subsequent developments in the litigation, and evidence not available at the time of certification. Dukes, 603 F.3d at 579. It does not provide a defendant with the opportunity to challenge class certification on its own schedule.

individual actions because of SMC's current precarious financial state. Despite SMC's non-opposition to the other requirements of Rule 23(a) and (b), because this Court has a duty to perform a "rigorous analysis," Dukes, 603 F.3d at 594, each relevant Rule 23 requirement is analyzed below.

### A. Numerosity

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all parties is impracticable." Fed. R. Civ. P. 23(a)(1). However, "impracticable" does not mean impossible; it refers only to the difficulty or inconvenience of joining all members of the class. Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913-14 (9th Cir. 1964).

Labrador alleges and provides evidence in the form of loan records and deposition testimony that at least 7,800 HECMs were made to Californians aged sixty-two or older. See Engelhorn Dep. at 23:14-24:9; Becker Decl. Ex. H ("List of SMC Correspondent Lenders"). SMC does not challenge this evidence.

Labrador's proffered class definition is limited to "all elders in California" who purchased SMC HECMs and were charged correspondent fees during the relevant time period. Mot. at 1-2. California's Welfare and Institutions Code defines "elder" as "any person residing in this state, 65 years of age or older." Cal. Welf. & Inst. Code § 15610.27. Because the 7,800-plus documented HECMs include mortgages made to individuals aged sixty-two to sixty-four, not every one of these 7,800-plus borrowers is part of the class as Labrador seeks to define it. The Court finds it very likely that a sizable portion of these 7,800-plus HECMs were made

to homeowners who were sixty-five or older.  As such, the Court finds the number of class members sufficiently numerous to satisfy Rule 23(a)(1).

**B.  Commonality**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The commonality requirement must be "construed permissively."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  "All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  Id.  "The commonality test is qualitative rather than quantitative -- one significant issue common to the class may be sufficient to warrant certification."  Dukes, 603 F.3d at 599 (quotation marks omitted).

The deposition testimony of SMC's Rule 30(b)(6) witness supports Labrador's allegation that SMC paid two fees to its loan correspondents for every wholesale HECM it serviced.  Hulbert Dep. at 183:19-184:10.  Labrador has defined the class such that one legal question is common to all class members: whether SMC's method of calculating these fees violated HUD regulations.  Mot. at 11. SMC does not challenge whether Labrador has satisfied the commonality requirement.  For these reasons, the Court finds this requirement is satisfied.

**C.  Typicality**

Rule 23(a)(3) requires that the representative parties' claims be "typical of the claims . . . of the class."  Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative

9

claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. Rule 23 "does not require the named plaintiffs to be identically situated with all other class members. It is enough if their situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." Cal. Rural Legal Assist., Inc. v. Legal Servs. Corp., 917 F.2d 1171, 1175 (9th Cir. 1990). In practice, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 157 n. 13 (1982).

Labrador claims she is "a typical California senior who refinanced her residence through an SMC mortgage loan and was charged impermissible loan origination fees," and argues that the facts underlying her claim are essentially the same as the facts underlying the putative class members' claims. Mot. at 14. Labrador notes that "[n]o issue is raised as to interpretation of different state laws . . . since the core class claim is based upon a violation of federal law, the proposed class is limited to California homeowners, and all of the transactions at issue occurred in California." Id. SMC does not contest that Labrador has satisfied the typicality requirement. The Court finds this requirement to be satisfied.

**D. Adequacy of Representation**

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This factor requires: (1) that the proposed representative Plaintiffs do not have conflicts of

10

1 interest with the proposed class, and (2) that Plaintiffs are
2 represented by qualified and competent counsel." <u>Dukes</u>, 603 F.3d
3 at 614.

4 Labrador argues that she is "aware of her responsibilities as
5 class representative and has retained experienced and competent
6 legal counsel to litigate this action on behalf of herself and the
7 class." Mot. at 15. Labrador also claims to lack "any foreseeable
8 conflicts with members of the class, or interests antagonistic to
9 those of the class." <u>Id.</u> at 16.

10 SMC does not argue that Labrador has a conflict of interest
11 with other members of the class or that Labrador's counsel is
12 unqualified or incompetent. Rather, SMC argues that Labrador is an
13 inadequate class representative because she does not sufficiently
14 understand the suit. Opp'n at 11. SMC claims that the deposition
15 testimony of Labrador, who is now eighty-six years old, reveals
16 "she does not even have a 'minimal degree of knowledge regarding
17 the class action' and is 'simply blind[ly] rely[ing] on class
18 counsel.'" <u>Id.</u> (quoting <u>Wixon v. Wyndham Resort Dev. Corp.</u>, No.
19 07-2361, 2009 WL 3353445, *5 (N.D. Cal. Oct. 19, 2009)). SMC
20 argues that Labrador's deposition testimony reveals she has never
21 read the complaint, did not know she had filed an amended
22 complaint, and was unaware of the name of the defendant in this
23 action. Opp'n at 11. SMC also argues that Labrador does not
24 understand the words "plaintiff," "defendant," "class action,"
25 "reverse mortgage," "adjustable rate loan," "fixed rate loan," or
26 "HELOC." <u>Id.</u> at 12.

27 A court may find that a named plaintiff who demonstrates an
28 "alarming unfamiliarity with the suit" is not an adequate class

11

representative. Burkhalter Travel Agency v. MacFarms Int'l., Inc., 141 F.R.D. 144, 153-54 (N.D. Cal. 1991). Having reviewed the portion of Labrador's deposition testimony attached by SMC, Hassen Decl. Ex. A ("Labrador Dep."),[6] the Court finds that it fails to establish that Labrador has an "alarming unfamiliarity" with the case. Labrador testified in her deposition that she was not suffering from any physical or psychological conditions that would affect her memory or her ability to understand SMC's questions. Labrador Dep. at 12:5-25. Counsel for SMC then solicited Labrador for definitions of the terms "deposition," "plaintiff," and "class action," and Labrador's responses were less than illuminating. Id. at 14:2-19. However, Labrador need not be capable of proffering on-the-spot definitions to legal terms to serve as an adequate class representative. Given the fact that all of Labrador's interactions were with Fullam, a Home Center representative, it is understandable that Labrador could not name SMC as the defendant. In the case SMC cites to in its argument, Wixon, the court found that the named plaintiffs were adequate class representatives because they understood the "gist" of the suit. 2009 WL 3353445 at *5. Labrador, similarly, understands the gist of this suit -- that she was allegedly overcharged fees on her reverse mortgage. Labrador Dep. at 53:10-15 ("Q: Ms. Labrador, why are you suing Seattle Mortgage? . . . A: Because they overcharged me left and right."). She understands that as class representative, she will represent other people similarly situated. Id. at 18:2-12. For these reasons, the Court finds Labrador to be an adequate class

---

[6] Michael Hassen ("Hassen"), counsel for SMC, filed a declaration in support of SMC's Opposition. ECF No. 84.

12

representative.

The Court notes that while Labrador's testimony alone does not establish Labrador would be an inadequate class representative, it does raise some concerns about her adequacy. If subsequent developments in this case reinforce SMC's allegation that Labrador is an inadequate class representative, SMC may renew its challenge to Labrador's adequacy as a class representative.

Because there is no objection from SMC, the Court also finds SWCBK and Chavez & Gertler to be adequate class counsel.

### E. Predominance

Rule 23(b)(3) requires the court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," a standard "far more demanding" than the commonality requirement of Rule 23(a). Amchem, 521 U.S. at 623-24. However, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." Hanlon, 150 F.3d at 1022.

Recent Ninth Circuit case law provides additional direction for evaluating the predominance requirement. If the plaintiff advances a theory of liability in its motion for class certification, the court should determine whether common issues predominate under this theory without evaluating the theory itself. United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus.

13

1  & Service Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.,
2  593 F.3d 802, 808 (9th Cir. 2010) ("United Steel"); see also Dukes,
3  603 F.3d at 588 ("it is the plaintiff's theory that matters at the
4  class certification stage, not whether the theory will ultimately
5  succeed on the merits") (emphasis in original).
6       The legal theory that Labrador advances is that SMC's method
7  of paying fees to its loan correspondents created a financial
8  interest between SMC and its loan correspondents, in violation of
9  24 C.F.R. § 206.31. Considering all the evidence and without
10 evaluating the merits of the underlying legal theory, the Court
11 finds that common issues predominate under this theory. Labrador
12 has established that in each SMC wholesale HECM, SMC paid two fees
13 to the loan correspondents. Labrador argues the fee structure used
14 to determine these fees created a financial interest between the
15 mortgage broker and the lender. While SMC used many different
16 mortgage brokers as loan correspondents, the loan correspondent
17 agreements governing these relationships were substantially
18 similar. SMC has not identified a single issue involving
19 individual members that would need to be resolved under Labrador's
20 theory.
21      For these reasons, the Court finds the predominance
22 requirement to be satisfied. The Court notes that if Labrador's
23 theory of liability is ultimately rejected or if Labrador abandons
24 this theory in favor of another theory of liability, there would be
25 grounds for revisiting its class certification determination. See
26 United Steel, 593 F.3d at 809 (while court may not decline to
27 certify class on basis of possibility of legal theory being
28 rejected, it may decertify or alter class if certification if legal

14

theory is rejected).

**F. <u>Superiority</u>**

Rule 23(b)(3) also requires that the class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The factors relevant to assessing superiority include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Labrador makes several arguments that class treatment is superior. Labrador argues that the fees charged to class members, "while significant, are too small to give any individual or attorney the incentive to pursue an individual action." Mot. at 17. SMC estimates each class member claim to be "$20,000, plus penalties and interest." Opp'n at 10. The Court agrees with Labrador that this sum is relatively small, and possibly too small for class members to pursue individual actions. This is particularly true given the unresolved legal question at issue (whether SMC's method of paying fees to its loan correspondents created a "financial interest"). Labrador also argues that the case is manageable as a class action, writing, "[n]o individual proof will be required other than in the determination of the amount of relief to which each class member will be entitled upon a finding of liability." Mot. at 18. Labrador argues that this information can be readily corroborated through electronic records

15

of the fees paid on each loan. Id.

SMC does not contest that the case is manageable as a class action. Rather, it argues that class treatment is not superior to individual actions due to SMC's current financial state. Opp'n at 7-9.[7] SMC essentially argues that if the class receives the judgment they seek, SMC will be bankrupted, leading to no class members being able to collect on their judgments. Id. This, argues SMC, supports a finding that a class action is not superior to individual actions. Id. SMC argues that it would be better for class members to bring individual actions, because at least some of the class members might be able to collect. Id. at 9.

Labrador challenges both the legal basis for SMC's argument, as well as the evidentiary support. Labrador argues that "[t]he economic impact on a defendant of a successful class action should not be a consideration in resolving the superiority issue." Reply at 2 (citing A. Conte & H. Newberg, Newberg on Class Actions, § 4:43, p. 331 (4th ed. 2002)). Labrador also challenges the evidentiary support for SMC's argument, which is limited to a declaration of SMC Executive Vice-President John Grogan and two supporting exhibits. Reply at 10.

The Court is not convinced by SMC's argument and the evidence used to support it. The only case cited by SMC with controlling authority over this Court is easily distinguished. Unlike the current case, Kline v. Coldwell Banker & Co. involved a

---

[7] SMC sought portions of its Opposition and supporting documents to be filed under seal, citing confidential financial information, and the Court granted this request, with a proviso that the information would only be sealed for ninety days. ECF No. 91. So as to not disclose this information, the Court addresses SMC's argument somewhat obliquely.

16

1  hypothetical award of $750 million against a defendant class of
2  2,000 real estate brokers.  508 F.2d 226, 234 (9th Cir. 1974).  The
3  court found that the award, for which each member of the defendant
4  class would be jointly and severally liable, would "shock the
5  conscience."  Id.  In the present case, SMC claims that if the
6  class prevails, its award would be $150 million.  Opp'n at 6.  This
7  is a considerably smaller amount than the amount in Kline.  The
8  Court also finds that the evidence provided by SMC in support of
9  its argument fails to establish that SMC will be incapable of
10 paying an award.  Finally, SMC's position, if accepted, would lead
11 to absurd results: "A rule that would exempt a defendant from
12 liability in a class action merely because damages are large would
13 invite defendants to violate the law on a grand scale, with the
14 knowledge that they could avoid liability by claiming that if they
15 were forced to account for their wrongful conduct they would be put
16 out of business."  Newberg on Class Actions, § 4:43.  For these
17 reasons, and because the suit appears to be manageable as a class
18 action and because class treatment will preserve judicial
19 resources, the Court finds class treatment to be superior to
20 individual actions.

**V.  CONCLUSION**

    For the foregoing reasons, the Court GRANTS Plaintiff Mary
Labrador's Motion for Class Certification, and orders as follows:

    1.  The class is defined as: All elders in California who,
        during the period March 19, 2004 through June 20, 2007,
        purchased a Seattle Mortgage Company-funded Home Equity

17

|   |   |
|---|---|
| 1 | Conversion Mortgage through a loan correspondent |
| 2 | sponsored by SMC and were charged an "origination fee," |
| 3 | when (a) the loan origination fee was conveyed, in whole |
| 4 | or in part, to the loan correspondent, and (b) the loan |
| 5 | correspondent was also paid a "correspondent" or "service |
| 6 | release premium" fee by SMC. |

2. Mary Labrador is appointed class representative.

3. The law firms Schneider Wallace Cottrell Brayton Konecky LLP and Chavez & Gertler LLP are appointed as class.

4. The parties shall meet and confer in good faith as soon as practicable with respect to the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) governing notice to the class. No later than forty (40) days from the date of this Order, Labrador shall file a Stipulation and Proposed Order explaining how the class will be notified. Labrador shall also submit a copy of the Proposed Notice. If the parties cannot reach an agreement concerning notice to the class, each party may submit a brief of no more than five (5) pages addressing the problem and proposing a solution. The briefs will be due no later than forty (40) days from the date of this Order.

IT IS SO ORDERED.

Dated: September 22, 2010

UNITED STATES DISTRICT JUDGE